MORGAN, LEWIS & BOCKIUS LLP
Max Fischer, State Bar No. 226003
Brian D. Fahy, State Bar No. 266750
brian.fahy@morganlewis.com
max.fischer@morganlewis.com
300 South Grand Avenue
Twenty-Second Floor
Los Angeles, CA 90071-3132
Tel:   +1.213.612.2500
Fax:  +1.213.612.2501

MORGAN, LEWIS & BOCKIUS LLP
Miranda M. Rowley, Bar No. 328173
One Market, Spear Street Tower
San Francisco, CA 94105
Tel:   +1.415.442.1000
Fax:  +1.415.442.1001
miranda.rowley@morganlewis.com

Attorneys for Defendant
BIMBO BAKERIES USA, INC.

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIM BOTONIS, LIAM PATRICK MEIKLE, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>BIMBO BAKERIES USA, INC.; and DOES ONE through TEN,<br><br>Defendants. | Case No. 2:22-at-00858<br><br>[Sacramento County Superior Court Case No. 34-2022-319624]<br><br>**DEFENDANT BIMBO BAKERIES USA, INC.'S NOTICE OF REMOVAL**<br><br>[28 U.S.C. §§ 1332(d)(2), 1441, 1446, and 1453] |

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

Case No. 34-2022-319624
DB1/ 131976439

NOTICE OF REMOVAL

**TO THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF CALIFORNIA, AND TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** Defendant Bimbo Bakeries USA, Inc. ("Defendant"), by and through its counsel, removes the above-entitled action to this Court from the Superior Court of the State of California, Sacrament County, pursuant to 28 U.S.C. §§ 1332, 1441, 1446, and 1453.  Removal is based on the following grounds:

**I.      PROCEDURAL BACKGROUND**

1.      On or about May 31, 2022, Plaintiffs Tim Botonis ("Botonis") and Liam Patrick Meikle ("Meikle") (collectively "Plaintiffs") filed an amended class and representative action complaint in the Superior Court of the State of California, County of Sacramento, entitled *Tim Botonis, Liam Patrick Meikle. v. Bimbo Bakeries USA, Inc., and Does 1 through 10, inclusive*, Case No. 34-2022-319624 (the "Complaint").

2.      On July 18, 2022, Plaintiffs served Defendant with the Complaint, Summons, and Civil Case Cover Sheet as a result of Defendant's execution on that day of a Notice & Acknowledgment of Receipt – Civil.  A true and correct copy is attached hereto as **Exhibit A**.  A true and correct copy of the executed Notice and Acknowlegement of Receipt—Civil is attached hereto as **Exhibit B.**

3.      On August 15, 2022, Defendant filed an Answer to Plaintiffs' Complaint in the Superior Court of the State of California, County of Sacramento.  A true and correct copy of Defendant's Answer is attached hereto as **Exhibit C**.

4.      Exhibits A, B, and C constitute all the pleadings, process, and orders served upon or filed by Defendant in the Superior Court action.

5.      Plaintiffs' Complaint alleges the following putative class and representative action claims based on alleged violations of the California Labor Code: (1) Failure to Reimburse Business Expenses; (2) Failure to Provide Accurate Itemized Wage Statements; (3) Failure to Pay Wages Upon Termination/Severance of Employment; (4) Unfair Competion and Unfair Business Practices; and (5) Representative Complaint for Civil Penalties under the Private Attorneys General Act, Labor Code section 2699 *et seq*.

6. Plaintiffs seek to represent the following "Class":"[A]ll current and former drivers (including relief drivers) and route salespersons . . . who are or have been employed by Defendant in the State of California and to whom Defendant has failed to (a) reimburse for business expenses; (b) provide accurate wage statements; and (c) pay wages upon termination or severance of employment at any time for four (4) years prior to the original filing of this lawsuit and continuing through the date of judgment in this action related to the allegations set forth above regarding the use of personal cell phones."

7. Plaintiffs also seek to represent a "Driver Subclass" and "Sales Subclass." The "Driver Subclass" is composed of drivers "who are or have been employed by Defendant in the State of California and to whom Defendant failed to: (a) reimburse for business expenses; (b) provide accurate itemized wage statements; and (c) pay wages upon termination or severance of employment at any time for four (4) years prior to the original filing of this lawsuit and continuing through the date of judgement in this action related to the allegation set forth above regarding the use of personal cell phones."

8. The "Sales Subclass" consists of route salespersons "who are or have been employed by Defendant in the State of California and to whom Defendant has failed to: (a) reimburse for business expenses; (b) provide accurate itemized waged statements; and (c) pay wages upon termination or severance of employment at any time for four (4) years prior to the original filing of this lawsuit and continuing thorugh the date of judgement in this action related to the allegations set forth above regarding the use of personal cell phones."

## II. REMOVAL IS TIMELY

9. Plaintiffs served Defendant with the Complaint on July 18, 2022 as a result of Defendant's execution of a Notice and Acknowledgement of Receipt on that date. Because this Notice of Removal is filed within thirty (30) days after service of the Complaint, it is timely under 28 U.S.C. §§ 1446(b)(1) and 1453. No previous Notice of Removal has been filed or made with this Court for the relief sought herein.

/ / /

/ / /

## III. THIS COURT HAS ORIGINAL SUBJECT MATTER JURISDICTION UNDER CAFA.

10. Plaintiffs bring this action as a putative class action under California Code of Civil Procedure section 382.[1] Ex. A, Compl., ¶ 23. Removal based upon the Class Action Fairness Act ("CAFA") is proper pursuant to 28 U.S.C. §§ 1332 and 1453 because: (i) the amount placed in controversy by the Complaint exceeds, in the aggregate, $5 million, exclusive of interest and costs; (ii) the aggregate number of putative class members in all proposed classes is 100 or greater; and (iii) diversity of citizenship exists between at least one putative class member and Defendant. 28 U.S.C. §§ 1332(d)(2) & (d)(5)(B), 1453. Although Defendant denies Plaintiffs' factual allegations and denies that Plaintiffs or the "Class" or subclasses are entitled to the relief requested, based on Plaintiffs' allegations in the Complaint and prayer for relief, all requirements for jurisdiction under CAFA are met in this case.

### A. The Putative Class Has More Than 100 Members.

11. Based on Plaintiffs' definition of the "Sales Subclass" (Ex. A, Compl., ¶ 24), according to Defendant's records, Defendant is informed and believes that the putative "Sales Subclass" contains approximately 1,298 putative class members between approximately May 10, 2018 and approximately July 18, 2022.

12. Further, based on Plaintiffs' definition of the "Driver Subclass" (Ex. A, Compl., ¶ 24), according to Defendant's records, Defendant is informed and believes that the putative "Driver Subclass" contains appoximately 291 class members between approximately May 10, 2018 and approximately July 18, 2022.

13. Thus, based on Plaintiffs' definition of the "Class" (Ex. A, Compl., ¶ 23), according to Defendant's records, Defendant is informed and believes that the putative "Class" contains approximately 1,589 putative class members who worked for Defendant as drivers and route salespersons in California between approximately May 10, 2018 and approximately July 18, 2022. Thus, the putative class contains more than 100 members.

---

[1] Defendant denies and reserves the right to contest at the appropriate time that this action can properly proceed as a class or representative action under PAGA. Defendant further denies Plaintiffs' claims and denies that Plaintiffs can recover any damages.

### B.  Complete Diversity of Citizenship Exists Between The Parties.

14.  To satisfy CAFA's diversity requirement, a party seeking removal need only show that minimum diversity exists, that is, that one putative class member is a citizen of a state different from any defendant.  28 U.S.C. § 1332(d)(2); *United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC v. Shell Oil Co.*, 602 F.3d 1087, 1090-91 (9th Cir. 2010) (finding that to achieve its purposes, CAFA provides expanded original diversity jurisdiction for class actions meeting the minimum diversity requirement set forth in 28 U.S.C. § 1332(d)(2)).  "An individual is a citizen of the state in which he is domiciled . . . ."  *Boon v. Allstate Ins. Co.*, 229 F. Supp. 2d 1016, 1019 (C.D. Cal. 2002) (citing *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001)).  For purposes of diversity of citizenship jurisdiction, citizenship is determined by the individual's domicile at the time that the lawsuit is filed.  *Armstrong v. Church of Scientology Int'l*, 243 F.3d 546, 546 (9th Cir. 2000) (citing *Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986)).  Evidence of continuing residence creates a presumption of domicile.  *Washington v. Hovensa LLC*, 652 F.3d 340, 345 (3d Cir. 2011).

15.  The Complaint alleges that Plaintiff Meikle was employed by Defendant in the County of Sacramento and that he currently resides in California.  Ex. A, Compl., ¶ 10.  Further, as alleged in the Complaint, Plaintiff Botonis was employed by Defendant in Sacramento and currently resides in California.  Ex. A, Compl., ¶ 9.  Plaintiffs do not allege alternate citizenship.  *Id.*  Also, according to Defendant's personnel records, both Plaintiffs have resided in California during their employment with Defendant.  Therefore, Plaintiffs are citizens of California for diversity jurisdiction purposes.  Moreover, Plaintiffs have brought claims on behalf of putative class members and aggrieved employees residing in California.  Thus, at least one putative class member or aggrieved employee is a citizen of California for diversity jurisdiction purposes.

16.  Under 28 U.S.C. § 1332, "a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business."  28 U.S.C. § 1332(c)(1).  The "principal place of business" for the purpose of determining diversity subject matter jurisdiction refers to "the place where a

1 corporation's officers direct, control, and coordinate the corporation's activities . . . [I]n practice it should normally be the place where the corporation maintains its headquarters—provided that the headquarters is the actual center of direction, control, and coordination, i.e., the 'nerve center,' and not simply an office where the corporation holds its board meetings . . . ." *See Hertz Corp. v. Friend*, 559 U.S. 77, 92-93, 130 S.Ct. 1181, 1192 (2010).

17. Defendant is a citizen of both Delaware and Pennsylvania for diversity purposes. Defendant is organized under the laws of Delaware and has its principal place of business in Pennsylvania. Defendant's corporate headquarters is located in the Commonwealth of Pennsylvania, as is the majority of its corporate books and records and its executive and administrative functions (including, but not limited to, operations, corporate finance, accounting, human resources, payroll, marketing, legal, and information systems). In addition, Defendant's senior executives work from the Pennsylvania headquarters and direct, control, and coordinate Defendant's corporate activities from Pennsylvania.

18. Therefore, based on the Complaint, at least one member of the putative class is a citizen of a state different than any Defendant. As a result, diversity jurisdiction exists under CAFA. 28 U.S.C. § 1332(d)(2)(A) (requiring only "minimal diversity" under which "any member of a class of plaintiffs is a citizen of a State different from any Defendant").

**C.    The Amount in Controversy Exceeds $5,000,000.**

19. Pursuant to CAFA, the claims of the individual members in a class action are aggregated to determine if the amount in controversy exceeds $5,000,000, exclusive of interest and costs. 28 U.S.C. § 1332(d)(6). Plaintiffs may not avoid removal to federal court under CAFA's $5,000,000 amount in controversy requirement by expressly alleging or subsequently stipulating that damages fall below that sum. *See Standard Fire Ins. Co. v. Knowles*, 133 S. Ct. 1345, 1347 (2013). Where a plaintiff does not expressly plead a specific amount of damages, a removing party need only show that it is more likely than not that the amount in controversy exceeds $5,000,000. *See Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 376 (9th Cir. 1997).

/ / /

20. Defendant's burden to establish the amount in controversy is the preponderance of the evidence standard. *Dart Cherokee Basin Operating Company, LLC v. Owens,* 574 U.S. 81, 88 (2014); *see also Jordan v. Nationstar Mortg., LLC*, 781 F.3d 1178, 1183 (9th Cir. 2015) (citing *Dart Cherokee* for the proposition that there is no antiremoval presumption against CAFA cases). A removing party seeking to invoke CAFA jurisdiction "need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee*, 574 U.S. at 89. *See also Jauregui v. Roadrunner Transportation Services, Inc*., 2022 WL 804148, at *4 (9th Cir. Mar. 17, 2022) (reversing district court's remand to state court due to an "inappropriate demand of certitude from [the defendant] over its assumptions used in calculating he amount in controversy" for purposes of CAFA removal, and concluding that "[the defendant's] assumptions regarding the number of affected class members and the violation rate were reasonable for the various relevant claims."). "If a federal court is uncertain about whether 'all matters in controversy' in a purported class action 'do not in the aggregate exceed the sum or value of $5,000,000,' the court should err in favor of exercising jurisdiction over the case." Senate Judiciary Report, S. REP. 109-14, at 42 (2005) (citation omitted).

21. "[A] removing defendant is not obligated to research, state and prove the plaintiff's claims for damages." *Sanchez v. Russell Sigler, Inc.*, 2015 WL 12765359, *2 (C.D. Cal. April 28, 2015) (citation omitted). *See also LaCross v. Knight Transportation Inc.*, 775 F.3d 1200, 1203 (9th Cir. 2015) (rejecting plaintiff's argument for remand based on the contention that the class may not be able to prove all amounts claimed, as "Plaintiffs are conflating the amount in controversy with the amount of damages ultimately recoverable."); *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1198 n.1 (9th Cir. 2015) (in alleging the amount in controversy, Defendants "are not stipulating to damages suffered, but only estimating the damages in controversy."). The ultimate inquiry is what amount is put "in controversy" by the plaintiff's complaint, not what a defendant will actually owe. *LaCross*, 775 F.3d at 1202 (internal citation omitted) (explaining that courts are directed "to first look to the complaint in determining the amount in controversy").

22. Under *Dart Cherokee*, a removing defendant is not required to submit evidence in support of its removal allegations. *Allchin v. Volume Services, Inc.*, 2016 WL 704616, *4 (E.D.

Cal. Feb. 23, 2016). As detailed below, Defendant has plausibly alleged and established by a preponderance of the evidence that the amount in controversy exceeds $5,000,000 and, therefore, that the Court has jurisdiction pursuant to CAFA.[2] As discussed below, when the claims of the putative class members in the present case are aggregated, their claims put into controversy over $5,000,000 in potential damages. 28 U.S.C. § 1332(d)(2). Defendant reserves the right to present evidence establishing the amount placed in controversy by Plaintiffs' claims should Plaintiffs challenge whether the jurisdictional amount-in-controversy threshold is satisfied.

23. Defendant has reviewed certain data concerning the putative class and subclasses that Plaintiffs seek to represent. Although Defendant denies Plaintiffs' factual allegations and denies that Plaintiffs or the claimed "Class" and subclasses are entitled to any relief, based on Plaintiffs' allegations and prayer for relief, Plaintiffs have "more likely than not" put into controversy an amount that exceeds the $5,000,000 threshold when aggregating the claims of the putative class members as set forth in 28 U.S.C. § 1332(d)(6).

**1.    Plaintiffs' First Cause of Action for Failure to Reimburse Business Expenses Puts at Least $1,338,475 In Controversy.**

24. Plaintiffs allege that "the Defendant's policies and work rules require Plaintiffs and the putative Class Members to communicate with each other using their personal cell phones . . ." Ex. A, Compl., ¶33. The Complaint does not allege the amounts sought for these expenses, but Plaintiffs allege that "despite the requirements of Labor Code section 2802, Defendant failed to reimburse Plaintiffs and the putative Class for these expenditures," and that Plaintiffs and putative class members "have suffered monetary damages in an amount equal to the sum of their

---

[2] This Notice of Removal discusses the nature and amount of damages placed at issue by Plaintiffs' Complaint. Defendant's references to specific damage amounts and citation to comparable cases are provided solely for establishing the amount placed in controversy by Plaintiffs' allegations are more likely than not in excess of the jurisdictional minimum. Defendant maintains that each of Plaintiffs' claims is without merit and Defendant is not liable to Plaintiffs or any putative class member. Defendant expressly denies that Plaintiffs or any putative class member are entitled to recover any of the penalties sought in the Complaint. In addition, Defendant denies that liability or damages can be established on a class-wide basis or a representative basis. No statement or reference contained herein shall constitute an admission of liability or a suggestion that Plaintiffs will or could actually recover any damages based upon the allegations contained in the Complaint or otherwise. "The amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of [Defendant's] liability." *Lewis v. Verizon Communs., Inc.*, 627 F.3d 395, 400 (9th Cir. 2010).

unreimbursed expenditures or losses incurred in the discharge of their duties, plus interest thereon." Ex. A., Compl., ¶¶ 36-37.

25. Plaintiffs' allegations of a company-wide failure to provide reimbursement of cell phone expenses to putative class members suggests for purposes of removal "that each putative class member could recover unreimbursed expenses for every month worked." *Anderson v. Starbucks Corp.*, 556 F. Supp. 3d 1132, 1138 (N.D. Cal. 2020)  In *Anderson*, the district court held that a monthly cell phone reimbursement of $32.50 per employee was a "reasonable basis for estimating" the amount in controversy on a cell phone reimbursement claim, and conservatively represents a recovery that would be "less than a full recovery of the monthly plan fee . . . ." *Id*.

26. As stated above, according to Defendant's records, Defendant is informed and believes that the total number of putative class members during the four-year period is 1,589 and these employees worked, according to Defendant's records, 53,539 months during the period May 10, 2018-July 18, 2022.  Assuming only $25 per work month in alleged unpaid cell phone reimbursements, Plaintiffs' first cause of action for failure to reimburse employees for necessary cell phone expenses would place at least $1,338,475 in controversy (i.e., $25 monthly expenses x 53,539 work months = $1,338,475).

**2. Plaintiffs' Second Cause of Action for Failure to Provide Accurate Itemized Wage Statements Puts at Least $6,151,150 in Controversy.**

27. Plaintiffs allege that "Defendant uniformly and systematically violated Labor Code section 226 as to the itemized wage statements for all of Defendant's employees for periods in which employees were not reimbursed for costs." *See* Ex. A, Compl., ¶ 39.

28. Labor Code section 226(e) provides that an employee is entitled to recover the greater of all actual damages or $50 for the initial violation and $100 for each alleged subsequent violation, up to a maximum of $4,000, plus costs and reasonable attorneys' fees, if an employer knowingly and intentionally fails to provide an accurate, itemized wage statement.  Cal. Lab. Code § 226(e).  Such an award may be granted for each wage statement issued that fails to comply with Section 226's requirements.  Thus, according to Plaintiffs' theory, the Plaintiffs and the putative "Class" and "subclasses" would be entitled to no less than $50 for the first violation,

1  plus $100 for each subsequent violation, for every pay period during the class period where they
2  allegedly did not receive an accurate statement of wages, subject to a maximum award of $4,000.
3  There is a one-year statute of limitations on this claim.  *See* Cal. Code Civ. Proc. § 340(a);
4  *Martinez v. Morgan Stanley & Co. Inc.*, 2010 WL 3123175, *6 (S.D. Cal. August 9, 2010).

5  29.   Here, during the relevant one-year statute of limitations period, Defendant
6  provided wage statements to class members on a weekly basis.  According to Defendant's
7  records, Defendant is informed and believes that at least 1,207 putative class members in
8  California performed some work and were paid on a weekly basis during the period of
9  approximately May 10, 2021 to approximately July 18, 2022, representing a total of
10 approximately 62,115 pay periods.  As such, Defendant is informed and believes that there were
11 1,207 initial pay periods and 60,908 subsequent pay periods during this time period.  Thus,
12 Plaintiffs' wage statement claim has placed at least another $6,151,150 in controversy ((1,207
13 initial pay periods * $50 for initial violation = $60,350) + (60,908 * $100 for subsequent
14 violations = $6,090,800) = $6,151,150).

### 3. Plaintiffs' Third Cause of Action for Failure to Pay Wages Due Upon Termination Puts at Least $2,572,170.45 in Controversy.

17 30.  Plaintiffs' Complaint asserts that "Defendant's failed to pay all wages due to Class
18 member, including the amounts of business expenses incurred, upon severance from employment
19 and has failed to pay wages owed to severed employees within the time frames required under the
20 Labor code." Ex. A., Compl., ¶ 44.  As a result, Plaintiffs allege that "Plaintiffs and the putative
21 Class are entitled to recover from Defendant in addition to their earned and unpaid wages, a
22 penalty under Labor Code section 203 equal to a day's wages for each day Defendant failed to
23 remit payment to the putative Class upon their severance or termination of employment, to a
24 maximum of thirty days' wages, plus interest thereon, and attorneys' fees and costs of suit." Ex.
25 A, Compl., ¶ 45.

26 31.  Labor Code Section 203 provides that an employer who willfully fails to timely
27 pay wages to an employee who is discharged or quits, must pay, as a penalty, "the wages of the
28 employee . . . from the due date thereof . . . until paid or until an action therefor is commenced;

1  but the wages shall not continue for more than 30 days."

2  32. Based on Plaintiffs' allegations, it is appropriate to use a 100% violation rate for waiting time penalties to calculate the amount in controversy. *See Ford v. CEC Entm't, Inc.*, 2014 WL 3377990 (N.D. Cal. 2014) ("Assuming a 100% violation rate is thus reasonably grounded in the complaint . . . [b]ecause no averment in the complaint supports an inference that these sums were ever paid."); *see also Jauregui*, 2022 WL 804148, at *4 ("But it was not unreasonable for [defendant] to assume that the vast majority (if not all) of the alleged violations over the *four years* at issue in this case would have happened more than 30 days before the suit was filed, which would entitle the employees to the 30-day penalty.") (emphasis in original).

33. According to Defendant's records, Defendant is informed and believes that the "Sales Subclass" has at least 271 putative class members who terminated their employment between May 10, 2019 and approximately July 18, 2022. As a result, just including the Sales Subclass, Plaintiffs' Third Cause of Action conservatively puts over $1,842,800 in controversy (271 former employees * $7,572.75[3] = $2,052,215.25).

34. According to Defendant's records, Defendant is informed and believes that the "Driver Subclass" has at least 72 putative class members who terminated their employment between May 10, 2019 and approximately July 18, 2022. As a result, just including the Driver Subclass, Plaintiffs' Third Cause of Action puts over $519,955.20 in controversy (72 former employees * 8 hours per day * 30 days * $30.09[4] average hourly rate = $519,955.20).

**4.  The Amount in Controversy Exceeds $5,000,000.**

35. Aggregating the figures above for these causes of action, Plaintiffs' alleged amount in controversy is at least $10,061,795.40: (a) $1,338,475 for the expense reimbursement claim; (b) $6,151,150 in statutory wage statement penalties; and (c) $2,572,170.45 in statutory waiting time penalties.

---

[3] Individuals in this putative class are salaried exempt employees, and thus are not paid hourly. Based on the preliminary data gathered by Defendant, $7,572.75 is the average monthly salary of the individuals encompassed within the Sales Subclass who terminated their employment during the applicable limitations period.

[4] Based on the preliminary data gathered by Defendant, the average hourly rate of pay for individuals in the class who were non-exempt and who terminated their employment during this period of time is approximately $30.09/hour.

36. In addition to these causes of action, Plaintiffs also seek an "award of liquidated damages, restitution . . . penalties . . . [and] pre-judgment and post judgment interest . . ." *See* Ex. A, Compl., Prayer for Relief. These categories of damages put additional amounts in controversy that are not discussed in detail herein because the conservative estimates discussed for Plaintiffs' First, Second, and Third causes of action *alone* are sufficient to meet CAFA's amount-in-controversy requirement.

### 5. Plaintiffs' Request for Attorneys' Fees Places Additional Amounts in Controversy, Further Exceeding the CAFA Threshold.

37. Plaintiffs also seek to recover attorneys' fees. *See* Ex. A. Compl., Prayer for Relief. Current and future attorneys' fees are properly included in determining the amount in controversy. *See Fritsch v. Swift Transp. Co. of Ariz.*, 899 F.3d 785, 794 (9th Cir. 2018) ("Because the law entitles Fritsch to an award of attorneys' fees if he is successful, such future attorneys' fees are at stake in the litigation, and must be included in the amount in controversy."); *Brady v. Mercedes-Benz USA, Inc.*, 243 F. Supp. 2d 1004, 1009 (N.D. Cal. 2002) (a reasonable estimate of attorneys' fees likely to be expended is properly included within the amount in controversy). A 25% benchmark is common in wage and hour class actions. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998). Therefore, if Plaintiffs prevail on all claims, their counsel could easily seek 25% of the estimated amount in controversy in claimed attorneys' fees, which would amount to $2,515,448.85. Thus, while Defendant denies Plaintiffs' claim for attorneys' fees, inclusion of reasonable attorneys' fees increases the total amount in controversy to **$12,577,244.20**. Therefore, Defendant has demonstrated by a preponderance of the evidence that the amount in controversy without attorneys' fees exceeds $5,000,000, and the inclusion of attorneys' fees consistent with removal precedent further increases the amount in controversy.

## IV. THE COURT HAS SUPPLEMENTAL JURISDICTION OVER PLAINTIFFS' PAGA CLAIM

38. Supplemental jurisdiction should be taken over Plaintiffs' PAGA claim because the PAGA claim derives from a common nucleus of operative facts and is based on the same alleged conduct, case, and controversy that gave rise to Plaintiffs' class claims over which the Court has original federal jurisdiction under CAFA. *See* 28 U.S.C. § 1367(a); *Arbaugh v. Y & H Corp.*, 546

Case No. 34-2022-319624                    11                    NOTICE OF REMOVAL

DB1/ 131976439

U.S. 500, 514, (2006) (holding that the district court had authority to exercise jurisdiction over a state-law claim derived from common nucleus of operative fact after dismissing plaintiff's federal claims).  In determining whether to extend supplemental jurisdiction over state law claims, courts weigh whether the extension of jurisdiction will serve the principles of judicial economy, convenience, and fairness to the litigants, and comity to the states.  *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988).  Here, because all of Plaintiffs' claims "derive from a common nucleus of operative fact" – *i.e.*, the circumstances of Plaintiffs' employment with Defendant – the claims are such that they ordinarily would be expected to be tried in one judicial proceeding.  *Thompson v. Target Corp.*, 2016 WL 4119937, *12 (C.D. Cal. Aug. 2, 2016) (denying remand because the plaintiff's class and PAGA claims concern the same alleged misconduct by the defendant such that they form part of the same case or controversy under Article III and finding "the PAGA claims are therefore properly within the Court's supplemental jurisdiction").  Thus, it is economically and judicially efficient for this Court to adjudicate all claims asserted in the Complaint.

## V.  VENUE

39.  This action was originally filed in the Superior Court for the County of Sacramento.  Venue is therefore proper in the Eastern District of California, pursuant to 28 U.S.C. § 1441(a), because it encompasses the county in which this action has been pending.

## VI.  NOTICE

40.  Defendant will promptly serve this Notice of Removal on Plaintiffs and will promptly file a copy of this Notice of Removal with the clerk of the state court in which the action is pending, as required under 28 U.S.C. § 1446(d).

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

## VII. CONCLUSION

41. Based on the foregoing, Defendant requests that this action be removed to this Court. If any question arises as to the propriety of the removal of this action, Defendant respectfully requests the opportunity to present a brief and oral argument in support of its position that this case is subject to removal.

Dated: August 16, 2022                    MORGAN, LEWIS & BOCKIUS LLP

By: */s/ Brian D. Fahy*
Max Fischer
Brian D. Fahy
Miranda M. Rowley

Attorneys for Defendant
BIMBO BAKERIES USA, INC.