1  COSTA KERESTENZIS, SBN 186125
   SARAH S. KANBAR, SBN 315443
2  **BEESON, TAYER & BODINE, APC**
   520 Capitol Mall, Suite 300
3  Sacramento, California 95814
   Telephone:    (916) 325-2100
4  Facsimile:     (916) 325-2120
   Email:        ckerestenzis@beesontayer.com
5  Email:        skanbar@beesontayer.com

6  Attorneys for Plaintiffs Tim Botonis and Liam Patrick Meikle

7

8              **UNITED STATES DISTRICT COURT**

9          **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11 TIM BOTONIS, LIAM PATRICK MEIKLE,          Case No. 2:22-cv-01453-DJC-DB
   on behalf of themselves and all others similarly
12 situated,                                   **PLAINTIFFS' NOTICE OF MOTION**
                                               **AND UNOPPOSED MOTION FOR**
                              Plaintiffs,       **PRELIMINARY APPROVAL OF**
13                                             **CLASS AND REPRESENTATIVE**
                     v.                         **ACTION SETTLEMENT;**
14                                             **MEMORANDUM OF POINTS AND**
   BIMBO BAKERIES USA, INC. and DOES           **AUTHORITIES IN SUPPORT**
15 ONE through TEN,                            **THEREOF**

16                          Defendants.        Hearing Date:    August 17, 2023
                                               Hearing Time:    1:30 p.m.
17                                             Courtroom:       10
                                               Judge:           Hon. Daniel J.
18                                                              Calabretta
                                               Complaint Filed: May 10, 2022
19                                             Trial Date:      Not Set

20

21

22

23

24

25

26

27

28

1

## TABLE OF CONTENTS

I.  INTRODUCTION .................................................................................................4

II.  BACKGROUND AND PROCEDURE.................................................................5

  A. Exchange of Materials and Investigation.......................................................5

  B. Mediation and Subsequent Negotiations .......................................................6

III.  PLAINTIFFS' CLAIMS .....................................................................................6

IV.  SUMMARY OF THE SETTLEMENT TERMS...................................................7

  A. Composition of the Settlement Class..............................................................7

  B. Settlement Consideration and Calculation of Settlement Payments...........................7

  C. Prospective Relief ..........................................................................................8

  D. Release by the Settlement Class ....................................................................9

V.  THE COURT SHOULD CERTIFY THE PROPOSED SETTLEMENT CLASS SINCE
THE SETTLEMENT SATISFIES THE REQUIREMENTS OF FEDERAL RULE OF
CIVIL PROCEDURE 23. ...................................................................................9

  A. The Settlement Class is Sufficiently Numerous and Ascertainable...........................10

  B. There Are Questions of Law and Fact Common to the Class.................................10

  C. The Representative Plaintiffs' Claims Are Typical of the Claims of the Class and Subclasses11

  D. Plaintiffs and Plaintiffs' Counsel Will Adequately Represent the Class. ..................12

  E. The Class Can Be Certified Because the Requirements of FRCP Rule 23(b)(3) Are Satisfied 12

    1.  Common Issues of Law and Fact Predominate .................................................12

    2.  The Class Action Mechanism is Superior to Any Other Methods of Adjudication..............13

VI.  THE PROPOSED CLASS ACTION SHOULD RECEIVE PRELIMINARY
APPROVAL AS IT MEETS ALL OF THE REQUIREMENTS OF RULE 23 ........................13

  A. The Class Representatives and Class Counsel Have Adequately Represented the Class..........14

  B. The Settlement Is the Product of Arms-Length Negotiations and Is Therefore Entitled to a
Presumption of Fairness..................................................................................14

i

C. The Relief Provided to the Class Is Adequate ...................................................................14

   1. Costs, Risks, and Delay of Trial and Appeal ............................................................15

   2. Defendant Has Asserted Defenses Creating Risk that the Class Will Receive No Recovery If the Claims at Issue Are Not Settled ............................................................15

   3. Plaintiffs' Exposure Analysis ....................................................................................17

   4. Allocation to LWDA for PAGA Penalties .................................................................20

   5. Benefits to Early Resolution ......................................................................................20

D. The Method of Distributing Relief to the Class Is Effective. ..........................................21

E. The Requested Attorneys' Fees Are Conservative and Reasonable. ................................22

F. There Are No Agreements Made in Connection with the Settlement Other than What Plaintiffs Already Identified. ..........................................................................................................23

G. The Settlement Provides for Equitable Treatment of Class Members. .............................23

H. The Court Should Approve Phoenix Class Action Administration Solutions as Settlement Administrator ...................................................................................................................25

VII.   CONCLUSION..........................................................................................................25

ii

# TABLE OF AUTHORITIES

**Cases**

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997).............................................................................................12

*Amey v. Cinemark*, 2015 WL 2251504, at *16
   (N.D. Cal. May 13, 2015) ...................................................................................19

*Bellinghausen v. Tractor Supply Co.*,
   306 F.R.D. 245 (N.D. Cal. 2015)........................................................................24

*Bolton v. U.S. Nursing Corp.*, No. 12-CV-4466-LB, 2013 WL 5700403
   (N.D. Cal. Oct. 18, 2013) ....................................................................................18

*Bowers v. First Student, Inc.*, 2015 WL 1862914, at *4
   (C.D. Cal. Apr. 23, 2015).....................................................................................19

*Carrington v. Starbucks Corp.*,
   30 Cal. App. 5th 514 (2014) ................................................................................18

*China Agritech, Inc. v. Resh*,
   138 S. Ct. 1800 (2018).........................................................................................24

*Cicero v. DirecTV, Inc.*, 2010 WL 2991486, at *6
   (C.D. Cal. July 27, 2010).....................................................................................23

*Drumm v. Morningstar, Inc.*,
   695 F. Supp. 2d 1014 (N.D. Cal. 2010) ..............................................................19

*Eisen v. Carlisle & Jacqueline*,
   417 U.S. 156 (1974).............................................................................................21

*Estrada v. Royalty Carpet Mills, Inc.*,
   Case No. S274340 ................................................................................................20

*Galeener v. Source Refrigeration & HVAC, Inc.*, 2015 U.S. Dist. LEXIS 193096, at *7-8
   (N.D. Cal. Aug. 21, 2015) ...................................................................................24

*Galvan v. KDI Distrib., Inc.*, 2011 WL 5116585, at *6
   (C.D. Cal. Oct. 25, 2011).....................................................................................11

*Garner v. State Farm Mut. Auto. Ins. Co.*, 2010 U.S. Dist. LEXIS 49477, at *47
   (N.D. Cal. Apr. 22, 2010) ....................................................................................24

*Glass v. UBS Fin. Servs., Inc.*, 2007 WL 221862, at *17
   (N.D. Cal. Jan. 26, 2007).....................................................................................24

*Hamilton v. Wal-Mart*,
   39 F.4th 575 (9th Cir. 2022) ................................................................................20

iii

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1988) ....................................................................11, 13, 15

*Hopkins v. Stryker Sales Corp.*, 2012 WL 1715091, at \*9
   (N.D. Cal. May 14, 2012) ..........................................................................................11

*Hopson v. Hanesbrands Inc.*, Case No. 08-00844, 2009 U.S. Dist. LEXIS 33900, at \*24
   (N.D. Cal. Apr. 3, 2009) ............................................................................................20

*In re Apple Computer, Inc. Derivative Litig.*, 2008 U.S. Dist. LEXIS 108195
   (N.D. Cal. Nov. 5, 2008) ...........................................................................................14

*In re Bluetooth Headset Prods. Liab. Litig.*,
   654 F.3d 935 (9th Cir. 2011) ....................................................................................22

*In re Capacitors Antitrust Litig.*, 2018 WL 4790575, at \*2
   (N.D. Cal. Sept. 21, 2018) .........................................................................................23

*In re High-Tech Emp. Antitrust Litig.*, 2013 WL 6328811, at \*1
   (N.D. Cal. Oct. 30, 2013) ..........................................................................................13

*In re Mego Fin. Corp. Sec. Litig.*,
   213 F.3d 454 (9th Cir. 2000) ........................................................................12, 13, 23

*In re Tableware*,
   (484 F. Supp. 2d at 1079)...............................................................................13, 15

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, and Prods. Liab. Litig.*,
   2016 WL 4010049, \*14 (N.D. Cal. July 26, 2016)...................................................14

*Johnson v. Gen. Mills, Inc.*, 2013 WL 3213832, at \*6
   (C.D. Cal. June 17, 2013) ..........................................................................................23

*Johnson v. Quantum Learning Network, Inc.*, 2016 WL 4529607, at \*1
   (N.D. Cal. Aug. 30, 2016)..........................................................................................13

*Laffitte v. Robert Half Int'l, Inc.*,
   1 Cal. 5th 480 (2016) .................................................................................................22

*Levya v. Medline Indus, Inc.*,
   716 F.3d 510 (9th Cir. 2013) ......................................................................................9

*Linney v. Cellular Alaska P'ship*,
   151 F.3d 1234 (9th Cir. 1998) ..................................................................................21

*Lusby v. Gamestop Inc.*,
   297 F.R.D. 400 (N.D. Cal. 2013) ..............................................................................13

*Milburn v. PetSmart, Inc.*, 2019 WL 5566313, at \*10
   (E.D. Cal. Oct. 29, 2019) ...........................................................................................23

*Moore v. PetSmart, Inc.*, 2015 WL 5439000, at \*13
   (N.D. Cal. Aug. 4, 2015)............................................................................................24

iv

*Morales v. Bridgestone*,
 Case No. 30-2017-00900244 (Orange County Super. Ct.) ................................................18

*Morris v. Lifescan, Inc.*,
 54 Fed. App'x. 663, 664 (9th Cir. 2003) ........................................................................23

*Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*,
 221 F.R.D. 523 (C.D. Cal. 2004) ..................................................................................20

*Ortiz v. CVS Caremark Corp.*, 2014 WL 1117614, at *4
 (N.D. Cal. Mar. 19, 2014) ............................................................................................19

*Parr v. Golden State Overnight Delivery Service, Inc.*,
 2014 WL 11199453, *2 ................................................................................................18

*Parsons v. Ryan*,
 754 F.3d 657 (9th Cir. 2014) ........................................................................................10

*Reed v. Thousand Oaks Toyota*, No. 56-2012-00419282-CU-OE-VTA, 2013 WL 8118716
 (Cal. Super. Ct. Apr. 8, 2013) ......................................................................................18

*Stearns v. Ticketmaster Corp.*,
 655 F.3d 1013 (9th Cir. 2011) ......................................................................................12

*Vedachalam v. Tata Consultancy Servs., Ltd*, 2013 WL 3941319, at *2
 (N.D. Cal. July 18, 2013) ..............................................................................................23

*Vizcaino v. Microsoft Corp.*,
 142 F. Supp. 2d 1299 (W.D. Wash. 2001) ....................................................................23

*Wal-Mart Stores, Inc. v. Dukes*,
 131 S. Ct. 2541 (2011) ..................................................................................................9

*Wal-Mart Stores, Inc. v. Dukes*,
 564 U.S. 338 S. Ct. 2541, 2556, 180 L. Ed. 2d 374 (2011) ..........................................10

*Wesson v. Staples*,
 68 Cal. App. 5th 746 (Sep. 9, 2021) ......................................................................19, 20

**Statutes**

California Labor Code Sections

 201 ................................................................................................................................9
 203 ..........................................................................................................................7, 16
 204 ................................................................................................................................9
 226 ..........................................................................................................................9, 16
 226(a)(8) ................................................................................................................16, 19
 226.2 ............................................................................................................................9
 2802 ............................................................................................................................11

Cal. Bus. & Prof. Code §§ 17200 ......................................................................................9

v

Federal Rules of Civil Procedure

23(a) ........................................................................................................................................2
23(a)(1) ..............................................................................................................................9, 10
23(a)(2) ...................................................................................................................................10
23(a)(3) ...................................................................................................................................11
23(a)(4) ...................................................................................................................................12
23(b) .........................................................................................................................................9
23(b)(3) .........................................................................................................................2, 9, 12
23(c)(2) ...................................................................................................................................21
23(c)(2)(B) ...........................................................................................................................2, 6
23(e)(2)(C) ..............................................................................................................................15
23(e)(3) ...................................................................................................................................14

**Treatises**

Newberg on Class Actions (4th ed.) § 11:27 ...................................................................12

## NOTICE OF MOTION AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL

## OF CLASS AND REPRESENTATIVE ACTION SETTLEMENT

**PLEASE TAKE NOTICE THAT** on August 17, 2023, at 1:30 p.m. at the United States District Court for the Eastern District of California, located at 501 I Street, Courtroom 10, 13th Floor, Sacramento, California, 95814, Plaintiffs Tim Botonis and Liam Patrick Meikle, individually and on behalf of the putative class members will, and hereby do, move this Court to:

1.      Grant preliminary approval of the class and representative action settlement reached between Plaintiffs Tim Botonis and Liam Patrick Meikle ("Plaintiffs") and Defendant Bimbo Bakeries USA, Inc. ("Defendant") (Plaintiffs and Defendant collectively referred to as the "Parties") as set forth in the Parties' Joint Stipulation of Class Action and Representative Action Settlement (the "Settlement Agreement" or "Agreement"), which is attached as **Exhibit A** to the Declaration of Costa Kerestenzis, filed concurrently herewith in support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class and Representative Action Settlement ("Kerestenzis Decl.");

2.      Certify the Class for settlement purposes, defined as: "all current and former individuals who are or previously were employed by Defendant in California as Transport Associates (also referred to as Drivers, including Relief Drivers) and Route Sales Professionals or any associate doing similar work[1] during the period May 10, 2018 through August 26, 2023" (the "Class" or "Settlement Class");

3.      Approve the Notice of Proposed Settlement of Class and Representative Action (in the form set forth as **Exhibit 1** to the Settlement Agreement);

4.      Approve Tim Botonis and Liam Patrick Meikle as the Class Representatives;

5.      Approve Beeson, Tayer & Bodine, APC as Class Counsel;

6.      Approve Phoenix Settlement Administrators as the Settlement Administrator;

7.      Approve the establishment of a Qualified Settlement Fund pursuant to Treas. Reg. § 1.468B-1;

8.      Schedule the date for the final approval hearing; and

---

[1] Employees encompassed within the definition of Aggrieved Employees include but are not limited to the following: Bakery RSR; Commission Sales Representative; Relief Driver; Relief Drivers; Relief Route Drivers; Route Relief; Route Sales Representative; Route Sales Representative-Express Routes; Route Sales Representatives; Vacation Relief RSR.

PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL
OF CLASS AND REPRESENTATIVE ACTION SETTLEMENT AND MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT THEREOF
Case No. 2:22-CV-01453-DJC-DB

1

9.     Enter the [Proposed] Order Granting Motion for Preliminary Approval of Class and Representative Action Settlement filed herewith.

This Motion is unopposed as based on the Settlement Agreement.  This Motion is made on the grounds that:

a.     The Settlement Class meets all of the requirements for class certification for purposes of settlement pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure, but without evaluation of the manageability factor of (b)(3) given that there will be no trial;

b.     The Settlement is fair, adequate, and reasonable as required under Rule 23(e) of the Federal Rules of Civil Procedure;

c.     Plaintiffs and their counsel are adequate to represent the Settlement Class, as required by Rule 23(a)(4) and (g) of the Federal Rules of Civil Procedure;

d.     The notice procedures and related forms comport with all relevant due process requirements and the requirements of Rule 23(c)(2)(B) of the Federal Rules of Civil Procedure; and

e.     Based on the foregoing, notice should be directed to Class Members and a final fairness hearing should be scheduled.

This Motion is based upon:  (1) this Notice of Motion and Motion; (2) the Memorandum of Points and Authorities in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class and Representative Action Settlement; (3) the Declaration of Costa Kerestenzis; (4) the Declaration of Plaintiff Tim Botonis; (5) the Declaration of Plaintiff Liam Patrick Meikle; (6)  the Settlement Agreement; (7) the Notice of Proposed Class and Representative Action Settlement; (8) the [Proposed] Order Granting Preliminary Approval of Class and Representative Action Settlement; (9) the records,

//

//

//

//

2

pleadings, and papers filed in this action; and (10) such other documentary and oral evidence or argument as may be presented to the Court at or prior to the hearing of this Motion.

Dated: July 13, 2023                              BEESON, TAYER & BODINE, APC


                                                  By     /s/ Sarah S. Kanbar
                                                       SARAH S. KANBAR
                                                       Attorneys for Plaintiffs Tim Botonis and
                                                       Liam Patrick Meikle

3

## **MEMORANDUM OF POINTS AND AUTHORITIES**

Plaintiffs Tim Botonis and Liam Patrick Meikle ("Plaintiffs") request preliminary approval of a class and representative action settlement reflected in the executed Joint Stipulation of Class Action and PAGA Settlement Agreement ("Settlement Agreement") submitted with this application. The Settlement is between Plaintiffs and Defendant Bimbo Bakeries, USA, Inc. ("Defendant"). Defendant does not oppose the motion.

## I.    **INTRODUCTION**

Plaintiffs and Defendant have reached a settlement of the above-captioned class and representative action ("Settlement"), which is embodied in the Settlement Agreement, attached as **Exhibit A** to the Declaration of Costa Kerestenzis ("Kerestenzis Decl."), filed concurrently herewith. By this Motion, Plaintiffs seek preliminary approval of the Agreement as fair, reasonable, and adequate, entry of the Preliminary Approval Order, and scheduling of the Final Approval Hearing to determine final approval of the Settlement. The Court need not yet engage in a full evaluation of the Settlement, which will follow notice and the opportunity for the class members to opt-out or object.

The proposed $875,000 non-reversionary settlement of this class and representative wage and hour case was achieved after extensive negotiations. The Settlement will provide monetary payments to over 1,692 Class Members with an average gross settlement award of $417.10 per Class Member. The Settlement also involves non-monetary prospective relief, as Defendant is implementing a new expense reimbursement policy and providing communications-related upgrades to the company-issued devices provided to Class Members and Aggrieved Employees in connection with the Settlement. As set forth more fully below, the proposed Settlement satisfies all the criteria for settlement approval under Federal Rule of Civil Procedure 23. The Settlement was reached after substantial investigation and informal discovery consisting of the production by Defendants in advance of mediation of relevant policies, records, and data regarding Plaintiffs and that the Court preliminarily approve the proposed Settlement, certify the proposed Class for settlement purposes, approve the distribution of notice of the proposed Settlement, and set a Final Approval Hearing.

4

## II.    BACKGROUND AND PROCEDURE

Defendant directly or through its affiliates operates bakeries, distribution centers, and sales centers throughout California.  Plaintiffs work out of Defendant's Sacramento distribution center. Plaintiff Botonis is a Route Sales Professional and Plaintiff Meikle is a Transport Associate. (Kerestenzis Decl., ¶ 7.)

On May 10, 2022, Plaintiffs filed a putative class action lawsuit in Sacramento County Superior Court on behalf of a putative class comprising "all current and former drivers (including relief drivers) and route salespersons, ("the Class" or "putative Class Members") who are or have been employed by Defendant in the State of California and to whom Defendant has failed to (a) reimburse for business expenses; (b) provide accurate itemized wage statements; and (c) pay wages upon termination or severance of employment at any time for four (4) years prior to the original filing of this lawsuit and continuing through the date of judgment in this action related to the allegations set forth above regarding the use of personal cell phones." Complaint, ¶ 23.  Plaintiffs thereafter filed an Amended Class Action Complaint to include a PAGA claim and seeking PAGA penalties based on the foregoing alleged Labor Code violations.  Plaintiff's Class Action Complaint and Amended Class Action Complaint are specifically based on Defendant's alleged failure to reimburse employees for the business expenses, specifically the alleged use of their personal cell phones for work-related purposes.  Complaint, ¶15.

On August 16, 2022, Defendant removed the state court action to the United States District Court for the Eastern District of California, where it has since been pending.

### A.    Exchange of Materials and Investigation

In advance of mediation, the Parties engaged in a substantial exchange of information and engaged in an analysis of the underlying merits of Plaintiffs' claims, defenses thereto, potential damages, and possible certification.  Defendant produced documents, including: Defendant's employment policies and procedures relating to cell phone use and expense reimbursements; Plaintiffs' personnel files and pay records; Plaintiffs' collective bargaining agreement; job putative class members.  The negotiations were at arms-length and non-collusive and were facilitated by experienced wage and hour mediator John Hyland over the course of a full-day mediation session and

5

follow-up negotiations between the parties. Accordingly, Plaintiffs request descriptions applicable to Plaintiffs and putative class members; and data points for the putative Class Members to assess potential exposure on Plaintiffs' putative class and PAGA claims.

Plaintiffs' counsel performed a lengthy and examination of the records and researching the average cost of a cell phone bill by reviewing the cell phone costs for the top four providers and, importantly, interviewing Class Members and working with the Class Representatives to understand the total time members spend on their phones for work to assess the strength of the claims and each parties' positions. Plaintiffs' counsel also conducted research on other cell phone reimbursement settlements to determine a reasonable settlement. (Kerestenzis Decl., ¶¶ 13-15.) In addition to the understanding gained regarding the claims, Class Counsel also drew on their extensive experience in similar cases to assess the strengths and weaknesses of Plaintiffs' claims and the value of same. (Kerestenzis Decl., ¶¶ 18-21; 28-34.)

### B.   Mediation and Subsequent Negotiations

On January 17, 2023, the Parties participated in a full-day mediation with John Hyland, a third-party neutral who has served as lead class counsel for dozens of wage/hour class actions and is experienced in mediating wage and hour class actions. During mediation, the Parties engaged in approximately 9 hours of extensive and informed arm's-length negotiations. While the Parties did not settle on the day of mediation, both parties ultimately accepted a mediator's proposal, which outlined a framework for resolution. After accepting the mediator's proposal, the parties continued to negotiate at arm's-length over the remaining terms of the settlement. (Kerestenzis Decl., ¶¶ 16-17.)

## III.   PLAINTIFFS' CLAIMS

Plaintiffs' Complaint is premised on their claim that Defendant failed to provide reasonable and necessary expense reimbursement to class members for the alleged business use of their personal cell phones, in violation of Labor Code section 2802. Specifically, Plaintiffs' expense reimbursement claim is based on the theory that they and other putative class members were required to use their personal cell phones for work-related purposes without being provided reimbursement. The Complaint alleges: "All Plaintiffs and the putative Class Members are regularly required to use their personal cell phones

6

for work purposes, including to communicate regarding the ordering and delivery of the Defendant's products. All Plaintiffs and the putative Class are required to be available by their cell phone and will receive communications about work issues through their personal cell phones."  Complaint, ¶ 15. Based on this alleged failure to reimburse expenses, Plaintiffs assert derivative claims for failure to provide accurate itemized wage statements under Labor Code section 226 and waiting time penalties under Labor Code section 203 and related PAGA penalties.

Additionally, Plaintiffs' PAGA claims are derivative of all of Plaintiffs' above-described wage and hour claims based on the Labor Code.  Accordingly, Plaintiffs' PAGA claims cover all Class Members who also qualify as PAGA Members—*i.e.*, if the Class Member is currently or was employed by Defendant in California as a Transport Associate (also referred to as Drivers, including Relief Drivers) or Route Sales Professional or any associate doing similar work[2] during the Class Period.  (Kerestenzis Decl., Ex. A, Settlement Agreement at ¶ 23.)

## IV.    SUMMARY OF THE SETTLEMENT TERMS

### A.    Composition of the Settlement Class

The Class or Settlement Class consists of "all current and former individuals who are or previously were employed by Defendant in California as Transport Associates or Route Sales Professionals or any associate doing similar work[3] during the Class Period (i.e., May 10, 2018 to August 26, 2023)."  All Class Members are subject to Plaintiffs' theory of alleged unpaid expense reimbursement for the alleged use of their personal cell phones for work-related purposes and related derivative statutory and PAGA penalties.

### B.    Settlement Consideration and Calculation of Settlement Payments

Plaintiffs and Defendant have agreed to settle all class claims and representative claims alleged in the Action in exchange for the Gross Settlement Amount ("GSA") of $875,000.  The GSA includes: (1) settlement payments to Participating Class Members; (2) up to $130,000 in attorneys' fees, or less than 15% of the GSA; (3) up to $10,000 in litigation costs and expenses to Class

---

[2] Employees encompassed within the definition of Aggrieved Employees include but are not limited to the following: Bakery RSR; Commission Sales Representative; Relief Driver; Relief Drivers; Relief Route Drivers; Route Relief; Route Sales Representative; Route Sales Representative-Express Routes; Route Sales Representatives; Vacation Relief RSR.

[3] *See* positions identified in footnote 2.

PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED MOTIONFOR PRELIMINARY APPROVAL
OF CLASS AND REPRESENTATIVE ACTION SETTLEMENT AND MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT THEREOF
Case No. 2:22-CV-01453-DJC-DB

7

1    Counsel; (4) class representative service awards of $5,000 each to Plaintiffs; (5) $10,000 allocated to

2    settle PAGA claims, of which a $7,500 payment will be made to the LWDA to account for the

3    LWDA's 75% portion of the PAGA penalties; and, (6) Settlement Administrator fees capped at

4    $15,000, with an estimate from Phoenix Settlement Administrators that the cost will be $11,765.

5    (Kerestenzis Decl., ¶ 23.)  Based on the above, the Net Settlement Amount ("NSA") from which

6    payments to Participating Class Members will be paid is projected to be no less than $705,735.

7    (Kerestenzis Decl., ¶ 23.)

8          Subject to the Court approving attorneys' fees and costs, the payment to the LWDA,

9    Settlement Administration Costs, and Plaintiffs' Service Payments, the NSA will be distributed to all

10   Participating Class Members, and will be apportioned among Settlement Class Members based on

11   whether the Settlement Class Member qualifies as a PAGA Member in addition to being a Class

12   Member. (Kerestenzis Decl., Ex. A, Settlement Agreement at ¶ 49.)  Because the GSA is non-

13   reversionary, 100% of the NSA will be paid to Participating Class Members without the need to a

14   submit claim for payment.  (Kerestenzis Decl., Ex. A, Settlement Agreement at ¶ 50.)  This recovery

15   is in the range of other wage and hour class action settlements approved by California state and

16   federal courts and is adequate and reasonable.

17        **C.    Prospective Relief**

18         In addition to the monetary relief provided under the settlement, Defendant also agreed as part

19   of the settlement to issue, by the time of preliminary approval, a revised expense reimbursement

20   policy applicable to Settlement Class Members and Aggrieved Employees that will note the right of

21   California employees to submit requests for expense reimbursement in instances when employees

22   believe they are required to use their personal cell phones for reasonable and necessary work-related

23   purposes.  Defendant also agreed to provide, by preliminary approval, communications-related

24   updates to company-issued devices, (e.g., tablets for Transport Associates and handheld computers

25   for Route Sales Professionals) that will enable texting and/or talking capabilities and thus minimize

26   or eliminate the need to use cell phones for work. (*See* Kerestenzis Decl., ¶¶ 25-26; Ex. A,

27   Settlement Agreement at ¶ 52.)

28                                                                                                          8

**D.    Release by the Settlement Class**

In exchange for the GSA, Class Members (including Plaintiffs) who do not opt out will agree to release for the period of May 10, 2018 to August 26, 2023 any and all known and unknown claims which have been or could have been pled relating to Defendant's alleged failure to reimburse business expenses for class members' alleged use of their personal cell phones for work-related purposes, including any claims pursuant to or predicated on California Labor Code sections 201-204, 226, 226.2, 1174, 1174.5, 1194, 1194.2, 1194.3, 1197, 1197.1, 1198, 1199, 2802, 2698-2699.5, Cal. Bus. & Prof. Code §§ 17200, (Kerestenzis Decl., Ex. A, Settlement Agreement at ¶¶ 4, 53, 57.) Additionally, all Class Members, regardless of whether they opt out from the settlement of Class Claims, will release the following PAGA claims: for the period from May 10, 2021 through the date of August 26, 2023, any and all claims for civil penalties pursuant to PAGA based on the allegations in Plaintiffs' PAGA notice and the allegations and PAGA claim asserted in the operative complaint regarding Defendant's alleged failure to reimburse Aggrieved Employees for business expenses for the alleged use of their personal cell phones for work-related purposes, as well as related claims for failure to provide accurate itemized wage statements, failure to pay all earned wages due to separated employees, and unfair competition.  (Kerestenzis Decl., Ex. A, Settlement Agreement at ¶¶ 23, 54.)

The above releases are directly related to Plaintiffs' claims; accordingly, the releases in the Settlement Agreement are narrowly tailored to the claims alleged in the Action or related derivative claims which were pled or could have been alleged in the Action.

**V.    THE COURT SHOULD CERTIFY THE PROPOSED SETTLEMENT CLASS SINCE THE SETTLEMENT SATISFIES THE REQUIREMENTS OF FEDERAL RULE OF CIVIL PROCEDURE 23.**

Plaintiffs seek certification of the Class.  A party seeking to certify a class must demonstrate that it has met the "four threshold requirements of Federal Rule of Procedure 23(a): (i) numerosity; (ii) commonality; (iii) typicality; and (iv) adequacy of representation." *Levya v. Medline Indus, Inc.*, 716 F.3d 510, 512 (9th Cir. 2013).  Once these prerequisites are satisfied, a court must consider whether the proposed class can be maintained under at least one of the requirements of Rule 23(b). *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2548 (2011).  Plaintiffs, here, seek certification pursuant to Rule 23(b)(3), which requires that "questions of law or fact common to class members

9

1    predominate over any questions affecting only individual members, and that a class action is superior

2    to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P.

3    23(b)(3). However, the Court need not evaluate the manageability prong of 23(b)(3), given that there

4    will be no trial.

5       **A.    The Settlement Class is Sufficiently Numerous and Ascertainable.**

6       Rule 23(a)(1) requires the class to be "so numerous that joinder of all members is

7    impracticable[.]" Fed. R. Civ. P. 23(a)(1). There are approximately 1,692 Class Members. *See*

8    (Kerestenzis Decl., ¶ 23.) With respect to Plaintiffs' claims, all Class Members are Transport

9    Associates or Route Sales Professionals or any associate doing similar work and were subject to

10   Defendant's alleged common policies and practices; therefore, Plaintiffs assert that the group is

11   ascertainable.

12      **B.    There Are Questions of Law and Fact Common to the Class.**

13      Rule 23(a)(2) requires the existence of questions of law or fact common to the class[.] Fed.

14   R. Civ. P. 23(a)(2). If it can be answered with common proof, "for purposes of Rule 23(a)(2) even a

15   single common question will do." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359, 131 S. Ct.

16   2541, 2556, 180 L. Ed. 2d 374 (2011) (internal quotation marks and brackets omitted); *see Parsons v.*

17   *Ryan*, 754 F.3d 657, 675 (9th Cir. 2014) (finding it is not necessary "that every question in the case,

18   or even a preponderance of questions, is capable of class wide resolution. So long as there is even a

19   single common question, a would-be class can satisfy the commonality requirement of Rule

20   23(a)(2)." (internal quotation marks omitted)). Commonality requires the plaintiff to demonstrate

21   that the class members have suffered the same injury but "[t]his does not mean merely that they have

22   all suffered a violation of the same provision of law." *Wal-Mart Stores*, 564 U.S. at 349-50 (internal

23   quotation marks omitted). Rather, "[t]hat common contention . . . must be of such a nature that it is

24   capable of classwide resolution—which means that determination of its truth or falsity will resolve an

25   issue that is central to the validity of each one of the claims in one stroke." *Id.*

26      Plaintiffs assert that the commonality requirement is satisfied in this action. Here, Plaintiffs'

27   cell phone expense reimbursement claim turns on answers to overarching alleged common questions

28   regarding Defendant's policies and procedures that are capable of class-wide resolution for          10

settlement purposes.  For settlement purposes, the common questions asserted by Plaintiffs include: (1) whether Defendant required Transport Associates and Route Sales Professionals and other associates doing similar work to use their personal cellular phones for reasonable and necessary work-related purposes; and (2) whether Defendant failed to reimburse Transport Associates and Route Sales Professionals or other associates doing similar work for usage of their personal cellular phones for reasonable and necessary work-related purposes.  Plaintiffs contend these common questions predominate in the inquiry as to whether Defendant's business expense reimbursement policy violated Cal. Lab. Code § 2802 with respect to cell phone reimbursement.  *Hopkins v. Stryker Sales Corp.*, 2012 WL 1715091, at *9 (N.D. Cal. May 14, 2012) (finding "common questions predominate in the inquiry as to whether Stryker's business expense reimbursement policy violated Cal. Lab. Code § 2802.").

**C.    The Representative Plaintiffs' Claims Are Typical of the Claims of the Class and Subclasses**

Rule 23(a)(3) requires the representative parties' claims or defenses be "typical of the claims or defenses of the class[.]" Fed. R. Civ. P. 23(a)(3).  Courts have observed that "[u]nder the 'permissive standards' of this Rule, "representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Galvan v. KDI Distrib., Inc.*, 2011 WL 5116585, at *6 (C.D. Cal. Oct. 25, 2011) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1988)).

Here, Plaintiffs and the Class Members all worked for Defendant as Transport Associates and Route Sales Professionals and other associates doing similar work in California, and Plaintiffs contend that they were all subject to the same allegedly non-compliant policies and practices with respect to alleged personal cell phone usage for reasonable and necessary work-related purposes and resulting expense reimbursement.  For example, Plaintiffs allege that Defendant uniformly required Class Members to be available by cell phone to receive communications about work issues through their personal cell phones.  Plaintiffs also allege that Defendant failed to properly compensate Class Members for usage of their personal cell phones for work purposes.  As a result, Plaintiffs argue that they and Class Members have suffered the same or similar injuries resulting from the same or

11

similar conduct by Defendant and thus, they assert that the typicality requirement is satisfied for settlement purposes. (See Declaration of Tim Botonis ["Botonis Decl."], ¶¶ 3-5; Declaration of Liam Patrick Meikle ["Meikle Decl."], ¶¶ 3-4.)

### D. **Plaintiffs and Plaintiffs' Counsel Will Adequately Represent the Class.**

A class representative must be able to "fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(a)(4). To determine whether this requirement is met, the Ninth Circuit applies a two-pronged test: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members; and (2) will the named plaintiffs and their counsel will prosecute the action vigorously on behalf of the class. *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 462 (9th Cir. 2000). Plaintiffs have no conflict of interest with other Class Members and their interests are aligned with those of the Class Members, as they have vigorously represented the Class Members in seeking recovery for various alleged wrongdoings on their behalf. (Botonis Decl., ¶¶ 5-8; Meikle Decl., ¶¶ 4-7.) Plaintiffs' counsel has significant experience in prosecuting wage and hour class actions, and has previously been appointed as class counsel in similar cases. (Kerestenzis Decl., ¶¶ 3-5.)

### E. **The Class Can Be Certified Because the Requirements of FRCP Rule 23(b)(3) Are Satisfied.**

A class may be certified under Rule 23(b)(3) when "questions of law or fact common to the class members predominate over any questions affecting only individual members" and the class action mechanism is "superior" to other methods of adjudicating the controversy. Fed. R. Civ. Proc. 23(b)(3). Here, both prongs of the Rule 23(b)(3) analysis are satisfied. However, when a class action is certified for settlement purposes only, the Court "need not inquire whether the case, if tried, would present intractable management problems." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997); *see also* Newberg on Class Actions (4th ed.) § 11:27.

#### 1. *Common Issues of Law and Fact Predominate*

"The predominance inquiry ... asks whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1019 (9th Cir. 2011). "The focus is on the relationship between the common and individual issues." *Id.*

12

Here, Plaintiffs assert that the proposed Class is sufficiently cohesive to warrant certification of Plaintiffs' expense reimbursement claim for settlement purposes. Plaintiffs contend the following common issues exist: whether Defendant's alleged common policy and practice of requiring class members to use their personal cell phones for work-related purposes without providing expense reimbursement for the same violates California law. As such, the questions of law and fact that are common to the Class predominate over individual issues.

2.    *The Class Action Mechanism is Superior to Any Other Methods of Adjudication*

The fact that more than 1,692 individual claims "would not only unnecessarily burden the judiciary, but would prove uneconomic for potential plaintiffs," weighs heavily in favor of a class resolution. *See Hanlon*, 150 F.3d at 1023.

## VI.    THE PROPOSED CLASS ACTION SHOULD RECEIVE PRELIMINARY APPROVAL AS IT MEETS ALL OF THE REQUIREMENTS OF RULE 23

"[T]he preliminary approval stage [i]s an 'initial evaluation' of the fairness of the proposed settlement made by the court on the basis of written submissions and informal presentation from the settling parties." *In re High-Tech Emp. Antitrust Litig.*, 2013 WL 6328811, at *1 (N.D. Cal. Oct. 30, 2013). A court need not conduct a complete analysis of the fairness factors at this time because "some of these 'fairness" factors cannot be fully assessed until the Court conducts the final approval hearing[.]" *Lusby v. Gamestop Inc.*, 297 F.R.D. 400, 412 (N.D. Cal. 2013). Instead, at this stage, "[p]reliminary approval of a settlement and notice to the class is appropriate if '1] the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, [2] has no obvious deficiencies, [3] does not improperly grant preferential treatment to class representatives or segments of the class, and [4] falls within the range of possible approval.'" *Johnson v. Quantum Learning Network, Inc.*, 2016 WL 4529607, at *1 (N.D. Cal. Aug. 30, 2016) (quoting *In re Tableware*, 484 F. Supp. 2d at 1079). The "decision to approve or reject a settlement is committed to the sound discretion of the trial judge[.]" *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000), as amended (June 19, 2000) (internal quotation marks omitted). As set forth below, the Settlement meets these requirements.

13

**A.**     <u>The Class Representatives and Class Counsel Have Adequately Represented the Class.</u>

As discussed above, Plaintiffs and their counsel have adequately represented the Class. Therefore, this requirement is satisfied.

**B.**     <u>The Settlement Is the Product of Arms-Length Negotiations and Is Therefore Entitled to a Presumption of Fairness.</u>

"Preliminary approval is appropriate if the proposed settlement is the product of serious, informed, non-collusive negotiations." *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, and Prods. Liab. Litig.*, 2016 WL 4010049, *14 (N.D. Cal. July 26, 2016). Here, the Parties participated in a full-day mediation session with John Hyland, an experienced wage and hour mediator, and engaged in subsequent follow-up discussions with Mr. Hyland after an almost 10-hour mediation. At all times, the Parties' negotiations were adversarial and non-collusive. This participation weighs considerably against any inference of a collusive settlement. *See In re Apple Computer, Inc. Derivative Litig.*, 2008 U.S. Dist. LEXIS 108195 (N.D. Cal. Nov. 5, 2008).

The Parties were represented by experienced class action counsel throughout the negotiations resulting in this Settlement. Plaintiffs were represented by Beeson, Tayer & Bodine, APC, a firm that regularly litigates wage and hour claims, and has considerable experience settling wage and hour class actions. (*See* Kerestenzis Decl. ¶¶ 3-5.) Defendant was represented by Morgan Lewis, which operates a highly-respected nationwide class action defense practice.

Moreover, no indicia of potential collusion exists here where there is no reversion to Defendant, no disproportionate service payment to Plaintiffs as class representatives, and no disproportionately large attorneys' fee award. Therefore, the Settlement should be preliminarily approved for settlement purposes.

**C.**     <u>The Relief Provided to the Class Is Adequate.</u>

The third factor requires the Court to consider whether "the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P.

14

23(e)(2)(C).

### 1. *Costs, Risks, and Delay of Trial and Appeal*

In accordance with Rule 23(e)(2)'s instruction to evaluate "the costs, risks, and delay of trial and appeal," courts assess "the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; [and] the risk of maintaining class action status throughout the trial." *Hanlon*, 150 F.3d at 1026. This inquiry evaluates "plaintiffs' expected recovery balanced against the value of the settlement offer." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1080.

During this matter's pendency, Class Counsel thoroughly investigated and researched the claims in controversy and the defenses. The investigation entailed the exchange of information pursuant to substantial informal discovery. In the course of such informal discovery, Class Counsel received and analyzed adequate information to properly investigate and evaluate the claims, including: Defendant's employment policies and procedures relating to personal cell phone use and expense reimbursements; Plaintiffs' pay records; Plaintiffs' collective bargaining agreement and personnel files; and data regarding Class Members' months worked to assess potential damages and statutory and PAGA penalties. The extensive document and data exchange allowed Class Counsel to appreciate the strengths and weaknesses of the claims alleged against the benefits of the proposed Settlement. (Kerestenzis Decl., ¶¶ 13-15, 18-21, 28-34.)

### 2. *Defendant Has Asserted Defenses Creating Risk that the Class Will Receive No Recovery If the Claims at Issue Are Not Settled*

Throughout this litigation, Defendant has indicated that it intends to vigorously contest the forum of this litigation, class certification, PAGA manageability, and Plaintiffs' claims on the merits. While Plaintiffs do not agree with Defendant's arguments regarding class certification, PAGA manageability, or Defendant's defenses on the merits to Plaintiffs' claims, Plaintiffs recognize that there is a risk that the Court and/or a jury will agree with Defendant, and thus, limit or eliminate Class Members' ability to recover on the claims at issue.

With respect to Plaintiffs' claim for reimbursement of necessary business expenses, Defendant contended there was no written or unwritten policy that required Transport Associates or Route Service Professionals to use their personal phones for work-related purposes. Defendant

15

also contended that Plaintiffs' and putative class members' job duties did not require them to use their personal cell phones for work-related purposes. Further, Defendant contended that its policies in fact prohibited Plaintiffs and Class Members from using their personal cell phones while driving, which is a primary job duty of both Transport Associates and Route Sales Professionals. Also, Defendant asserted Plaintiffs could not proffer any evidence of any policy whereby Defendant refused to provide a company issued phone to any putative class member who may have requested one. Furthermore, during the relevant time period, Defendant contended that Class Members submitted and received expense reimbursement through Defendant's SAP Concur program for various expenses such as mileage reimbursement. Finally, Defendant contended that it was not aware of any requests by Plaintiffs for cell phone reimbursement for instances when they used their personal phones for work-related purposes. As such, Defendant argued Plaintiffs and putative Class Members did not incur any other reasonable and necessary business expenses, but that even if they had, they had the opportunity to request reimbursement of any such expenses but failed to do so.

With respect to Plaintiffs' derivative claims, Defendant argued that a failure to pay expense reimbursement does not support a claim for waiting time penalties under Labor Code section 203 or inaccurate wage statements under Labor Code section 226. Furthermore, waiting time penalties are recoverable only when a willful violation of section 201 or 202 has occurred. As for wage statements, Defendant argued that there can be no violation of Labor Code section 226(a)(8) for a failure to provide expense reimbursement, given that employers are not required to list expense reimbursement on a wage statement.

Defendant had good faith defenses to all of Plaintiffs' claims, and, as such, maintained Plaintiffs would not be able to recover damages for their claims, either on a statutory basis or civil penalties under PAGA. As for PAGA, Defendant contended that Plaintiffs and putative aggrieved employees would not recover civil penalties because they are not "aggrieved employees" because their underlying Labor Code section 2802 claims would fail as a matter of law, so they would not be entitled to any PAGA civil penalties.

16

3.   *Plaintiffs' Exposure Analysis*

Based upon the analysis of various class data, including a sampling of Defendant's business records, there were approximately 1,692 putative class members who are or previously were employed by Defendant in California as Transport Associates (also referred to as Drivers, including Relief Drivers) and Route Sales Professionals or any associate doing similar work[4] since May 10, 2018.  Plaintiffs determined that the average cost of a phone and the cost of coverage in California is about $114.00 a month.  Plaintiffs took the position that the putative Class Members use their cell phone for work purposes for approximately one hour each day.  Plaintiffs used that framework to negotiate the settlement and determine how much each employee was owed per month.  Moreover, in researching similar claims, Plaintiffs' determined that a settlement which would yield around $10.00 a month was a reasonable settlement which was ultimately attained in this case.  (Kerestenzis Decl., ¶¶ 13-15, 18-21, 24, 30.)

As noted above, Plaintiffs' expense reimbursement claim is based on the theory that they and other putative class members were required to use their personal cell phones for work-related purposes without reimbursement, including communicating regarding the ordering and delivery of Defendant's products and being available to receive communications about work issues through their personal cell phones.  Complaint, ¶ 15.  Even though Plaintiffs argue that these theories of expense reimbursement liability are certifiable,[5] Plaintiffs' counsel ascribed a lower value to these theories because there is a factual dispute regarding the extent to which the putative Class Members use their personal cell phones for work and the Defendant maintains a policy limiting employees' ability to use their personal cell phones while driving or operating a vehicle.  (Kerestenzis Decl., ¶¶ 18-21.)  Further, Plaintiffs considered other issues such as a legal question as to whether business expense reimbursements are not considered wages, such that an employee may not be entitled to penalties for

---

[4] Employees encompassed within the definition of Aggrieved Employees include but are not limited to the following: Bakery RSR; Commission Sales Representative; Relief Driver; Relief Drivers; Relief Route Drivers; Route Relief; Route Sales Representative; Route Sales Representative-Express Routes; Route Sales Representatives; Vacation Relief RSR.

[5] Defendant also contended Plaintiffs' cell phone expense claim would not be certified, citing cases where courts denied certification of such claims. *See, e.g., Casey v. Home Depot*, 2016 WL 7479347, at *29 (C.D. Cal. Sept. 15, 2016); *Dugan v. Ashley Furniture Indus., Inc.*, 2016 WL 9173459, at *4 (C.D. Cal. Nov. 29, 2016).  This was another risk Plaintiffs considered in assessing the value of the settlement.

failure to provide accurate wage statements or provide wages upon termination. (Kerestenzis Decl., ¶¶ 29-31.)

The amount of PAGA penalties would add a modest amount to the valuation of the PAGA claims for settlement purposes. In this regard, Defendant strongly argued that Labor Code § 2699(e)(2) expressly provides that "…a court may award a lesser amount than the maximum civil penalty amount specified by this part if, based on the facts and circumstances of the particular case, to do otherwise would result in an award that is unjust, arbitrary and oppressive, or confiscatory." There is a substantial risk that the Court could significantly reduce civil penalties if it is unpersuaded by Plaintiffs' evidence of willful and intentional conduct. *See Carrington v. Starbucks Corp.*, 30 Cal. App. 5th 514 (2014) (PAGA penalties reduced by 90%); *Parr v. Golden State Overnight Delivery Service, Inc.*, 2014 WL 11199453, *2 (Alameda Super. Ct. Jul. 10, 2014) (PAGA penalties reduced by 95%); *Morales v. Bridgestone*, Case No. 30-2017-00900244 (Orange County Super. Ct.) (Aug. 2, 2018) (PAGA penalties reduced by 94%). Moreover, approval of PAGA allocations in the class context show wide variance in the amounts determined by the Court to be fair, reasonable and adequate. *See e.g., Reed v. Thousand Oaks Toyota*, No. 56-2012-00419282-CU-OE-VTA, 2013 WL 8118716 (Cal. Super. Ct. Apr. 8, 2013) (class action settlement approved for $108,624, with $1,500 allocated towards PAGA penalties); *Bolton v. U.S. Nursing Corp.*, No. 12-CV-4466-LB, 2013 WL 5700403 (N.D. Cal. Oct. 18, 2013) (approving class action settlement for $1,700,000, with $15,000 allocated towards PAGA).

Here, due to Defendant's defenses, Defendant argued that there should be a low valuation for the PAGA claims. For example, Defendant maintained there was no unlawful uniform reimbursement policy consistently applied to any group of employees and, therefore, Plaintiffs will face insurmountable difficulties in pursuing their PAGA claim on behalf of themselves as putative aggrieved employees or on behalf of other employees at the Sacramento facility where Plaintiffs worked, and even more so on behalf of other California employees working out of Defendant's other facilities. Plaintiffs' counsel also considered the difficulty of proving the frequency and extent that Class Members used their personal cell phones and Defendant's own policies that would have created

18

1    significant risks with continued litigation. (Kerestenzis Decl., ¶¶ 18-21, 29-31.)

2          Plaintiffs' counsel also applied appropriate discounts to Plaintiffs' PAGA claim predicated on

3    alleged waiting time penalties claim for former employees because of (1) Defendant's defenses

4    discussed above; (2) Defendant's argument that waiting time penalties are recoverable only when a

5    *willful* violation has occurred (*see* Cal. Code Regs. Tit. 8, § 13520); and (3) Defendant's argument

6    that a waiting time penalties claim cannot be based on failure to pay expense reimbursements (*see*

7    *Drumm v. Morningstar, Inc.*, 695 F. Supp. 2d 1014, 1021 (N.D. Cal. 2010) ("expense

8    reimbursements are not 'amounts for labor performed,' and are not appropriately part of the [waiting

9    time penalties] calculation.") (internal citation omitted). (Kerestenzis Decl., ¶ 31.)

10         Appropriate discounts were also applied to Plaintiffs' wage statements claims in light of

11   Defendant's argument there can be no violation of Labor Code section 226(a)(8) for a failure to

12   provide expense reimbursement, given that employers are not required to list expense reimbursement

13   on a wage statement. (Kerestenzis Decl., ¶ 31.)

14         Additionally, Defendant raised manageability defenses to Plaintiffs' PAGA claims.

15   Defendant maintains that a PAGA claim will be deemed unmanageable if individualized inquiries are

16   necessary to establish liability and ascertain which employees are aggrieved. *See, e.g., Ortiz v. CVS*

17   *Caremark Corp.*, 2014 WL 1117614, at *4 (N.D. Cal. Mar. 19, 2014) (striking PAGA claim as

18   unmanageable) ("[T]he circumstances of this case make the PAGA claim here unmanageable because

19   a multitude of individualized assessments would be necessary … [p]roof of this [off-the-clock] claim

20   would be unmanageable, and could not be done with statistical or survey evidence but only with

21   detailed inquiries about each employee claimed to have done so and her manager's knowledge

22   thereof."); *Amey v. Cinemark*, 2015 WL 2251504, at *16 (N.D. Cal. May 13, 2015) (dismissing

23   PAGA claims; "[W]hen the evidence shows, as it does here, that numerous individualized

24   determinations would be necessary to determine whether any class member has been injured by

25   [defendant's] conduct, then allowing a representative action to proceed is inappropriate."); *Bowers v.*

26   *First Student, Inc.*, 2015 WL 1862914, at *4 (C.D. Cal. Apr. 23, 2015) (same) (internal quotations

27   and citations omitted). Moreover, in *Wesson v. Staples*, 68 Cal. App. 5th 746 (Sep. 9, 2021), the

28                                                                                       19

California Court of Appeal recently affirmed the striking of a plaintiff's entire PAGA claim on manageability grounds. While the *Wesson* decision is at issue in *Estrada v. Royalty Carpet Mills, Inc.*, Case No. S274340, pending before the California Supreme Court, and the parties are cognizant of the Ninth Circuit's recent decision in *Hamilton v. Wal-Mart*, 39 F.4th 575 (9th Cir. 2022), the unresolved nature of the manageability issue under California law and the reality of significant court reductions of PAGA penalties in both state and federal courts presented significant risks for any recovery under PAGA.

Here, Plaintiffs applied discounts to the value of the PAGA claims in settlement negotiations in light of Defendant's arguments on the merits of Plaintiffs' underlying claims. As is always the case with a trial, Plaintiffs needed to accept that there was a possibility that they would not prevail. Thus, in the face of such uncertainty, settlement was advantageous to Plaintiffs, the LWDA, and the aggrieved employees, as it secured a reasonable monetary recovery and prospective relief. (Kerestenzis Decl., ¶¶ 31-34.)

### 4. *Allocation to LWDA for PAGA Penalties*

Pursuant to the Settlement Agreement, $10,000 from the GSA shall be allocated to the resolution of the PAGA claim, of which 75% ($7,500) will be paid directly to the LWDA, and the remaining 25% will be added to the NSA. Where, as here, PAGA penalties are negotiated in good faith and "there is no indication that [the] amount was the result of self-interest at the expense of other Class Members," such amounts are generally considered reasonable. *Hopson v. Hanesbrands Inc.*, Case No. 08-00844, 2009 U.S. Dist. LEXIS 33900, at *24 (N.D. Cal. Apr. 3, 2009).

Class Counsel will submit a copy of the Settlement to the LWDA before the hearing of this Motion.

### 5. *Benefits to Early Resolution*

The potential risks attending further litigation also support early resolution and preliminary approval. Courts have long recognized the inherent risks and "vagaries of litigation," and emphasized the comparative benefits of "immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation." *Nat'l Rural*

20

1     *Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523 at 526 (C.D. Cal. 2004).

2        Additionally, early resolutions save time and money that would otherwise go to litigation.

3 Parties' resources, as well as the Court's, would be further taxed by continued litigation. Moreover,

4 the potential for years of delayed recovery is a significant concern for Plaintiffs and putative class

5 and representative action members. Considered against the risks of continued litigation, and the

6 importance of the employment rights and a speedy recovery to plaintiff class/representative members,

7 the totality of relief provided under the proposed Settlement is more than adequate and well within

8 the range of reasonableness. Importantly, the Class Members are expected to receive an average

9 gross payment of $417.10 for their cell phone reimbursement claims. (Kerestenzis Decl., ¶ 23.)

10 Considering other wage and hour lawsuits that yield a similar settlement amount often involve

11 numerous alleged Labor Code violations, the relief that the Class Members are receiving is fair,

12 adequate, and reasonable.

13        In summary, although Plaintiffs and their counsel maintained a strong belief in the underlying

14 merits of the claims, they also acknowledge the significant challenges posed by continued litigation

15 through trial. Accordingly, when balanced against the risk and expense of continued litigation, the

16 Settlement is fair, adequate, and reasonable. *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242

17 (9th Cir. 1998) ("the very essence of a settlement is compromise, a yielding of absolutes and an

18 abandoning of highest hopes").

19        **D.**     **The Method of Distributing Relief to the Class Is Effective.**

20        The Notice of Proposed Class Action and PAGA Settlement ("Notice of Settlement") and

21 settlement administration procedure proposed by the Settlement Agreement satisfy due process.

22 FRCP Rule 23(c)(2) requires the Court to direct the litigants to provide Class Members with the "best

23 notice practicable" under the circumstances, including "individual notice to all members who can be

24 identified through reasonable effort." *Eisen v. Carlisle & Jacqueline*, 417 U.S. 156, 173 (1974).

25 Where the names and addresses of Class Members are easily ascertainable, individual notice through

26 the mail constitutes the "best notice practicable." *Id.* at 175.

27        The Notice of Settlement was jointly drafted and approved by the Parties and provides Class

28

21

Members with all required information so that each member may make an informed decision regarding his or her participation in the Settlement. The Notice of Settlement provides information regarding the nature of the lawsuit, a summary of the substance of the settlement terms, the class definition definitions, the deadlines by which Class Members must submit Request for Exclusion or objection, the date for the final approval hearing, the formula used to calculate settlement payments, a statement that the Court has preliminarily approved the settlement, and a statement that Class Members will release the settled claims unless they opt out.

The Settlement Administrator will mail the Notice of Settlement to all Class Members via first class United States mail. (Kerestenzis Decl., Ex. A, Settlement Agreement at ¶¶ 63-68.) Prior to mailing the Notice of Settlement, the Settlement Administrator will search the National Change of Address List and update the Class Data to reflect any identifiable address changes. Any Notices of Settlement returned to the Settlement Administrator as undeliverable on or before the deadline for postmarking opt-outs shall be sent promptly via First-Class U.S. Mail to the forwarding address affixed thereto. If no forwarding address is provided, the Settlement Administrator shall promptly attempt to determine the correct address using a single skip-trace or other search using the name, address and/or Social Security Number of the Class Member involved.

### E.   The Requested Attorneys' Fees Are Conservative and Reasonable.

The California Supreme Court has endorsed the percentage method of awarding attorneys' fees where a class action suit results in a common fund for the class, noting that its benefits as compared to the lodestar method include the method's "relative ease of calculation, alignment of incentives between counsel and the class, a better approximation of market conditions in a contingency case, and the encouragement it provides counsel to seek an early settlement and avoid unnecessarily prolonging the litigation." *Laffitte v. Robert Half Int'l, Inc.*, 1 Cal. 5th 480, 503 (2016). The Ninth Circuit is in accord about the benefits of the percentage method. *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011) ("Because the benefit to the class is easily quantified in common-fund settlements, we have allowed courts to award attorneys a percentage of the common fund in lieu of the often more time-consuming task of calculating the

22

1    lodestar."). Thus, "the percentage-of-the-fund method is preferred when counsel's efforts have

2    created a common fund for the benefit of the class." *In re Capacitors Antitrust Litig.*, 2018 WL

3    4790575, at *2 (N.D. Cal. Sept. 21, 2018).

4        Here, Plaintiffs' counsel seek only 15% of the Gross Settlement Amount in attorneys' fees

5    ($130,000) plus reimbursement of reasonable expenses and costs, such as mediation fees, filing fees

6    and service fees ($10,000). This percentage is well below the fee awards approved in numerous other

7    cases and therefore presumptively reasonable. *See, e.g., Morris v. Lifescan, Inc.*, 54 Fed. App'x. 663,

8    664 (9th Cir. 2003) (affirming fee award of 33% of fund); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d

9    454, 457, 463 (9th Cir. 2000) (affirming fee award of 33.3% of fund); *Milburn v. PetSmart, Inc.*,

10   2019 WL 5566313, at *10 (E.D. Cal. Oct. 29, 2019) (awarding 33.3% of fund); *Vedachalam v. Tata*

11   *Consultancy Servs., Ltd*, 2013 WL 3941319, at *2 (N.D. Cal. July 18, 2013) (collecting cases

12   awarding 30% or more); *Johnson v. Gen. Mills, Inc.*, 2013 WL 3213832, at *6 (C.D. Cal. June 17,

13   2013) (approving fee award of 30% of fund); *Cicero v. DirecTV, Inc.*, 2010 WL 2991486, at *6 (C.D.

14   Cal. July 27, 2010) ("courts usually award attorneys' fees in the 30-40% range in wage and hour class

15   actions that result in ... a common fund under $10 million").

16       In determining whether an attorneys' fee award is justified, the Court must evaluate the results

17   obtained on behalf of the class. *See Vizcaino v. Microsoft Corp.*, 142 F. Supp. 2d 1299, 1304 (W.D.

18   Wash. 2001), *aff'd*, 290 F.3d 1043 (9th Cir. 2002). Plaintiffs' counsel has obtained favorable

19   settlement terms in this case, as discussed above. Thus, here, Plaintiffs assert that the attorneys' fees

20   sought are reasonable given the complexity of the litigation.

21       **F.    There Are No Agreements Made in Connection with the Settlement Other than**

22           **What Plaintiffs Already Identified.**

23       There are no agreements between the Parties in connection with the Settlement other than what

24   Plaintiffs identified herein and in the Parties' Joint Stipulation of Class Action and PAGA Settlement.

25   (Kerestenzis Decl., Ex. A.)

26       **G.    The Settlement Provides for Equitable Treatment of Class Members.**

27       The Settlement provides for the equitable treatment of Class Members. The settlement

28   payments are separated into two funds, reflecting the value of the separate releases: (1) the Class    23

Fund for those Class Members who were employed by Defendant in California at any time from May 10, 2018 through August 26, 2023; and (2) the PAGA Fund for those Class Members who were employed by Defendant in California at any time from May 10, 2021 through August 26, 2023. Because longer-term employees of Defendant will be more likely to qualify for both funds, they will also tend to receive higher payouts than shorter-term employees.

Plaintiffs each also intend to apply for a $5,000 Service Payment. (Kerestenzis Decl., ¶¶ 36-37; Botonis Decl., ¶¶ 6-10; Meikle Decl., ¶¶ 5-9.) The Ninth Circuit has recognized that service awards to named plaintiffs in a class action are permissible and do not necessarily render a settlement unfair or unreasonable. *See Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003). The service award, however, must be "reasonable," and the Court "must evaluate their awards individually, using 'relevant factors includ[ing] the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, ... the amount of time and effort the plaintiff expended in pursuing the litigation ... and reasonabl[e] fear[s of] workplace retaliation." *Id.* Here, the Service Payments sought by Plaintiffs are very reasonable given the time expended by Plaintiffs on behalf of the Class, and service awards of this amount or greater have been approved in numerous cases. *See, e.g., China Agritech, Inc. v. Resh*, 138 S. Ct. 1800, 1811 n.7 (2018) (class representative may obtain incentive award of up to $25,000); *Moore v. PetSmart, Inc.*, 2015 WL 5439000, at *13 (N.D. Cal. Aug. 4, 2015) (awarding $10,000 service awards); *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 267 (N.D. Cal. 2015) (incentive awards typically range from $2,000 to $10,000); *Galeener v. Source Refrigeration & HVAC, Inc.*, 2015 U.S. Dist. LEXIS 193096, at *7-8 (N.D. Cal. Aug. 21, 2015) (collecting cases and holding that service awards of $27,000, $25,000, $15,000, and $2,000 were "fair and reasonable"); *Garner v. State Farm Mut. Auto. Ins. Co.*, 2010 U.S. Dist. LEXIS 49477, at *47 (N.D. Cal. Apr. 22, 2010) (compiling cases and holding service awards of $20,000 were "well justified"); *Glass v. UBS Fin. Servs., Inc.*, 2007 WL 221862, at *17 (N.D. Cal. Jan. 26, 2007) (approving $25,000 awards to each of four representatives). Accordingly, Plaintiffs assert that the requested Service Payments are reasonable. (Kerestenzis Decl., ¶¶ 36-37; Botonis Decl., ¶¶ 6-10; Meikle Decl., ¶¶ 5-9.)

24

1

### H.    The Court Should Approve Phoenix Class Action Administration Solutions as Settlement Administrator.

2

The Parties have agreed to retain Phoenix Class Action Administration Solutions as the

3

Settlement Administrator.  Phoenix has extensive experience in disseminating class action notices

4

and administering class action settlements in thousands of cases. Phoenix provided a bid of

5

$11,765 to act as a class action Settlement Administrator for this case.  (Kerestenzis  Decl., Ex. A,

6

Settlement Agreement at ¶¶ 37, 49(g).)

7

### VII.    CONCLUSION

8

The Parties have negotiated a fair and reasonable settlement of claims.  The amount of the

9

settlement will compensate members of the Class approximately $10.00 per month for each month

10

worked during the Class Period which is fair and reasonable.  The action and settlement also attained

11

prospective relief as the Defendant will implement a new expense reimbursement policy that includes

12

cell phone expense reimbursement and has upgraded company-issued devices with talk and/or text

13

capabilities to help minimize or obviate any need to use personal cell phones for work-related

14

purposes.  Thus, having appropriately presented the materials and information necessary for

15

preliminarily approval, Plaintiffs respectfully request that the Court preliminarily approve the

16

settlement.

17

Dated:  July 13, 2023                                 BEESON, TAYER & BODINE, APC

18

19                                                        By    /s/ Sarah S. Kanbar

20                                                        SARAH S. KANBAR
                                                          Attorneys for Plaintiffs Tim Botonis and
21                                                        Liam Patrick Meikle

22

23

24

25

26

27

28
                                                                                                    25