UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| TIM BOTONIS and LIAM PATRICK MEIKLE, on behalf of themselves and all others similarly situated,<br><br>               Plaintiffs,<br><br>     v.<br><br>BIMBO BAKERIES USA, Inc.,<br><br>               Defendant. | No.  2:22-cv-01453-DJC-DB<br><br>PRELIMINARY APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT |

Presently pending before the Court is Plaintiffs' unopposed motion for provisional certification of a Rule 23 class and preliminary approval of the parties' class action and California Labor Code's Private Attorneys General Act ("PAGA") settlement in this dispute over reimbursement for usage of personal cell phones for work purposes.  (ECF No. 22.)

For the reasons stated below, the Court GRANTS provisional certification of the settlement class, APPOINTS Plaintiffs as Class Representatives and Plaintiffs' counsel as Class Counsel, GRANTS preliminary approval of the class action and PAGA settlements, and APPROVES the Notice of Settlement and the Settlement Administrator.  The Court will also set further deadlines.

////

## BACKGROUND

Plaintiffs Tom Botonis and Liam Patrick Meikle worked for Defendant Bimbo Bakeries USA, Inc. as a "Route Sales Professional" and a "Transport Associate" respectively.  Defendant sells products throughout California and has a Sacramento distribution center out of where Plaintiffs work.  Plaintiffs have filed a suit on behalf of both themselves and a putative class of other similarly situated employees in which they claim that Defendant failed to properly reimburse employees' business expenses in violation of California Labor Code Labor Code Section 2802, provide accurate itemized wage statements to employees in violation of California Labor Code Sections 226 and 1174, and pay employee wages upon termination of employment in violation of California Labor Code Sections 201–203.  Plaintiffs' claims center on the failure to reimburse employees for required usage of personal cell phones for business purposes.  Based on these same allegations, Plaintiffs also bring an unfair competition and business practices claim as well as a PAGA claim.

Plaintiffs filed this suit in Sacramento County Superior Court on May 31, 2022.  It was removed to this Court by Defendant on August 16, 2022, based on the Class Action Fairness Act.  Since removal, parties have engaged in informal discovery as well as mediation efforts.  Plaintiffs have now filed an unopposed motion in which they request preliminary approval of the class, appointment of Plaintiffs as Class Representatives for settlement purposes, appointment of Plaintiffs' counsel as Class Counsel for settlement purposes, and preliminary approval of the class and PAGA settlements.  (Mot. (ECF No. 22).)  The motion also requests the scheduling of deadlines for final approval of this settlement agreement.

## PROPOSED SETTLEMENT TERMS

Under the terms of the Settlement Agreement, the proposed class consists of "all current and former individuals who are or previously were employed by Defendant in California as Transport Associates or Route Sales Professionals or any associate doing similar work during the Class Period (i.e., May 10, 2018 to August 26,

2023).” (Mot. at 7.)  This includes but is not limited to employees with titles of “Bakery RSR; Commission Sales Representative; Relief Driver; Relief Drivers; Relief Route Drivers; Route Relief; Route Sales Representative; Route Sales Representative-Express Routes; Route Sales Representatives; [and] Vacation Relief RSR.” (*Id.* at 7 n.2.)  There are approximately 1,692 members of the proposed class.  (*Id.* at 11.)  All members of the proposed class are eligible for reimbursement for use of personal cell phones.  (*Id.* at 7.)  A portion of the class (1,281 members from the total class) is also eligible for a portion of the PAGA penalties assessed based on when each class member was employed by Defendant and the duration of that employment.[1]  (ECF No. 25 at 3.) Class membership will be determined based on employment data provided by the Defendant to the Settlement Administrator.  (Settlement Agreement (ECF No. 23-1 at 1–38) at 2.)

The parties have agreed to settle these claims for a Gross Settlement Amount (“GSA”) of $875,000 with no portion of the GSA reverting to the Defendant (i.e., a “non-reversionary” settlement).  (Mot. at 7–8.)  The proposed settlement includes a number of deductions from the GSA before distribution to class members: (1) up to $130,000 in attorneys’ fees; (2) up to $10,000 in litigation costs and expenses to Class Counsel; (3) $5,000 to each named Plaintiff as a Class Representative award; (4) $7,500 to the California Labor and Workforce Development Agency as the 75% portion owed as a result of the $10,000 PAGA penalty; and (5) a Settlement Administrator fee currently estimated at $11,765 and capped at $15,000.  (*Id.*)

Based on these amounts, the parties project a Net Settlement Amount (“NSA”) of $705,735 available for distribution to the class.  (*Id.* at 8.)  Payment to class members from the NSA will be pro rata based on the proportionate “Work Months Worked” during the designated period compared to the total number of Work

---

[1] While the entire class period runs from May 10, 2018 through August 26, 2023, due to legal limitations on Plaintiffs’ PAGA claims, the PAGA period is only from May 10, 2021 through August 26, 2023.

1  Months Worked by all participating class members during that period.  (Settlement

2  Agreement at 10.)  The expected average gross payment will be $417.10 for each

3  class member.  (Mot. at 21.)  The individuals eligible for the class claims portion of the

4  settlement and the PAGA portion of the settlement are identical except that the

5  period at issue for the PAGA claims is shorter due to statutory limitations for those

6  claims.  (Settlement Agreement at 2, 5, 10.)  The payments for both the class claims

7  and the PAGA claims use the same formula of pro rata Work Months Worked.  (*Id.* at

8  10.)  The parties have agreed to additional non-monetary relief in the form of

9  Defendant adopting a revised expense reimbursement policy applicable to members

10  of the class and providing updates to company-issued devices that will minimize or

11  entirely eliminate the need for use of personal cell phones.  (Mot. at 8; Settlement

12  Agreement at 14–15.)

13         The NSA will be paid to class members without the need for members to

14  submit a claim for payment.  (*Id.*)  Based on the class data provided by the Defendant

15  within fifteen days after the order granting preliminary approval of the Settlement

16  Agreement, the Settlement Administrator will provide class members with a Notice of

17  Settlement ("the Notice") via United States Postal Service First Class Mail.  (Settlement

18  Agreement at 21.)  The Settlement Administrator will search the National Change of

19  Address list to update the class data prior to mailing the Notice.  (*Id.*)  The Notice will

20  inform class members of "the nature of the lawsuit, a summary of the substance of the

21  settlement terms, the class definition definitions, the deadlines by which Class

22  Members must submit Request for Exclusion or objection, the date for the final

23  approval hearing, the formula used to calculate settlement payments, a statement that

24  the Court has preliminarily approved the settlement and a statement that Class

25  Members will release the settled claims unless they opt out."  (Mot. at 29.)

26  Membership in the PAGA Class is automatic under California law.  *Alcazar v. OEI*

27  *Holdings, LLC*, No. 2:19-cv-01209-KJM-AC, 2023 WL 2876833, at *2 (E.D. Cal. Apr. 10,

28  2023).

1    If the settlement is adopted, the Notice will be sent to class members within ten

2    days of the Settlement Administrator's receipt of the class data and provide the

3    opportunity to opt out of the class settlement or file an objection.  (Settlement

4    Agreement at 22.)  Class members who do not opt out or object will release the stated

5    claims for the relevant period.  (Mot. at 16.)  Regardless of whether a class member

6    opts out, they will release the PAGA claims in the "PAGA Notice" sent to the California

7    Labor and Workforce Development Agency ("LWDA") on May 24, 2022.  (*Id.*)  The

8    Settlement Agreement also sets out procedures in case any Notice is returned as

9    undeliverable.  (*Id.* at 22.)  After disbursement of the NSA, class members will have

10   180 days to cash the settlement check.  (*Id.* at 26.)  Unclaimed funds will be paid to the

11   State of California's Unclaimed Property Fund in the name of the class member who

12   did not claim the funds.  (*Id.*)

13                                     **LEGAL STANDARDS**

14            Under Federal Rule of Civil Procedure 23, in order to approve a preliminary

15   settlement agreement, a court must determine if it "will likely be able to" both

16   (1) "certify the class for purposes of the judgment on proposal" under Rule 23(a) and

17   23(b), and (2) "approve the proposal under Rule 23(e)(2)."  Fed. R. Civ. P. 23(e)(1)(B).

18   *See Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003).  For classes likely to be

19   certified under Rule 23(b)(3), "the court must direct to class members the best notice

20   that is practicable under the circumstances, including individual notice to all members

21   who can be identified through reasonable effort," imposing specific requirements on

22   the contents of the notice.  Fed. R. Civ. P. 23(c)(2)(B).  After determining certification is

23   appropriate, the Court must then decide whether the proposed settlement is

24   "fundamentally fair, adequate, and reasonable."  *Staton*, 327 F.3d at 952.  At the

25   preliminary approval stage, the court considers the likelihood that it will ultimately

26   approve the proposed settlement.  Fed. R. Civ. P. 23(e)(1)(B).  The determination as to

27   whether to grant final approval is given after class members have been notified and

28   given the opportunity to provide feedback.  Fed. R. Civ. P. 23(e)(2).

PAGA claims are fundamentally different from a class action as PAGA claims are brought on behalf of a state agency.  *Baumann v. Chase Inv. Services Corp.*, 747 F.3d 1117, 1123 (9th Cir. 2015), *cert. denied,* 574 U.S. 1060 (2014).  PAGA actions do not trigger the Class Action Fairness Act and are not subject to the requirements of Rule 23.  *Zackaria v. Wal-mart Stores, Inc.*, 142 F. Supp. 3d 949, 955 (C.D. Cal. 2015); *see Baumann*, 747 F.3d at 1123.  However, settlements of PAGA claims must still be approved by the Court and the Court must ask whether the settlement of the PAGA claims is "fundamentally fair, reasonable, and adequate."  *Haralson v. U.S. Aviation Servs. Corp.*, 383 F. Supp. 3d 959, 972 (N.D. Cal. 2019); Cal. Lab. Code § 2699(*l*)(2).  Therefore, where there are both Rule 23 claims and PAGA claims, the Court should first consider whether to certify the class for the non-PAGA causes of action, then determine whether the settlement agreement satisfies the requirements of Rule 23 and is adequate as to the PAGA claims.  *See Almanzar v. Home Depot U.S.A.*, No. 2:20-cv-0699-KJN, 2022 WL 2817435, at *4 (E.D. Cal. July 19, 2022).

## DISCUSSION

### I.     Certification of the Rule 23 Class

Class certification for a Rule 23 settlement requires the plaintiff to satisfy the four prerequisites of Rule 23(a): (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation.  To satisfy commonality, there must be "questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  The court considers "the capacity of [the] classwide proceeding to generate common answers" and takes note of "[d]issimilarities within the proposed class [ ] [that] have the potential to impede the generation of common answers."  *See Millan v. Cascade Water Servs., Inc.*, 310 F.R.D. 593, 604 (E.D. Cal. 2015) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)) (internal quotation marks omitted).  "[C]ommonality is generally satisfied where . . . 'the lawsuit challenges a system-wide practice or policy that affects all of the putative class members.'" *Franco v. Ruiz Food Prods., Inc.*, No. 1:10-cv-02354 SKO, 2012 WL 5941801, at *5 (E.D. Cal. Nov. 27, 2012) (quoting *Armstrong v. Davis*, 275 F.

1  3d 849, 868 (9th Cir. 2001), *abrogated on other grounds by Johnson v. California*, 543

2  U.S. 499, 504–05 (2005)).  Typicality requires that "the claims or defenses of the

3  representative parties are typical of the claims or defenses of the class."  Fed. R. Civ.

4  P. 23(a)(3).

5  **A.  Numerosity**

6  For a class to be certified, the class must be "so numerous that joinder of all

7  members is impracticable."  Fed. R. Civ. P. 23(a)(1).  There are no absolute limitations

8  on the number of individuals that can constitute a class as this depends on the facts of

9  each case.  *Gen. Tel. Co. of Nw., Inc. v. EEOC*, 446 U.S. 318, 330 (1980).  As few as 39

10  members may be sufficient to satisfy the numerosity requirement.  *See Murillo v. Pac.*

11  *Gas & Elec. Co.*, 266 F.R.D. 468, 474 (E.D. Cal. 2010) (citation omitted) (discussing

12  Ninth Circuit guidance regarding numerosity and listing cases).

13  Plaintiff estimates that there are approximately 1,692 members in the putative

14  class.  (ECF No. 41-4 at 7.)  This is a large population by almost every measure and is

15  more than sufficient to satisfy the numerosity requirement.  *See  Sullivan v. Chase Inv.*

16  *Servs., Inc.*, 79 F.R.D. 246, 257 (N.D.Cal.1978) ("a class of 1000 clearly satisfies the

17  numerosity requirement").

18  **B.  Commonality**

19  Rule 23 requires that there be "questions of law or fact common to the class."

20  Fed. R. Civ. P. 23(a)(2).  To satisfy this commonality requirement, "[the plaintiff

21  representatives'] claims must depend upon a common contention . . . capable of class-

22  wide resolution–which means that determination of its truth or falsity will resolve an

23  issue that is central to the validity of each one of the claims in one stroke."  *Wal-Mart*

24  *Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).  "So long as there is even a single

25  common question, a would-be class can satisfy the commonality requirement of Rule

26  23(a)(2)."  *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 544 (9th Cir. 2013)

27  (quoting *Wal-Mart*, 564 U.S. at 350) (quotation marks omitted).  Individualized

28  damages cannot defeat class certification under Rule 23(b)(3) provided the plaintiff

1  can show the damages stemmed from the defendant's acts at issue.  *Leyva v. Medline*

2  *Industries, Inc.*, 716 F.3d 510, 514 (9th Cir. 2013).

3      Plaintiffs contend that commonality is satisfied as there are common legal and

4  factual questions about Defendant's policies and procedures raised by Plaintiffs' cell

5  phone reimbursement claim including whether Defendant required class members to

6  use their personal cellular phones for work related purposes and whether Defendant

7  failed to reimburse class members for this usage.  (Mot. at 10-11.)  Plaintiffs argue that

8  "these common questions predominate in the inquiry as to whether Defendant's

9  business expense reimbursement policy violated Cal. Lab. Code § 2802."  (*Id.* at 11.)

10  As questions about the Defendant's policies and practices as to business expense

11  reimbursement would form the basis of the claims for each class member, the

12  commonality requirement is satisfied.  *See Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161,

13  1165 (9th Cir. 2014) ("As *Dukes* and all of our subsequent caselaw have made clear, a

14  class meets Rule 23(a)(2)'s commonality requirement when the common questions it

15  has raised are apt to drive the resolution of the litigation . . . .").  These common

16  questions of fact and law predominate over questions specific to any particular class

17  member.

18      **C.  Typicality**

19      In order to determine whether typicality exists, the Court must consider

20  "whether other members have the same or similar injury, whether the action is based

21  on conduct which is not unique to the named plaintiffs, and whether other class

22  members have been injured by the same course of conduct."  *Sali v. Corona Reg'l*

23  *Med. Ctr.*, 909 F.3d 996, 1006 (9th Cir. 2018).  The claims of the class representatives

24  do not need to be identical to those of class members, but must be "reasonably

25  coextensive with those of absent class members."  *Castillo v. Bank of America, NA*, 980

26  F.3d 723, 729 (9th Cir. 2020).

27      Here, Plaintiffs' claims are typical of the class as they are both employees of

28  Defendant involved in distribution and transportation who were not properly

1   compensated for the usage of personal cell phones.  (Mot. at 11–12.)  These claims are

2   reasonably co-extensive as Defendant's alleged requirement that class members

3   utilize personal cell phones was uniform across all class members including Plaintiffs.

4   (*Id.* at 11.)  The claims also involve allegations that, if proven, would cause injury to the

5   members of the class without much room for factual deviation beyond the time period

6   each individual was affected.  As such, the typicality requirement is satisfied.  *See Sali*,

7   909 F.3d at 996.

8   **D.  Adequacy of Representation**

9   The class representatives must also show that they will "fairly and adequately

10  protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  Determining the adequacy

11  of representation requires the court to determine "(a) [if] the named plaintiffs and their

12  counsel have any conflicts of interest with other class members and (b) will the named

13  plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"

14  *Sali*, 909 F.3d at 1007.

15  **1.  Conflicts of Interest**

16  Based on the information from Plaintiffs as well as the declarations provided

17  with Plaintiffs' motion, there does not appear the be any conflict of interest between

18  the named Plaintiffs and the class members.  (Kerestenzis Decl. (ECF No. 22-1); Meikle

19  Decl. (ECF No. 22-3); Botonis Decl. (ECF No. 22-4).)  The Settlement Agreement does

20  provide for an incentive to Plaintiffs in the form of $5,000 each but such awards are

21  considered typical in class action cases and are intended to "compensate class

22  representatives for work done on behalf of the class, to make up for financial or

23  reputational risk undertaken in bringing the action, and, sometimes, to recognize their

24  willingness to act as a private attorney general."  *Rodriguez v. W. Publ'g Corp.*, 563

25  F.3d 948, 958–59 (9th Cir. 2009).  The Court must still consider the propriety of the

26  incentive awards based on the actions of the Plaintiffs in protecting the class's

27  interests, the benefit the class has received from those actions, and the time and effort

28  expended by Plaintiffs in pursuing litigation.  *Staton*, 327 F.3d at 977; *see Radcliffe v.*

9

1    *Experian Info. Solutions, Inc.*, 715 F.3d 1157, 1164 (9th Cir. 2013) ("[D]istrict courts

2    must be vigilant in scrutinizing all incentive awards to determine whether they destroy

3    the adequacy of the class representatives.").

4          The proposed incentive award of $5,000 for each Plaintiff amounts to only

5    approximately .57% of the GSA of $875,000 or just over 1% combined for both

6    Plaintiffs.  (Mot. at 24.)  This amount is within the bounds of class representative

7    awards that have been granted in other cases.  *See Bellinghausen v. Tractor Supply*

8    *Co.*, 306 F.R.D. 245, 267 (N.D. Cal. 2015) ("Incentive awards typically range from

9    $2,000 to $10,000.")  While the percentage recovery of roughly 1.1% of the GSA for

10   both Plaintiffs does land on the high end of what is considered acceptable, it does not

11   present the same concerns that have arisen in similar cases where the incentive award

12   vastly overshadows the average award unnamed class members might receive, as

13   here the anticipated average award for each class member is $417.10.  *See e.g.*,

14   *Clayton v. Knight Transp.*, No. 1:11-cv-00735-SAB, 2013 WL 5877213, at *11 (E.D. Cal.

15   Oct. 30, 2013) (finding a $7,500 representative award was unreasonable where

16   unnamed class members only received on average $72 and instead finding a $3,500

17   award appropriate); *see also Moore v. PetSmart Inc.*, No. 5:12-cv-03577-EJD, 2015 WL

18   5439000, at *6 (N.D. Cal. Aug. 4, 2015) (approving representative incentive awards

19   totaling $35,000 for five plaintiffs where the average individual payment to class

20   members amounted to approximately $645.02); *Covillo v. Specialtys Café*,  No. 11-cv–

21   00594-DMR, 2014 WL 954516, at *5, *8 (N.D. Cal. Mar. 6, 2014) (finding a $24,000

22   incentive award split between three Plaintiffs to be reasonable where the average the

23   gross recovery was $1,477 despite it constituting 1.2% of the gross settlement

24   amount.  Plaintiffs' significant time investment in this case which included

25   participation in a full-day mediation and the risks presented in being a named

26   representative weigh in Plaintiffs' favor as these place unique burdens on Plaintiffs as

27   compared to unnamed class members.  (*See* Botonis Decl. at 2; Meikle Decl. at 2.)  For

28   purposes of the provisional certification of the class, the Court does not find that this

incentive award is so disproportionate that it necessarily creates a conflict of interest or makes Plaintiffs inadequate as class representatives.

### 2. Vigorous Prosecution

All indications suggest that Plaintiffs and their counsel have vigorously prosecuted this action and will continue to do so.  Plaintiffs' counsel has experience with representing and settling employee class action suits across California. (Kerestenzis Decl. at 2–3.)  The course of this case so far, including Plaintiffs' attorneys' efforts in obtaining extensive informal discovery and engaging in mediation efforts, also indicates an ability to prosecute this action vigorously.  As such, the Court finds Plaintiffs and Plaintiffs' counsel will likely continue to vigorously prosecute the class members' claims.

### E. Rule 23(b)(3) Requirements

Because Plaintiffs seek certification of the putative class under Rule 23(b)(3), in order to certify the class, the Court must find "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  This predominance requirement is a more demanding test than what is required under Rule 23(a). *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623–24 (1997).  In considering whether the questions of fact and law predominate, the Court must determine "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Id.* at 623.  The latter superiority requirement is used to decide whether a class action suit is preferable to other methods by reducing costs and promoting efficiency. *Id.* at 620.

In this action, common question of law and fact clearly predominate over questions affecting individual members as the class members were subject to the same policies and practices regarding the usage of personal cell phones for business purposes that gave rise to the claims in this action.  The predominance requirement is

generally satisfied when a class action challenges a uniform procedure or policy by the defendant.  *See Vaquero v. Ashley Furniture Indus., Inc.*, 824 F.3d 1150, 1154–55 (9th Cir. 2016).  As Defendant's liability turns on the same policies and practices at issue as to every class member, the concentration of these claims into a single lawsuit is certainly superior to individual actions from each class member for purposes of efficiency.  *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996).  Moreover, the class members' interests likely favor a class suit as individual recovery in separate suits might be less, thus meeting the superiority requirement.  *See Zinser v. Accufix Res. Inst., Inc.*, 253 F.3d 1180, 1190–91 (9th Cir. 2001); Fed. R. Civ. P. 23(b)(3)(A)–(B).[2]

As such, common questions of law and fact predominate and a class action is the superior mechanism for bringing these claims.  The requirements of Rule 23(b)(3) are met at this time.

### F.  Appointment of Class Counsel & Class Representative

As the Court finds that the requirements of Rule 23(a) and Rule 23(b)(3) have been met, the class is provisionally certified for purposes of settlement.  Plaintiffs Tom Botonis and Liam Patrick Meikle are provisionally appointed as Class Representatives given that their interests align with those of the class members and there are no conflicts of interest sufficient to render them inappropriate class representatives. *Supra* Analysis I.D.1.

The Court must now also appoint Class Counsel.  Fed. R. Civ. P. 23(g)(1).  This requires that the appointing court consider "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that

---

[2] Factors (C) and (D) of Rule 23(b)(3) are not applicable where settlement occurs before class certification. *Mejia v. Walgreen Co.*, No. 2:19-cv-00218-WBS-AC, 2020 WL 6887749, at *6 (E.D. Cal. Nov. 24, 2020).

counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv).

Plaintiffs move to appoint Beeson, Tayer & Bodine, APC as Class Counsel. (Mot. at 1.)

Attorney Constantinos E. Kerestenzis on behalf of Beeson, Tayer & Bodine, APC has

served as the primary counsel for Plaintiffs during the course of this action.

(Kerestenzis Decl. at 3.) Based on the efforts of Plaintiffs' counsel thus far in this case

and their prior litigation experience, the Court concludes that provisional designation

of Beeson, Tayer & Bodine, APC as Class Counsel is appropriate. The Court believes

Class Counsel will continue to devote appropriate time and resources to represent the

entire class.

## II.   Preliminary Approval of Proposed Settlement

Under Rule 23(e), a court may approve a class action settlement only if it is a

"fair, reasonable, and adequate" resolution of the dispute, considering several factors

including, (1) the class representatives and class counsel have adequately represented

the class; (2) the proposal was negotiated at arm's length; (3) the relief provided for

the class is adequate; and (4) the proposal treats class members equitably relative to

each other. *See* Fed. R. Civ. P. 23(e)(2)(A)-(D). "[P]reliminary approval of a settlement

has both a procedural and substantive component" and is appropriate if: (1) the

proposed settlement appears to be the product of serious, informed, non-collusive

negotiations; and (2) the settlement falls within the range of possible approval, has no

obvious deficiencies, and does not improperly grant preferential treatment to class

representatives or segments of the class. *In re Tableware Antitrust Litig.*, 484 F. Supp.

2d 1078, 1079–80 (N.D. Cal. 2007) (citation omitted). Settlement agreements are

considered as a whole, not by their individual components. *Lane v. Facebook, Inc.*,

696 F.3d 811, 818–19 (9th Cir. 2012).

When, as here, a settlement agreement has been negotiated before a class has

been certified, the court must also "undertake an additional search for 'more subtle

signs that class counsel have allowed pursuit of their own self-interests and that of

certain class members to infect the negotiations.'" *In re Volkswagen*, 895 F.3d 597,

610–11 (9th Cir. 2018) (quoting *In re Bluetooth Headset Products Liability Litigation*, 654 F.3d 935, 946–47 (9th Cir. 2011)).  Three oft-cited "red flags" of unfair settlements are (1) fees that make up a disproportionately large part of the distribution to the class, (2) "clear sailing" agreements "providing for the payment of attorneys' fees separate and apart from class funds" without defense objection, and (3) agreements that permit unpaid fees to revert to defendant (i.e., "reversionary" settlements).  *In re Bluetooth*, 654 F.3d at 947 (citations omitted).

Here, while the maximum attorney's fees contemplated by the Settlement Agreement are relatively small and there is no reversion to the Defendant, there is a "clear sailing" provision within the Agreement.  (Settlement Agreement at 11.)  Clear sailing provisions are not prohibited but do necessitate a heightened duty from the district court to "scrutinize closely the relationship between attorneys' fees and benefit to the class, being careful to avoid awarding 'unreasonably high' fees simply because they are uncontested."  *Roes, 1–2 v. SFBSC Management, LLC*, 944 F.3d 1035, 1050–51 (9th Cir. 2019).  As discussed below, *see infra* Discussion II.C.3, the attorney's fees set out in the Settlement Agreement appear reasonable at this stage.  While the Court will make a final determination as to whether fees are reasonable when the parties seek final approval, the risks of collusion here are significantly minimized given that the maximum attorney's fees are slightly less than 15% of the GSA.  This places the attorney's fees well below the 25% benchmark used by courts in assessing the reasonableness of attorney's fees and makes it far less likely that the requested attorney's fees would be unreasonable.  *In re Bluetooth*, 654 F.3d at 942.  This, along with the fact that attorney' fees are deducted from the GSA, does not create a concern of collusion at this stage.  *See Martinez v. Knight Transport, Inc.*, No. 1:16-cv-01730-SKO, 2023 WL 2655541, at *10 (E.D. Cal. Mar. 27, 2023).

With that said, the Court will not make a final determination at this time and will scrutinize the request for attorney's fees at the time of final approval, including conducting a "lodestar cross-check" to determine if the request is reasonable,

14

especially in light of the clear sailing provision. *See Roes, 1–2*, 944 F.3d at 1051.  In the forthcoming Rule 23(h) motion, counsel shall brief the fee application using the lodestar method as a cross-check and provide any necessary supporting evidence and data to confirm counsel's assessment.  For this cross-check, counsel shall note the differences in the prevailing rates between the Eastern District of California and other districts.[3]

### A.  Adequacy of Representation

Above the Court made a preliminary finding that the Class Representatives and counsel adequately represent the class for purposes of Rule 23(a)(4).  *Supra* Analysis I.D.  This determination is identical to the one required by Rule 23(e)(2)(A).  *Mejia*, 2020 WL 6887749, at *9.  Accordingly, the Court preliminarily finds that the Class Representatives and Class Counsel are adequate representatives of the class for the purposes of the proposed Settlement Agreement.

### B.  Arm's Length Negotiation

Plaintiffs' counsel state that the Settlement Agreement was created after arms-length negotiations, a mediation attempt, and an exchange of detailed discovery.  (Kerestenzis Decl. at 4–5, 7.)  Based on these representations and the apparent efforts of Plaintiffs to vigorously prosecute this case, the Court preliminarily finds that the settlement satisfies this factor.  *See* Fed. R. Civ. P. 23(e)(2)(B); *see also Chambers v. Whirlpool Corp.*, 980 F.3d 645, 669 (9th Cir. 2020).

### C.  Adequacy of Relief Provided to the Class

Determining the adequacy of the relief requires the Court to consider four factors: (1) the costs, risks, and delay of trial and appeal; (2) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (3) the terms of any proposed award of attorney's

---

[3] The present Settlement Agreement is not contingent upon the Court awarding any particular amount of attorney's fees, and any requested amount not granted will return to the common fund for distribution to participating class members.

1  fees, including timing of payment; and (4) any agreement required to be identified

2  under Rule 23(e)(3).  Fed. R. Civ. P. 23(e)(2)(C)(i)–(iv).

3  **1.  Costs, Risks, and Delay of Trial and Appeal**

4  In considering whether the relief provided to class members is adequate,

5  courts compare the relief under the proposed settlement to the best possible

6  outcome for the class.  *Rodriguez*, 563 F.3d at 964.  The proposed Settlement

7  Agreement provides for a non-reversionary GSA of $875,000. (Mot. at 7–8.)  After

8  deductions for attorneys' fees, litigation costs and expenses to Class Counsel,

9  representative incentive awards, Settlement Administrator Fees, and payment to the

10  LWDA for PAGA claims, the NSA is calculated to be $705,735.  (*Id.*)  Based on a class

11  size of 1,692, the average gross payment to each class member is $417.10 with the

12  actual payments determined based on the proportional number of months worked by

13  each individual class member during the period in question.  (Settlement Agreement

14  at 10.)  After conferring with Defendant's counsel, Plaintiffs indicated that Defendant's

15  maximum potential exposure as to Plaintiffs' Section 2802 claim is estimated at

16  $3,467,557.20, the exposure for the Section 226 claim is estimated at $5,124,000, and

17  the exposure as to Plaintiffs' Section 203 claims is $590,157.  (ECF No. 25.)  On the

18  non-PAGA claims, this amounts to a total maximum exposure of $9,181,714.20.

19  The Court concurs with the parties' assessment of the strength of their claim

20  and the validity of the discount provided.  Plaintiffs appear to acknowledge that the

21  Section 203 and 226 claims in the present action may not be viable as they are based

22  on unpaid reimbursements for usage of personal cell phones.  (Mot. at 16; ECF No. 25

23  at 4.)  Other courts have rejected claims for expense reimbursements under Section

24  203, as expense reimbursements are not a part of an employee's wages within the

25  meaning of that section of the California Labor Code.  Cal. Lab. Code §§ 200, 203; *see*

26  *Drumm v. Morning Star, Inc.*, 695 F. Supp. 2d 1014, 1021 (N.D. Cal. 2010) ("[E]xpense

27  reimbursements are not 'amounts for labor performed,' and are not appropriately part

28  of the calculation." (citations omitted)); *see also Paycom Payroll, LLC v. Read*, No. 3:18-

1   cv-2638-WQH-MDD, 2020 WL 13505041, at *14 (N.D. Cal. Feb. 12, 2020).  While

2   Plaintiffs maintain that this is untested as to Section 226 claims, Plaintiffs appear to

3   accept that the same reasoning used in the cases concerning Section 203 claims

4   based on unpaid reimbursement likely also applies to section 226 as the definitions

5   for "wages" found California Labor Code § 200 applies to both Section 203 and 226.

6   (ECF No. 25 at 4;) *see Drumm*, 695 F. Supp. 2d at 1021 (citing the definitions of wages

7   in California Labor Code § 200(a)).  Thus, Plaintiffs discount these claims and suggest

8   that the Court instead focus on the Section 2802 reimbursement claims.  (ECF No. 25

9   at 4.)  This is reasonable as continued litigation would risk what appears to be a strong

10  likelihood that these claims would be dismissed.

11         As noted by Plaintiffs, the total exposure calculates maximum damages for

12  Plaintiffs' Section 2802 claim are based on the full costs of a cell phone and wireless

13  data plan for this period.  (*Id.* at 3.)  The GSA properly accounts for the reality that

14  usage of class members' cell phones and data plans for business purposes was limited

15  to approximately "an hour a day or five hours a week" during the period in question.

16  (*Id.*)  Thus, the settlement provides a discount of roughly 25% of Defendant's exposure

17  for these claims.[4]  This discount is reasonable in light of the factual issues that would

18  prevent recovery of the full exposure amount as well as the risks presented by going

19  to trial.  It is also clearly in line with settlements found acceptable by other courts.  *See*

20  *e.g.*, *Martinez*, 2023 WL 2655541, at *10 (approving a settlement for 18% of the total

21  exposure on non-PAGA claims to be reasonable in light of the Defendant's legal and

22  factual defenses); *Mejia*, 2020 WL 6887749, at *4 (finding a settlement for 22.37% of

23  the potential exposure less PAGA penalties to be reasonable).

24         As to the PAGA claims, Plaintiffs' counsel notes that they face difficulties in

25  proving that Plaintiffs acted willfully and intentionally as required by Section 203 and

26

27  [4] The non-PAGA portion of the GSA is $865,000.  Based on an exposure of $3,467,557.20 for the
    section 2802 claims, the non-PAGA portion of the GSA represents approximately 24.94% of

28  Defendant's exposure.

226 in addition to previously mentioned valid defenses that Defendant has available.[5]

The Settlement Agreement sets aside $10,000 of the GSA for settlement of the PAGA

claims.  Due to the manner PAGA penalties are calculated – by counting each

violation per pay period for each putative class member – the potential maximum

exposure for the PAGA claims in this case is so large that it eclipses the exposure for

the underlying labor law claims themselves, despite the PAGA claims covering a

shorter period and including a smaller portion of the class owing to the fact that not all

class members worked during the PAGA period.  (*See* ECF No. 25 at 3.)  Based on the

calculations provided by Plaintiffs, the total exposure for the PAGA claims as stated in

the complaint would be $19,983,600,[6] lapping the $9,181,714.20 exposure on the

non-PAGA claims.  (*Id.*)

     As noted previously, Plaintiffs appear aware that their Section 203 and 226

claims may not be viable.  Discounting these claims slightly reigns in the PAGA

exposure to $13,194,300 based on the alleged violation of section 2802.  That said,

the PAGA portion of the settlement still vastly overshadows Defendant's maximum

exposure of $3,467,557.20 on the underlying section 2802 claim.  However, the PAGA

portion of the settlement still represents less than 1% of the Defendant's maximum

---

[5] Although the court does not evaluate the settlement of PAGA claims under the Rule 23 criteria, it must still inquire into the fairness of the PAGA settlement.  "[I]n reviewing a settlement that includes both a Rule 23 class and a PAGA claim, the court must closely examine both aspects of the settlement."  *O'Connor v. Uber Technologies, Inc.*, 201 F. Supp. 3d 1110, 1133 (N.D. Cal. 2016) (emphasis in original).  Based on the best guidance at hand–from the LWDA's input in *O'Connor*, in the absence of a definitive governing standard–district courts typically apply "a Rule 23-like standard" asking whether the settlement of the PAGA claims is "fundamentally fair, reasonable, and adequate."  *Haralson*, 383 F. Supp. 3d at 972; *see also, e.g., Mondrian v. Trius Trucking, Inc.*, 2022 WL 2306963, at *7 (E.D. Cal. June 27, 2022) (noting lack of a binding standard for approving PAGA settlements and adopting "fundamentally fair, reasonable, and adequate" standard based on LWDA's *O'Connor* commentary).

[6] Plaintiffs calculated the maximum exposure on the PAGA claims as $19,983,600 based on a $100 penalty per violation, per employee, per pay period.  (ECF No. 25 at 3.)  Under the California Labor Code, the penalty increases per employee per pay period to $200 after the initial.  Cal. Lab. Code § 2699(f).  The "initial" violation ends and the heightened penalties are imposed for any violations that occur after the employer is notified that the conduct is in violation of the Labor Code.  *See Evers v. La-Z-Boy Inc.*, No.: 22cv578-LL-BLM, 2022 WL 4379311, at *4 (S.D. Cal. Sep. 22, 2022).  Given that this lawsuit was filed at least as early as May 2022 and the PAGA period extends into August 2023, it is possible that for at least a portion of the period, Defendants would be subject to the heightened penalties for continued violations of the labor code.  However, whether this is actually the case is not clear from the record as it stands and is not material to this order.

1   exposure on these claims.   Other courts have appropriately recognized that PAGA

2   claims can often be used as a "bargaining chip" to induce an employer to settle and

3   that where considering a settlement reduces recovery on PAGA claims to minimal

4   amounts, courts should "employ a sliding scale" that takes into account the value of a

5   settlement as a whole.  *Viceral v. Mistras Group, Inc.*, No. 15-cv-02198-EMC, 2016 WL

6   5907869, at *9 (N.D. Cal. 2016); *see O'Connor*, 201 F. Supp. 3d at 1134; *see also*

7   *Haralson*, 383 F.Supp.3d at 972–73; *McClure v. Brand Energy Serv., LLC*, No. 2:18-cv-

8   01726-KJM-AC, 2021 WL 2168149, at *10 (E.D. Cal. May 27, 2021); *Martinez*, 2023 WL

9   2655541, at *8.  Where a settlement provides fair compensation and helps to clarify

10  worker's rights and obligations via injunctive relief, PAGA's interests in deterring

11  noncompliance may still be satisfied, even where a settlement reduces PAGA recovery

12  substantially.  *Martinez*, 2023 WL 2655541, at *8; *see McClure*, 2021 WL 2168149, at

13  *10.

14          Here, though the settlement on the PAGA claims is low, the Settlement

15  Agreement still overall provides fair compensation.  Moreover, the Agreement also

16  provides that Defendant will revise their reimbursement policy to specifically note the

17  rights of employees to receive reimbursement "in instances when employees believe

18  they are required to use their personal cell phones for reasonable and necessary

19  work-related purposes" and update company-issued devices to "enable texting

20  and/or talking capabilities and thus minimize or eliminate the need to use cell phones

21  for work." (Mot. at 8.)  As proposed, this Settlement Agreement will serve to protect

22  both current and future employees from these same issues arising by requiring

23  Defendant to modify their policies and procedures to ensure compliance in the future.

24  This additional relief, along with the sufficient compensation provided by the rest of

25  the settlement, satisfies PAGA's interests as it seeks to resolve the underlying issue

26  and ensure that further noncompliance with Labor Code § 2802 does not occur.  *See*

27  *Martinez*, 2023 WL 2655541, at *8; *see also McClure*, 2021 WL 2168149, at *10.

28  *////*

1    Plaintiffs state that they submitted the proposed Settlement Agreement to the

2    LWDA.  (ECF No. 25 at 4, no.1.)  Notably, Plaintiffs represent to the Court that the

3    LWDA had not indicated there were any objections to the Settlement Agreement as

4    constituted.  This further distinguishes the present agreement from other cases where

5    courts have denied reductions in the PAGA portion of a settlement in part based on

6    concerns and objections raised by the LWDA.  *See e.g.*, *O'Connor*, 201 F. Supp. 3d at

7    1131–32.

8    Given the above, the costs, risks, and delay of any potential trial weigh in favor

9    of settlement.

10    **2. Effectiveness of Proposed Method of Distributing Relief**

11    In determining the adequacy of the relief provided to the prospective class, the

12    Court must consider "the effectiveness of any proposed method of distributing relief

13    to the class, including the method of processing class-member claims[.]"  Fed. R. Civ.

14    P. 23(e)(2)(C)(ii).  The parties have proposed a Notice of Settlement (Notice of

15    Settlement (ECF No. 22-2 at 40–45) at 1–6) as well as settlement administration

16    procedures in the Settlement Agreement (Settlement Agreement at 20–21).

17    The Notice provides information about the Settlement Agreement including

18    how the settlement was reached, the Settlement Agreement's terms, and expected

19    distribution to putative class members.  (Notice of Settlement at 2–4.)  It also informs

20    the recipients about their options, the process and deadlines for submitting an

21    objection or request for exclusion, and what claims will be released if they consent to

22    settlement.  (*Id.* at 1–6.)  Under the terms of the Settlement Agreement, within fifteen

23    days of the Court issuing an order preliminarily approving the settlement, Defendant

24    will provide class data to the Settlement Administrator including the contact

25    information of individuals who are a part of the class as well as information on the

26    amount of time each putative class member worked during the period at issue.

27    (Settlement Agreement at 21–22.)

28    *////*

1   The amount each class member will receive will be based on the Work Months

2   Worked for each class member during the period in question.  (*Id.* at 22–23.)  Class

3   members will receive a distribution unless they object or request exclusion.  (*Id.* at 23.)

4   The proposed method of distributing relief is tailored to provide compensation based

5   on the relative strength of each class member's claims and class members will have

6   the opportunity to challenge and correct inaccuracies in the amount of time they

7   worked.  *See* Fed. R. Civ. P. 23(e)(2)(C)(ii); *see also Flores v. Dart Container Corp.*, No.

8   2:19-cv-00083-WBS-JDP, 2021 WL 1985440, at *5 (E.D. Cal. May 18, 2021).

9   The proposed methods of distributing relief to class members are effective and

10   are tailored to the strength of individual class member claims.  The procedures set by

11   the Settlement Agreement will ensure distribution to all reasonably ascertainable class

12   members and does not require that class members take any additional unnecessary

13   steps to attain relief.

14   ### 3.  Terms of Proposed Attorney Award

15   The Settlement Agreement provides that $130,000 – approximately 14.86% of

16   the GSA – will be allocated to attorney's fees.[7]  (Settlement Agreement at 11–12.)  In

17   settlements that produce a common fund, courts may use either the lodestar method

18   or the percentage-of-recovery method to determine the reasonableness of attorney's

19   fees.  *In re Bluetooth*, 654 F.3d at 942.  Under the percentage method, "courts

20   typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award."  *Id.*

21   Here, Plaintiff's motion uses the percentage method and the maximum possible

22   attorney's fee under the Agreement is well below that 25% benchmark. (Mot. at 22–

23   23.)  As noted above, the agreement does also include a clear sailing provision

24

25   [7] This number does not include an additional $10,000 of the GSA that is available to class counsel for
litigation costs and expenses. (*See* Mot. at 2–3.)  In approving settlements, courts typically do not

26   include such litigation expense reimbursement as a part of the attorney's fees.  *See e.g.*, *Martinez*, 2023
WL 2655541, at *15 (only considering attorney's fees, not litigation costs and expenses in the analysis of

27   the reasonableness of proposed attorney's fees).  Even including this litigation cost line item, the
portion set aside for the attorneys in this action rises to 16% of the GSA and appears clearly reasonable

28   given the time and effort of counsel.

21

1     whereby the Defendant agrees to not oppose Plaintiff's counsel's request.  (Settlement

2     Agreement at 11.)  However, given the relatively low attorney's fees request, the Court

3     finds that the proposed attorney award is reasonable at this time, though it withholds

4     a final determination on that issue until a lodestar cross-check, as ordered earlier, is

5     conducted and the Court can make a full determination in light of the clear sailing

6     agreement discussed above.  *See Supra* Discussion II.

7             **4.  Agreements Made in Connection with the Proposal**

8          Plaintiff identifies no other agreements made in connection with the proposed

9     Settlement Agreement.  *See* Fed. R. Civ. P. 23(e)(2)(C)(iv), (e)(3).  This weighs in favor

10    of approving the settlement.

11           **D.  Equitable Treatment of Class Members**

12        The fourth factor addresses whether the proposed Settlement Agreement

13    "treats class members equitably relative to each other."  *See* Fed. R. Civ. P. 23(e)(2)(D).

14    This inquiry considers both equity across sub-categories, or segments, of the class,

15    and equity between class representatives and unnamed class members.

16        The Settlement Agreement does separate the payment for class members into

17    two funds: one for any individual employed by the Defendant between May 10, 2018

18    and August 26, 2023, and one specific to the PAGA claims "for those Class Members

19    who were employed by Defendant in California at any time from May 10, 2021

20    through August 26, 2023." (Settlement Agreement at 5–7.)  Any member who worked

21    during the entire period in question will be eligible for payment from both funds but

22    due to the shorter period at issue for the PAGA claims, those who did not work during

23    that period will not be eligible for payment from those funds.  (*Id.*)  The reason for the

24    distinction between these two groups is logically permissible based on the legal

25    constraints of the PAGA claims and not an indication of preferential treatment.  *See In*

26    *re Tableware Antitrust Litigation*, 484 F. Supp. 2d at 1079–80.

27        The Settlement Agreement also provides for an additional incentive award for

28    the named Plaintiffs, but as discussed earlier, *see Supra* Discussion I.D.1, this

1   additional compensation is within normal bounds and justified by the time and effort

2   the named Plaintiffs spent in bringing this case, litigating it, and reaching this

3   settlement.  *See Flores*, 2021 WL 1985440, at *6.

4        **E.  Additional Factors**

5        The Ninth Circuit has articulated other factors not explicitly listed in Rule

6   23(e)(2) to be considered when determining whether to preliminarily approve a

7   proposed class settlement.  *See In re Volkswagen*, 895 F.3d at 610 n.18 (quoting the

8   additional factors listed in *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (1998)

9   before the Rule 23(e)(2) factors had been created).  Most of these factors, such as the

10  strength of Plaintiff's case, the risk, expense, complexity, and likely duration of further

11  litigation the risk of maintaining class action status throughout the trial, the amount

12  offered in settlement, and the experience and views of counsel, *see id.*, have already

13  been addressed at various points above, *see supra* Discussion I.D & II.A–C.  The

14  additional factors that have been identified by the Ninth Circuit also weigh in favor of

15  approval.

16       As to "the extent of discovery completed and the stage of the proceedings[,]"

17  *see In re Volkswagen*, 895 F.3d at 610 n.18, the parties represent that the settlement

18  occurred after "substantial investigation and informal discovery consisting of the

19  production by Defendants in advance of mediation of relevant policies, records, and

20  data regarding Plaintiffs . . . ."  (Mot. at 4; *see also* Mot. at 15.)  This extensive

21  document and data exchange, as it is presented by the parties, is sufficient for this

22  factor to weigh in favor of approval.

23       There have, thus far, been no objections or requests to opt out of the proposed

24  settlement agreement.[8]  Thus, the "the reaction of the class members to the proposed

25  _____

26  [8] As the Court and parties are aware, *Martinez v. Bimbo Bakeries USA, Inc.*, 2:22-cv-01618-DJC-DB is a
    separate action before this Court that appears to include some similar claims.  Plaintiff in the *Martinez*

27  action has previously sought to have this action consolidated with that case.  Though no objection has
    been filed, it is certainly conceivable that the Plaintiff in the *Martinez* action would oppose this

28  settlement.  At this stage, however, there has been no negative reaction to the proposed settlement of
    which the Court is aware.

1   settlement[,]" *see In re Volkswagen*, 895 F.3d at 610 n.18, also weighs in favor of

2   approval at this stage.

3          As mentioned previously, Plaintiff has represented that they provided the

4   proposed settlement agreement to the LWDA as required by the California Labor

5   Code. *See Flores*, 2021 WL 1985440, at *7 (citing Cal. Lab. Code § 2669(k)(2)).

6   Plaintiffs further represent that the LWDA has not objected or sought to otherwise

7   intervene. As such, "the presence of a governmental participant" as a factor also

8   weighs in favor of approving the settlement. *See In re Volkswagen*, 895 F.3d at 610

9   n.18.

10          In sum, the Rule 23(e)(2) factors and additional factors previously articulated by

11   the Ninth Circuit weigh in favor of granting preliminary approval to the proposed class

12   Settlement Agreement. The Court also finds that the settlement of the PAGA claims is

13   fundamentally fair, reasonable, and adequate. *See Haralson*, 383 F. Supp. 3d at 972.

14   **III.   Settlement Administrator; Notice to Class/PAGA Members; Fairness**

15          **Hearing**

16          **A. Settlement Administrator**

17          To ultimately approve a class action settlement, a district court must ensure

18   class members were notified of the proceedings, had the opportunity to opt out or

19   (for those who remain in the settlement) object to any of the settlement's terms, and

20   were provided the chance to appear at the fairness hearing. Fed. R. Civ. P. 23(e)(1)-

21   (5). To effectuate the settlement procedures identified in the Settlement Agreement

22   and administer the settlement, the parties have agreed to retain Phoenix Class Action

23   Administration Solutions ("Phoenix"). (Mot. at 32.) The parties represent that Phoenix

24   has provided a bid of $11,765 to act as the Settlement Administrator. (*Id.*) The

25   Settlement Administrator Fee is also capped at a maximum of $15,000 without Court

26   approval by the terms of the Settlement Agreement. (Settlement Agreement at 12.)

27   This is consistent with or better than the costs for such services in other similar

28   settlements. *See e.g., Razo v. AT&T Mobility Servs.*, LLC, No. 1:20-cv-0172-JLT-HBK,

1  2022 WL 4586229, at *17 (E.D. Cal. Sept. 29, 2022) (approving a maximum settlement

2  administrator fee of $30,000 for a settlement with a GSA of $575,000); *see also,*

3  *Martinez*, 2023 WL 2655541, at *17 (approving a maximum administrator fee of

4  $29,558 for a settlement with a GSA of $400,000).  The Court approves Phoenix Class

5  Action Administration Solutions as Settlement Administrator.

6    **B.  Notice to Class Members**

7    When accepting a proposed settlement under Rule 23, "the court must direct

8  notice in a reasonable manner to all class members who would be bound by the

9  proposal." Fed. R. Civ. P. 23(e)(1).  Individuals who would be bound by a settlement

10  agreement must have the opportunity to remove themselves from the class. *Ortiz v.*

11  *Fibreboard Corp.*, 527 U.S. 815, 848 (1999).  For settlements under Rule 23(b)(3), the

12  court is required to:

13    [D]irect to class members the best notice that is practicable
      under the circumstances, including individual notice to all

14    members who can be identified through reasonable effort,
      [by] United States mail, electronic means, or other

15    appropriate means, [concerning] the nature of the action;
      the definition of the class certified; the class claims, issues,

16    or defenses; that a class member may enter an appearance
      through an attorney if the member so desires; that the court

17    will exclude from the class any member who requests
      exclusion; the time and manner for requesting exclusion;

18    and the binding effect of a class judgment on members . . . .

19  Fed. R. Civ. P. 23(b)(3); *see also* Fed. R. Civ. P. 23(e)(4) and (5) (requiring the court to

20  provide class members with an opportunity to be excluded from the settlement or

21  object to the terms).  A class action settlement notice "is satisfactory if it generally

22  describes the terms of the settlement in sufficient detail to alert those with adverse

23  viewpoints to investigate and to come forward and be heard." *Churchill Vill., LLC v.*

24  *Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (internal quotations and citations

25  omitted).

26    Here,  the Settlement Agreement provides that within fifteen business days

27  after entry of this order, the Settlement Administrator will receive a list from Defendant

28  of all potential class members, along with the relevant data for each class member,

pulled from Defendant's employment records.  (Settlement Agreement at 2.)  Within ten days of the receipt of the class data, the Settlement Administrator will send the proposed notice to the class members.  (*Id*. at 22.)  For any returned notices, the Settlement Administrator will seek to update the addresses of those class members using the National Change of Address Database and resend the Notice.  (*Id*.)  The Notice describes the nature of the lawsuit and claims at issue (Notice of Settlement at 1), defines the class (*id*. at 1, n.1), explains the amount of the settlement and how individual class member settlement payments will be calculated (*id*. at 3-4), discloses all deductions that will be requested from the settlement for fees, costs, service awards, and settlement administration expenses (*id*.), details the claims that are being released (*id*. at 4–5), explains how an individual can request exclusion from the class (*id*. at 5), explains how a class member can object to the settlement (*id*. at 4–5), provides a procedure for challenging the calculation of months worked (*id*. at 3), discloses the time and place of the final approval hearing (*id*. at 6), displays the contact information for Class Counsel (*id*. at 5) and the Class Administrator (*id*. at 6), and advises that the Settlement Administrator or Class Counsel may be contacted to answer questions about the settlement (*id*.).

The Court finds that the Notice meets the requirements for such a notice under Rule 23 and that the means for distribution of the Notice are similarly sufficient.  Fed. R. Civ. P. 23(b)(3), (e)(4)–(5); *Churchill Vill.*, 561 F.3d at 575.

**C. Further Scheduling and the Fairness Hearing**

"Courts have long recognized that settlement class actions present unique due process concerns for absent class members."  *In re Bluetooth*, 654 F.3d at 946.  To protect the rights of absent class members, Rule 23(e) requires the court to approve such settlements "only after a fairness hearing . . . ."  *Id.*; Rule 23(e)(2).

For clarity, the Court now reiterates the remaining deadlines as per in the Settlement Agreement, the Notice, and the parties' proposed order.  The deadline for Class Counsel's forthcoming motions and the date of the fairness hearing has been set

to account for any delay in remailing notices to the class members under the procedures set forth in the Settlement Agreement. (*See* Settlement Agreement at 22.)

| | |
|---|---|
| Deadline for defendant to provide to Settlement Administrator all required information about the putative class members. | *Fifteen (15) business days from the date of this order.* |
| Deadline for mailing of Notices by the Settlement Administrator. | *Ten (10) business days after receipt of the Class Data.* |
| Last day for Plaintiffs to request final approval of the settlement agreement, attorneys' fees, and incentive award, and submit the Settlement Administrator's declaration. | **May 11, 2024** |
| Fairness Hearing Date. | **June 6, 2024** |

## CONCLUSION

For the above reasons, it is HEREBY ORDERED that:

1.  Plaintiffs' unopposed motion for provisional class certification and preliminary approval of settlement (ECF No. 22) is GRANTED;

2.  As defined above and for purposes of settlement only, the Rule 23 class is provisionally certified, Plaintiffs Tim Botonis and Liam Patrick Meikle are appointed Class Representatives, and Beeson, Tayer & Bodine, APC are appointed Class Counsel;

3.  Phoenix Class Action Administration Solutions is appointed as the Settlement Administrator for this class action settlement;

4.  The Settlement Agreement (ECF No. 62-2) is preliminarily approved as fair, reasonable, and adequate;

5.  The parties' plan for notice to the class is the best notice practicable and satisfies the due process concerns of Rule 23; and

27

6.  The parties shall follow the deadlines set herein, as delineated by the Settlement Agreement.  A Fairness Hearing is scheduled for May 1, 2024, at 9:00 a.m., in Courtroom 10 of the Matsui Courthouse, 501 I. St., Sacramento, CA, 95814.


IT IS SO ORDERED.

Dated:   **January 8, 2024**

Hon. Daniel J. Calabretta
UNITED STATES DISTRICT JUDGE

DJC1 - botonis22cv01453.prelim_class_settlement

28