1  COSTA KERESTENZIS, SBN 186125
   **BEESON, TAYER & BODINE, APC**
2  520 Capitol Mall, Suite 300
   Sacramento, CA  95814-4714
3  Telephone:      (916) 325-2100
   Facsimile:      (916) 325-2120
4  Email:          ckerestenzis@beesontayer.com

5  SARAH S. KANBAR, SBN 315443
   **BEESON, TAYER & BODINE, APC**
6  492 Ninth Street, Suite 350
   Oakland, CA  94607
7  Telephone:      (510) 625-9700
   Facsimile:      (510) 625-8275
8  Email:          skanbar@beesontayer.com

9  Attorneys for Plaintiffs Tim Botonis, Liam Patrick Meikle,
   and Putative Class

10

11                    **UNITED STATES DISTRICT COURT**

12               **FOR THE EASTERN DISTRICT OF CALIFORNIA**

13

| TIM BOTONIS AND LIAM PATRICK MEIKLE, on behalf of themselves and all others similarly situated, | Case No. 2:22-CV-01453-DJC-DB |
|---|---|
| Plaintiffs, | **PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION AND PAGA AGREEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| v. | |
| BIMBO BAKERIES USA, INC. and DOES ONE through TEN, | Hearing Date:     June 6, 2024 |
| Defendants. | Hearing Time:     1:30 p.m. |
| | Courtroom:        10, 13th Floor |
| | Judge:            Hon. Daniel J. Calabretta |
| | Complaint Filed:  April 11, 2023 |
| | Preliminary Apr:  January 9, 2024 |

28  **PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**
    Case No. 2:22-cv-01453-DJC-DB

# TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTIONAND PAGA SETTLEMENT ............................................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................. 4

I.       INTRODUCTION ............................................................................. 4

II.      RELEVANT FACTUAL AND PROCEDURAL BACKGROUND ........................... 4

    A.     Pertinent Background and Settlement Terms. ..................................................... 4

    B.     Preliminary Approval and Notice Process. ......................................................... 6

    C.     Objection from Crisanto Martinez. ..................................................................... 8

III.     ARGUMENT ...................................................................................... 9

    A.     Defendants have met the Notice Requirements under CAFA. ..................................... 10

    B.     Notice Requirements under Rule 23(c)(2)(B) have been satisfied. ............................. 10

    C.     The Settlement is Fair, Reasonable and Adequate. ......................................................... 11

        1.   Plaintiffs' investigation was thorough and provided sufficient information to assess the strength and weakness of their claims. ........................................................... 11

        2.   The Settlement was reached through informed, arms-length negotiations. ................. 13

        3.   The clear sailing provision does not support a claim that there was collusion between the Parties. ............................................................................................. 14

        4.   The Settlement provides adequate monetary and non-monetary relief. ...................... 15

        5.   The attorneys' fees, costs, and service reward are reasonable ..................................... 16

    D.     The Class was Given Notice Consistent with the Court's Order and the Response was Favorable. ............................................................................................... 17

    E.     The Objection from Martinez is Meritless. ................................................................. 17

        1.   Martinez's objection to the settlement's reasonableness must be rejected because the Class overwhelmingly supports it. ................................................................ 18

i

2.   Martinez's primary argument is the mistaken factual contention that the Class Release is too Broad. ...................................................................................... 18

3.   Martinez's argument that the Settlement is not adequate is meritless and ignores the significant monetary and non-monetary relief obtained in the Settlement. ................. 21

4.   Martinez's other objections are also baseless. ............................................. 25

IV.        CONCLUSION ........................................................................................... 25

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**
Case No. 2:22-cv-01453-DJC-DB

# TABLE OF AUTHORITIES

**Cases**

*Bellinghausen v. Tractor Supply Co*.,
306 F.R.D. 245 (N.D. Cal 2015)................................................................ 23

*Bolton v. U.S. Nursing Corp.*,
No. 12-CV-4466-LB, 2013 WL 5700403 (N.D. Cal. Oct. 18, 2013) ................. 16

*Bond. v. Ferguson Enterprises, Inc.*,
2011 WL 284962, at *7 (E.D. Cal. Jan. 25, 2011)........................................ 20

*Bravo v. Gale Triangle, Inc*.,
2017 WL 708766, *10 (C.D. Cal. Feb.16, 2017)........................................... 23

*Castro v. ABM Industries, Inc.*,
Case No. 4:17-cv-03026-YGR (N.D. Cal. Sept. 3, 2019)......................... 13, 15

*City of Detroit v. Grinnell Corp.,*
*495 F.2d 448 (2nd Cir.1974)* ................................................................. 23

*Dunk v. Ford Motor Co.,*
48 Cal.App.4th 1794 (1996)............................................................... 16, 17

*Gonzalez v. CoreCivic of Tennessee, LLC*,
2018 WL 4388425, at *12 (E.D. Cal. Sept. 13, 2018)................................... 20

*In re American Bank Note Holographics, Inc.*
(SDNY 2001) 127 F.Supp.2d 418 ............................................................. 17

*In re Austrian & German Bank Holocaust Litigation*,
80 F. Supp. 2d 164 (S.D.N.Y. 2000).......................................................... 16

*In re Bluetooth Headset Prods. Liab. Litig*.,
654 F.3d 935 (9th Cir. 2011) ................................................................... 10

*In re Linkedin User Priv. Litig.*,
309 F.R.D. 573 (N.D. Cal. 2015)......................................................... 18, 24

*In re Mego Fin. Corp. Sec. Litig*.,
213 F.3d 454 (9th Cir. 2000)................................................................... 10

*In re Omnivision Techs., Inc*.,
559 F.Supp.2d 1036 (N.D. Cal. 2008) ....................................................... 18

*In re Online DVD-Rental Antitrust Litig*.,
779 F.3d 934 (9th Cir. 2015)................................................................... 10

*In re Yahoo! Inc. Customer Data Sec. Breach Litig*.,
No. 16-MD-02752-LHK, 2020 WL 4212811, at *14 (N.D. Cal. July 22, 2020) ........... 23

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF
CLASS ACTION AND PAGA SETTLEMENT; MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT THEREOF**
Case No. 2:22-cv-01453-DJC-DB

*Linney v. Cellular Alaska P'ship*,
    151 F.3d 1234 (9th Cir. 1998)..................................................................................... 23, 24

*Mandujano v. Basic Vegetable Prods., Inc.*,
    541 F.2d 672 (9th Cir. 1976) .................................................................................... 17

*Martinez v. Knight Transport, Inc.*,
    2023 WL 2655541, at *10 (E.D. Cal. Mar. 27, 2023) ............................................ 23

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004) ............................................................................. 18

*Officers for Justice v. Civil Serv. Comm'n*,
    688 F.2d 615 (9th Cir.1982)..................................................................................... 23

*Reed v. Thousand Oaks Toyota*,
    No. 56-2012-00419282-CU-OE-VTA, 2013 WL 8118716 (Cal. Super. Ct. Apr. 8, 2013) ........... 16

*Rivera v. W. Express Inc.*,
    2020 WL 5167715, at *8 (C.D. Cal. May 1, 2 ........................................................... 20

*See Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998).................................................................................. 10

*Shames v. Hertz Corp.*,
    No. 07-CV-2174-MMA WMC, 2012 WL 5392159, at *8 (S.D. Cal. Nov. 5, 2012) ...... 19

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) ................................................................................... 14

*Wal-Mart Stores v. Dukes*,
    564 U.S. 338 at 131 ................................................................................................. 10

*Young v. LG Chem Ltd.*,
    783 F. App'x 727 (9th Cir. 2019) ............................................................................ 24

**Statutes**

28 U.S.C § 1715(b) ......................................................................................................... 10
                § 1715(d) ......................................................................................................... 9

Federal Rules of Civil Procedure Rule 23(a) ............................................................ 2
                                          23(a)(4) ............................................................. 2
                                          23(b)(3) ............................................................. 2
                                          23(c)(2)(B) .................................................. 2, 9, 10
                                          23(e) ................................................................ 10
                                          23(e)(1)(C) ....................................................... 11
                                          23(e)(2); ............................................................ 9
                                          23(e)(C) ........................................................... 22
                                          23(e)(C)(i)-(iv) ................................................ 22
                                          23(g) ................................................................ 2

iv

California Labor Code Section 203.................................................................................... 12
                               206.................................................................................... 12

v

## <u>NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT</u>

**PLEASE TAKE NOTICE THAT** on June 6, 2024, at 1:30 p.m. at the United States District Court for the Eastern District of California, located at 501 I Street, Courtroom 10, 13th Floor, Sacramento, California, 95814, Plaintiffs Tim Botonis and Liam Patrick Meikle, individually and on behalf of the putative Class Members will, and hereby do, move this Court to:

1. Grant final approval of the Class Action and Private Attorney General Act (PAGA) Settlement Agreement (the "Settlement Agreement") reached between Plaintiffs Tim Botonis and Liam Patrick Meikle ("Plaintiffs") and Defendant Bimbo Bakeries USA Inc. ("Defendant") (Plaintiffs and Defendant collectively referred to as the "Parties") (Dkt. 22-2.);

2. Grant final certification of the Class for settlement purposes, defined as: "all current and former individuals who are or previously were employed by Defendant in California as Transport Associates (also referred to as Drivers, including Relief Drivers) and Route Sales Professionals or any associate doing similar work[1] during the period May 10, 2018 through August 26, 2023" (the "Class" or "Settlement Class");

3. Finally Appoint Tim Botonis and Liam Patrick Meikle as the Class Representatives;

4. Finally Appoint Beeson, Tayer & Bodine, APC as Class Counsel;

5. Find that all procedural steps have been met including that Notice to the Class was properly provided to the Class;

6. Order the Defendant to pay $875,000.00 to the Settlement Administrator within 61days of the Order Granting Final Approval;

7. Order the Settlement Administrator to distribute from the Gross Settlement Amount ("GSA") the awarded attorney's fees, costs, Class Representative Service Awards, Settlement Administrator costs of $11,765, and $7,500 to the California Labor and Workforce Development Agency as the 75% portion of the $10,000 PAGA penalty;

---

[1] Employees encompassed within the definition of Aggrieved Employees include but are not limited to the following: Bakery RSR; Commission Sales Representative; Relief Driver; Relief Drivers; Relief Route Drivers; Route Relief; Route Sales Representative; Route Sales Representative-Express Routes; Route Sales Representatives; Vacation Relief RSR.

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
Case No. 2:22-cv-01453-DJC-DB

1

8.    Order the Settlement Administrator to distribute from the Net Settlement Amount ("NSA") to the Class within 10 days of receipt of the funds as follows:

    a.  Each eligible Aggrieved Employee (PAGA Class) shall receive a portion of the $2,500 PAGA Settlement, proportionate to the number of Workweeks Worked by the Aggrieved Employee during the PAGA Period compared to the total number of Workweeks Worked by all Aggrieved Employees during the PAGA Period.

    b.  The remaining NSA designated to the Class Claims shall be allocated to each participating Class Member based on his or her proportionate Work Months Worked during the Class Period compared to the total number of Work Months Worked by all participating Class Members during the Class Period.

9.    Bind all Settlement Class members to the terms of the Settlement Agreement including the releases specified herein; and,

10.    Enter the [Proposed] Order Granting Motion for Final Approval of Class Action and PAGA Settlement concurrently herewith.

This Motion is unopposed by Defendant as it is based on the Settlement Agreement.  This Motion is made on the grounds that:

    a.  The Settlement Class meets all of the requirements for class certification for purposes of settlement pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure;

    b.  The Settlement is fair, adequate, and reasonable as required by Rule 23 of the Federal Rules of Civil Procedure and relevant case-law;

    c.  Plaintiffs and their Counsel are adequate to represent the Settlement Class, as required by Rule 23(a)(4) and (g) of the Federal Rules of Civil Procedure;

    d.  The notice procedures and related forms that were provided to the Class comport with all relevant due process requirements and the requirements of Rule 23(c)(2)(B) of the Federal Rules of Civil Procedure; and

    e.  The Settlement Class has overwhelmingly supported the Settlement except for the sole and baseless objection by Putative Class member Crisanto Martinez.

2

1        This Motion is based upon: (1) this Notice of Motion and Motion; (2) the Memorandum of

2    Points and Authorities attached hereto; (3) the Declaration of Costa Kerestenzis; (4) the Declaration of

3    Plaintiff Tim Botonis; (5) the Declaration of Plaintiff Liam Patrick Meikle; (6) the Declaration of the

4    Settlement Administrator, (7) the concurrently filed Declaration of Brian Fahy related to CAFA Notice,

5    (8) the records, pleadings, and papers filed in this action; and (9) such other documentary and oral

6    evidence or argument as may be presented to the Court at or prior to the hearing of this Motion.

7    Concurrently filed with this Motion is Plaintiffs' Motion for Attorney's Fees, Costs and Class

8    Representative Service Awards along with the Declaration of Sarah S. Kanbar in support thereof, which

9    further explains why the requested fees, costs, and awards are fair and reasonable.

10    Dated: May 10, 2024                       BEESON, TAYER & BODINE, APC

11

12                          By   */s/ Costa Kerestenzis*

13                              COSTA KERESTENZIS
                           Attorneys for Plaintiffs Tim Botonis and

14                              Liam Patrick Meikle

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.  INTRODUCTION

Pursuant to Rule 23 of the Federal Rules of Civil Procedure and this Court's Order granting Preliminary Approval of the proposed Class Action and PAGA Settlement Agreement (Dkt. 26), Plaintiffs Tim Botonis and Liam Patrick Meikle hereby respectfully request final approval of the Class Action and PAGA Settlement with Defendant Bimbo Bakeries USA Inc.  Defendant does not oppose this Motion.

As provided below, this Court should grant final approval because (1) the Settlement is fair, reasonable and adequate; (2)  after preliminary approval was granted by the Court, proper Notice was given to the Class as ordered by the Court; (3) the Class overwhelmingly supported the proposed Settlement and no requests for exclusion were filed by the Class, showing that the settlement is fair, reasonable, and adequate; and (4) only one Class Member filed an objection, which lacks factual and legal merit.

### II.  RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

#### A.  Pertinent Background and Settlement Terms.

On May 10, 2022, Plaintiffs filed a putative class action lawsuit in Sacramento County Superior Court on behalf of a putative class comprising "all current and former drivers (including relief drivers) and route salespersons, ("the Class" or "putative Class Members") who are or have been employed by Defendant in the State of California and to whom Defendant has failed to (a) reimburse for business expenses; (b) provide accurate itemized wage statements; and (c) pay wages upon termination or severance of employment at any time for four (4) years prior to the original filing of this lawsuit and continuing through the date of judgment in this action related to the allegations set forth above regarding the use of personal cell phones." (Complaint, Dkt. 1-1, ¶ 23.)  The thrust of Plaintiffs' Complaint is that Plaintiffs contend they, and the Class, are not reimbursed for the reasonable use of their personal cell phone when engaged in work duties.

Plaintiffs thereafter filed an Amended Class Action Complaint to include a PAGA claim and seeking PAGA penalties based on the alleged Labor Code violations.  Plaintiffs' Class Action Complaint and Amended Class Action Complaint are specifically based on Defendant's alleged

1   failure to reimburse employees for the business expenses, specifically the alleged use of their

2   personal cell phones for work-related purposes.  (Dkt. 1-1, ¶ 15.)

3       On August 16, 2022, Defendant removed the case to this Court.  (Dkt. 1.)  After removal, the

4   Parties engaged in extensive informal discovery, prepared for Mediation, and attended a full day of

5   Mediation on January 17, 2023.  (Declaration of Costa Kerestenzis in Support of Motion for Final

6   Approval ("Kerestenzis Decl."), ¶¶ 13-15.)  The Parties mediated with mediator John Hyland, a

7   respected third-party neutral who has served as lead class counsel for dozens of wage/hour class

8   actions and is experienced in mediating wage and hour class actions.  (Kerestenzis Decl., ¶ 16.)

9   During Mediation, the Parties engaged in approximately 9 hours of extensive and informed arm's-

10  length negotiations facilitated by Mr. Hyland.  The Parties did not settle on the day of Mediation;

11  however, both Parties ultimately accepted Mediator Hyland's proposal for settlement, which outlined

12  a framework for resolution.  (*Id*.)  After accepting the Mediator's proposal, the Parties continued to

13  negotiate at arm's-length for several months over the remaining terms of the settlement, until the

14  Settlement Agreement was executed on July 13, 2023.  (Kerestenzis Decl., ¶ 17; Dkt. 22-2

15  (Settlement Agreement).)

16      As detailed in the Motion for Preliminary Approval of the Settlement Agreement ("MPA"),

17  the Settlement provides both monetary relief to the Class and prospective relief to limit the need for

18  the alleged use of personal cell phones for work-related purposes and provide a process for

19  employees to seek contemporaneous reimbursement of any such expenses going forward.

20  Specifically, the Settlement calls for a non-reversionary Gross Settlement Amount ("GSA").  From

21  the GSA, the Settlement Agreement contemplates (a) up to $130,000 in Attorney's Fees, (b) up to

22  $10,000 in litigation costs and expenses to Class counsel[2], (c) $5,000 for each Plaintiff in Class

23  Representative Awards, (d) $7,500 to the California Labor and Workforce Development Agency as

24  the 75% portion of the $10,000 PAGA penalty, and (e) $11,765 to the Settlement Administrator for

25  Administration costs.  (Dkt. 22-2, ¶ 49.)

26      After the above deductions from the GSA, the Net Settlement Amount or NSA is $703,235[3] to

27  

28  

---

[2] As noted in the concurrently filed Motion for Fees, Counsel is only seeking $8,310.64 in litigation costs.
[3] This number will be increased slightly since Plaintiffs are requesting less than the allotted $10,000 for litigation costs.

5

be distributed to the whole Settlement Class.  Based on this figure, the Settlement will provide monetary payments to 1,728 Class Members with an average gross settlement award of $406.96 per Class Member with the highest individual share being $650.54 and the lowest individual share being $10.16.  (Declaration of Settlement Administrator Jarrod Salinas ("Salinas Decl."), ¶ 13).

Moreover, the GSA calls for a PAGA payment of $10,000, of which 75%, or $7,500 will be paid to the Labor and Workforce Development Agency and the remaining 25%, or $2,500 to be distributed to the Class.  (Salinas Declaration, ¶ 14.)  With both the settlement fund and PAGA penalty, the average payment to a participating Class Member, including the PAGA Payment, is approximately $408.  (Salinas Decl., ¶¶ 13-14.)

The Settlement distribution is based on the total Work Months Worked for each Class Member during the Class Period of May 10, 2018 through August 26, 2023, which is fair and tailored to provide compensation based on the strength of each members' claim as individual damages and penalties would increase or decrease based on the number of work months and pay periods an employee was not properly reimbursed for the alleged use of their personal cell phone for work-related purposes.  (Dkt. 22-2, ¶¶ 7, 49(c).)  Moreover, distribution of the PAGA Payment is based on the entire workweeks worked during the PAGA Period of May 10, 2021 through August 26, 2023. (Dkt. 22-2, ¶¶ 26, 49(c).)

The Settlement also involves non-monetary prospective relief, as Defendant is implementing a new expense reimbursement policy and providing communications-related upgrades to the company-issued devices provided to Class Members in connection with the Settlement to avoid the need for the use of personal cell phones for work-related reasons.  (Dkt. 22-2, ¶ 52.)

**B.  Preliminary Approval and Notice Process.**

Plaintiffs filed the MPA on July 13, 2023, and then provided supplemental briefing per the Court's direction on or about August 17, 2023. (Dkts. 22, 25.)  Finding the Settlement Agreement met the requirements for preliminary approval, the Court granted preliminary approval on January 9, 2024.  (Dkt. 26.)

In the Preliminary Approval Order, the Court reviewed the proposed Settlement Terms and

6

analyzed the applicability of Rule 23 and the appropriateness of certification of the Class.
Ultimately, the Court preliminarily found that provisional certification of the Class was appropriate,
that Class treatment of the claims at issue was appropriate, and preliminarily approved the
Settlement.  (Dkt. 26 at pp. 27-28.)  The Court also reviewed the proposed Notice of Settlement to the
Class ("Class Notice") and found that it and the proposed means of distribution to the Class was
reasonable and satisfied due process under Rule 23.  (*Id.*)

After Preliminary Approval, per the Court's order, Defendant provided a data file to the
approved Settlement Administrator that contained the relevant information for the Class list, which
ultimately contained 1,728 individuals identified as Class Members.[4]  (Salinas Decl., ¶¶ 3-4.)  On or
about February 12, 2024, the Settlement Administrator mailed, via U.S. first class mail, the approved
Class Notice.  (Salinas Decl., ¶ 5.)  Only 33 of the 1,728 Notices came back undeliverable and the
Settlement Administrator did skip traces on those 33 and the Class Notice was promptly re-mailed to
those Class members via U.S. first class mail.  (Salinas Decl., ¶ 6.)  No further Notices were returned,
and, as such, all Class Notices were delivered to the Class.  Accordingly, notice was given to the
entire Class. (Salinas Decl., ¶ 7.)

Of the 1,728 Class Members, the Settlement Administrator received **no requests for
exclusion** and **only one (1) objection** from Crisanto Martinez.  (Salinas Decl., ¶¶ 8-9; see also Dkt.
28.)  This represents a 99.95% participation rate by the Settlement Class.  Moreover, apart from Mr.
Martinez, Class Counsel and the Plaintiffs have only received favorable feedback regarding the
Settlement.  (Kerestenzis Decl., ¶ 45; Declaration of Liam Patrick Meikle ("Meikle Decl."), ¶ 10;
Declaration of Tim Botonis ("Botonis Decl.,") ¶ 11.)

Finally, Defendant served the required notice under the Class Action Fairness Act (CAFA) on
July 24, 2023 (*See* Declaration of Brian D. Fahy in Support of Plaintiffs' Final Approval Motion, ¶ 2)
and Plaintiffs provided notice of the PAGA Settlement to the California Labor Workforce and
Development Agency ("LWDA") on July 21, 2023, and informed the LWDA of the preliminary

---

[4] While the final number of Class Members is slightly higher than the 1,692 members anticipated in the Preliminary
Approval Motion, it does not significantly impact the settlement.  The Court noted at the time of preliminary approval,
the expected settlement payment is $417.10, and as noted above, the expected settlement payment for each member is
around $408.00 including the PAGA payment.

7

approval hearing.  (Kerestenzis Decl., ¶ 43.)  Since then, the Parties have not received any objection on the Settlement from the LWDA.  (*Id*.)

**C.  Objection from Crisanto Martinez.**

Putative Class Member Crisanto Martinez filed the only Objection in this matter on March 22, 2024.  (Dkt. 28.)  Prior to filing the Objection, Mr. Martinez filed his own lawsuit, several months after this action, on or about September 15, 2022.  *See Martinez, et al. v. Bimbo Bakeries USA, Inc., et al.*, Case No. 2:22-cv-01618-DAD-JDP (E.D. Cal.).  The *Martinez* action is a broader putative class action that alleges, in addition to claims for unpaid wages, inaccurate wage statements, and waiting time penalties, an expense reimbursement claim, premised upon theories not alleged here, including alleged failure to compensate for mandatory Department of Transportation licensing, and for time spent in mandatory medical exams.  (*See Martinez* Complaint, Dkt. 1, 13.)

On December 15, 2022, the Plaintiff in *Martinez* filed a Motion to Consolidate in the instant action.  (Dkt. 9.)  On January 3, 2023, two weeks prior to the Plaintiffs and Defendant holding their Mediation, this Court issued a Related Case Order.  (Dkt. 10.)  That same day, this Court, in the *Martinez* action, denied the Motion to Consolidate.  (*Martinez* Dkt., 31.)

When *Martinez* filed his action, the parties in the instant action had already agreed to mediate and begun preparations to engage in Mediation.  (Kerestenzis Decl., ¶ 46.)  As Plaintiff Martinez noted in his Objection, counsel for the Plaintiffs in this action and Martinez's counsel exchanged emails about the possibility of having Plaintiff Martinez join in the previously scheduled Mediation with Mediator Hyland.  (Dkt. 28, Kerestenzis Decl., ¶ 47.)  However, the *Martinez* action included expense reimbursement claims for matters other than the use of a cell phone for work (as well as other wage-related claims not involving expense reimbursement that were not alleged in this action), and the Parties had already expended time and resources on preparing to mediate the cell phone claims only.  (Kerestenzis Decl., ¶ 48.)

The Parties in the instant action opposed consolidation with *Martinez* given the differences between this action and *Martinez*, including the different class definition, claims asserted in *Martinez* that are not asserted here, and the two (2) totally different expense reimbursement theories not alleged in this action.  (*See Martinez* Dkt. 1; Kerestenzis Decl., ¶ 46-49.)

8

Notably, Plaintiffs advised Martinez's counsel of their opposition to consolidation for these reasons, and in response, Martinez's counsel expressed no objection to the Plaintiffs decision to proceed with Mediation nor did he claim at the time that Plaintiffs were engaging in an unfair process. (Kerestenzis Decl., ¶¶ 47-49, Exh. A.)  In fact, as noted in the emails counsel for Plaintiffs advised Martinez's counsel of the Mediation, why Plaintiffs opposed consolidation and the fact that the parties would engage in Mediation without Martinez (to which Martinez's counsel noted he understood Plaintiffs' position), and ultimately the fact that the Parties reached Settlement. (Kerestenzis Decl., ¶¶ 46-48, Exh. A.)  Finally, in the emails and correspondence with Martinez's counsel, Plaintiffs noted they would limit the business expense release in the instant action to the cell phone claims pled in *Botonis*, so as to not affect Martinez's other business expense claims. (Kerestenzis Decl., ¶¶ 48-49.)  As noted below, Plaintiffs did just that.

### III.    ARGUMENT

In order to approve a settlement in a class action, the Court must conduct a three-step inquiry. First, it must assess whether defendants have met the notice requirements under the Class Action Fairness Act ("CAFA").  See 28 U.S.C. § 1715(d).  Second, it must determine whether the notice requirements of Rule 23(c)(2)(B) have been satisfied.  Finally, it must conduct a hearing to determine whether the settlement agreement is "fair, reasonable, and adequate."  *See* Fed. R. Civ. P. 23(e)(2); *Staton v. Boeing Co*., 327 F.3d 938, 959 (9th Cir. 2003) (discussing the Rule 23(e)(2) standard); *Adoma v. Univ. of Phoenix, Inc*., 913 F.Supp.2d. 964, 972 (E.D. Cal. 2012) (conducting three-step inquiry).

In reviewing the proposed settlement, a court need not address whether the settlement is ideal or the best outcome, but only whether the settlement is fair, free of collusion, and consistent with plaintiff's fiduciary obligations to the class.  *See Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1027 (9th Cir. 1998), overruled on other grounds by *Wal-Mart Stores v. Dukes*, 564 U.S. 338 at 131.  Notably, the court must ensure that "the settlement is not the product of collusion among the negotiating parties."  *In re Bluetooth Headset Prods. Liab. Litig*., 654 F.3d 935, 946–47 (9th Cir. 2011). Settlements that occur before formal class certification also "require a higher standard of fairness." *In re Mego Fin. Corp. Sec. Litig*., 213 F.3d 454, 458 (9th Cir. 2000).  In making this determination, 9

courts look for signs of collusion, including "(1) when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded[;]" "(2) when the parties negotiate a 'clear sailing' arrangement providing for the payment of attorneys' fees separate and apart from class funds[;]" and "(3) when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund[.]" *In re Bluetooth*, 654 F.3d at 947. (internal quotation marks and citations omitted).

As will be discussed below, all three (3) steps of the inquiry have been met and approval should be given as notice under CAFA was given, notice requirements under Rule 23(c)(2)(B) have been satisfied, and the Settlement is fair, reasonable and adequate, and free of collusion.  Further supporting final approval is the Class's overwhelming supportive reaction towards the Settlement.  Finally, as will be detailed below, Martinez's Objection is factually and legally meritless.

**A.  <u>Defendants have met the Notice Requirements under CAFA.</u>**

On July 24, 2023, Defendant provided the required notice to federal and state attorneys general under the Class Action Fairness Act. 28 U.S.C § 1715(b).  (*See* Declaration of Brian D. Fahy in Support of Plaintiffs' Final Approval Motion, ¶ 2.)

**B.  <u>Notice Requirements under Rule 23(c)(2)(B) have been satisfied.</u>**

Notices of settlement to class members satisfy due process and the requirements of Rule 23(e) if they provide "sufficient detail simply to alert those with adverse viewpoints to investigate and to come forward and be heard." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 946 (9th Cir. 2015) (quotation marks and citation omitted).  Here, the Class Notice provided Class Members with detailed information including, as this Court noted, "how the settlement was reached, the Settlement Agreement's terms, and expected distribution to putative class members." (Dkt. 26, p. 20, citing to Dkt. 22-2, pp. 41-43.)  The Notice also informed Class Members of their options, including the process and deadline to object or opt-out, and the claims that would be released if they accept the settlement. (Dkt. 22-2, pp. 41-45.)  Moreover, the Salinas Declaration outlines the process that the Settlement Administrator took when receiving the Class Data, including updating contact information and resubmitting the Notice in the event a mailing was returned undeliverable, as well as providing

1  additional time to respond to those Members who had their Notices re-mailed.  (Salinas Decl., ¶¶ 3-

2  7.)  Finally, Plaintiffs' counsel provided notice of the PAGA Settlement to the LWDA on July 21,

3  2023, and the Parties have not received any objection on the Settlement from the LWDA.

4  (Kerestenzis Decl., ¶ 42.)

5          Thus, as this Court preliminarily determined and the Salinas Declaration confirms, the Class

6  Members have been appropriately noticed of this Settlement, have been informed of their rights and

7  the procedures for objecting or opting out of the settlement, and have been provided time and

8  opportunity to respond.  As such, the notice requirements under Rule 23 have been satisfied.

9          **C.  The Settlement is Fair, Reasonable and Adequate.**

10          As noted above, the court may finally approve a class action settlement "only after a hearing

11  and on finding that the settlement . . . is fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(1)(C).

12  As detailed in the Motion for Preliminary Approval ("MPA") and in the instant Motion, the proposed

13  Settlement is fair, reasonable and adequate, as it was achieved after reasonable and a thorough

14  investigation, is within the range of reasonableness, provides adequate relief to the Class, and was

15  reached via arms-length negotiations.  (Kerestenzis Decl. ¶¶18-22.)  Further, a review of the

16  Settlement terms shows there is no evidence or indication of collusion.

17                  1.  *Plaintiffs' investigation was thorough and provided sufficient information to*
                        *assess the strength and weakness of their claims.*

18          Class Counsel, who are experienced in wage and hour matters, thoroughly investigated and

19  researched the claims in controversy and the defenses.  As detailed in the MPA, and in the

20  Declaration of Costa Kerestenzis in support of the instant Motion, Counsel's investigation including

21  reviewing informal discovery which consisted of Defendant's employment policies and procedures

22  relating to personal cell phone use and expense reimbursements; Plaintiffs' pay records; Plaintiffs'

23  applicable collective bargaining agreement and personnel files; and data regarding Class Members'

24  Months Worked to assess potential unpaid expense reimbursement damages and statutory and PAGA

25  penalties.  (Dkt. 22, p. 22; Kerestenzis Decl., ¶¶ 13-15; Kanbar Decl., ¶6.)  The Plaintiffs and their

26  counsel recognize that, in the absence of an approved settlement, they would face a protracted

27  litigation course, including but not limited to a contested motion for class certification, motion(s) for

28                                                                                                    11

summary judgment, and trial and appellate proceedings that would consume time and resources and present each of them with ongoing litigation risks and uncertainties.  (Kerestenzis Decl., ¶¶31-36.)

Moreover, Counsel conducted research on the average monthly cost for maintaining a cell phone, interviewed putative Class Members about how frequently they used their personal cell phone for work to determine a reasonable percentage, and researched similar settlements in other wage and hour actions involving the reimbursement of personal cell phone use under Labor Code section 2802. (Kerestenzis Decl., ¶ 15; Kanbar Decl., ¶6.)

The document review and research conducted by Class Counsel in anticipation of Mediation allowed Class Counsel to compare the strengths and weaknesses of the claims alleged against the benefits of settlement.  Plaintiffs also noted how the amount recovered for the Class, approximately $10.00 per month worked, was consistent with other reimbursement class action lawsuits involving the use of a cell phone.  (Dkt. 22, p. 24-25; Kerestenzis Decl., ¶ 15; Kanbar Decl., ¶7.)

Notably, in assessing Settlement, Plaintiffs took into account the fact that Defendant has alleged several merits and class certification defenses on the Plaintiffs' claims.  Particularly, Defendant argued that the Class may not be able to recover any penalties under PAGA or Labor Code sections 203 or 226, since arguably the reimbursement of business expenses are not wages that trigger penalties, and that class treatment of a reimbursement claim is inappropriate.  (Dkt. 22, p. 16; Kerestenzis Decl., ¶¶ 18-21.)  Moreover, the PAGA penalties in this case would be modest and Plaintiffs noted in their MPA that there was ample case law supporting a significant reduction of PAGA penalties that could be assessed.  (Dkt. 22, p. 25.)

This Court recognized these arguments in the Preliminary Approval Order.  (Dkt. 26, pp. 16-20.)  Notably, the Court agreed with Plaintiffs' assessment and discounting of the section 203 and section 226 claims, noting that "continued litigation would risk what appears to be a strong likelihood that these claims would be dismissed."  (Dkt. 26, pp. 17.)  The Court further went on to analyze the overall possible recovery vis-à-vis the settlement amount to the Class and found that the Settlement was appropriate.  Indeed, as discussed above, the Settlement Administrator's Declaration notes that the average recovery for the cell phone reimbursement claim is around $406.96 and the lowest

12

individual share, which would represent only one work month, is $10.16.  (Salinas Decl., ¶ 13.)  That is consistent with the research performed by Class Counsel on fair and reasonable settlements of Labor Code section 2802 claims for cell phone use.  *See Castro v. ABM Industries, Inc.*, et al., Case No. 4:17-cv-03026-YGR (N.D. Cal. Sept. 3, 2019) (granting final approval to settlement that would partially compensate employees with $10.00 each month an employee's phone number showed up in Defendant's phone records.)

Based on the foregoing documents and data, and their own independent investigation and evaluation, Class Counsel is of the opinion that the settlement with Defendant for the consideration and on the terms set forth in the Settlement is fair, reasonable, and adequate in light of all known facts and circumstances, including the risk of significant delay, defenses asserted by Defendant, and numerous potential appellate issues.  (Kerestenzis Decl., ¶36.)

*2. The Settlement was reached through informed, arms-length negotiations.*

The Parties extensively negotiated the terms of the Settlement Agreement both during the Mediation and after Mediation, when the parties accepted a proposal from the mediator that provided the framework for a settlement that was eventually effectuated and memorialized in the Settlement Agreement..  (Kerestenzis Decl., ¶¶ 16-17.)  The parties then continued to negotiate for another six months over the settlement terms until the Settlement Agreement was signed on July 13, 2023.  (Kerestenzis Decl., ¶ 17.)  At all times, the parties' settlement negotiations have been non-collusive, adversarial, and at arm's length.  (Kerestenzis Decl. ¶¶16-17.)

Further, in the Order granting Preliminary Approval the Court expressed satisfaction that the Settlement Agreement was the result of informed, arms-length negotiations.  (Dkt. 26, p. 15.)  Indeed, as noted above, the parties negotiated for several months after the Mediation as it was Counsel's intent to reach the best agreement possible for the Class.  Specifically, even after the Parties reached an agreement as to the material terms, Class Counsel had to ensure that the terms of the final Settlement Agreement were fair to every member of the Class and Aggrieved Employees and that the Class received the requisite opportunities for notice, exclusion, and objection in accordance with applicable law.  (Kerestenzis Decl., ¶¶ 18-22.)

13

3. *The clear sailing provision does not support a claim that there was collusion between the Parties.*

In the Preliminary Approval Order, the Court noted that because there is a clear sailing provision with respect to the attorneys' fees award, the Court would need to conduct a lodestar cross-check to determine if the request is reasonable, since a clear sailing provision may be indicative of collusion. As detailed in the concurrently filed Motion for Attorney's Fees, a lodestar analysis has been done with further shows that the requested fees (15% of the GSA) are reasonable. Indeed, Plaintiffs' counsel sought only 15% in an effort to recognize the early resolution of this matter and to ensure the Class obtained a fair, adequate and reasonable settlement amount. (Kerestenzis Decl., ¶ 41; Kanbar Decl., ¶8-9.)

As noted by the Ninth Circuit in *Staton v. Boeing Co.*, 327 F.3d 938, 954 (9th Cir. 2003), the District Court's duty is "to peer into the [clear sailing] provision and scrutinize closely the relationship between attorneys' fees and benefit to the class, being careful to avoid awarding "unreasonably high" fees simply because they are uncontested." Here, there are no such unreasonably high fees nor are the *Bluetooth* factors present to imply collusion. Those factors imply collusion: (1) "when counsel receive[s] a disproportionate distribution of the settlement; (2) when the parties negotiate a clear-sailing arrangement, under which the defendant agrees not to challenge a request for an agreed-upon attorney's fee; and (3) when the agreement contains a kicker or reverter clause that returns unawarded fees to the defendant, rather than the class." *Briseño v. Henderson*, 998 F.3d 1014, 1023 (9th Cir. 2021) (cleaned up).

In this case, and as further provided in the Motion for Attorneys' Fees, Costs and Class Representative Service Awards, the requested attorneys' fees are less than the 25% benchmark used in the Ninth Circuit. Moreover, the Settlement itself is non-reversionary, mitigating the concern that Defendant and Plaintiffs are colluding against the interests of the Class. While Defendant is not opposing the fee request, the amount requested is subject to the Court's review, through the lodestar cross check. Moreover, as noted by Counsel's declaration, the fee request was specifically reduced by counsel given the early resolution of the case, to be consistent with the lodestar amount, and to ensure a good result for the Class. (Kerestenzis Decl, ¶ 41; *see also* Declaration of Sarah S. Kanbar

14

in support of Motion for Attorney's Fees, ¶¶ 8-9.)  That is not collusion and this is not the type of settlement that the court in *Bluetooth* cautioned against.

        *4.  The Settlement provides adequate monetary and non-monetary relief.*

    In distributing the relief to the Class, the Settlement Agreement does so by using Work Months Worked, which is the only fair method, as each job classification or Class Member may have varying levels of cell phone use.  (Botonis Decl., ¶ 10; Meikle Decl., ¶ 9.)  In fact, Plaintiffs assert that the liability and the strength of each individual claim undoubtedly grows per month worked, both in terms of unreimbursed expenses and penalties.  Plaintiffs proffered this as the best basis for Settlement given Counsel's survey of several Class members and discussions with Plaintiffs, (Kerestenzis Decl., ¶ 32; *see also* Botonis Decl., ¶¶ 9-10; Meikle Decl., ¶¶ 8-9), and the fact that Work Months Worked has been approved as the fair way to distribute funds in other similar class action settlements.  *See Castro v. ABM Industries, Inc., et al.*, Case No. 4:17-cv-03026-YGR (N.D. Cal. Sept. 3, 2019) (granting final approval to settlement that would partially compensate employees with $10.00 each month an employee's phone number showed up in Defendant's phone records.) Further, the Court recognized the reasonableness of this method of distributing the Class funds in the Preliminary Approval Order.  (Dkt. 26, p. 21.)

    In addition, the Settlement also compensates employees with PAGA Penalties that are calculated by each work week during the PAGA Period (as Class members have weekly pay periods). The PAGA amount is consistent with PAGA awards approved in other cases, as courts routinely reduce PAGA penalties.  *See e.g., Reed v. Thousand Oaks Toyota*, No. 56-2012-00419282-CU-OE-VTA, 2013 WL 8118716 (Cal. Super. Ct. Apr. 8, 2013) (class action settlement approved for $108,624, with $1,500 allocated towards PAGA penalties); *Bolton v. U.S. Nursing Corp.*, No. 12-CV-4466-LB, 2013 WL 5700403 (N.D. Cal. Oct. 18, 2013) (approving class action settlement for $1,700,000, with $15,000 allocated towards PAGA).

    The Settlement also provides prospective relief to the Class, as Defendant has implemented a new expense reimbursement policy and provided communications-related upgrades to the company-issued devices provided to Class Members and Aggrieved Employees in connection with the Settlement.  (Dkt. 22-2, ¶ 52.)  Finally, based on the information known to Class counsel, the Class

Members unequivocally support the terms of the Settlement.  Notably, as provided in the Salinas Declaration, no member opted-out meaning that 100% of the Class has opted in and will be compensated.  (Salinas Decl., ¶¶ 8-11.)  *See In re Austrian & German Bank Holocaust Litigation*, 80 F. Supp. 2d 164, 175 (S.D.N.Y. 2000) ("If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement.").  Plaintiffs further represent that many of their colleagues, from their Depots and others, have expressed positive feedback about the terms of the Settlement after receiving the Class Notice.  (Botonis Decl., ¶ 11; Meikle Decl., ¶ 10.)  Similarly, counsel for Plaintiffs have received no objection from the local Unions representing the Class members and also talked to Class members who are supportive of the Settlement.  (Kerestenzis Decl., ¶ 45.)

In light of the overwhelmingly positive reaction to the Settlement and its overall terms, it is clear that the Settlement, which was the product of arm's-length negotiations, is fair, reasonable and adequate, and thus the parties therefore respectfully request that the Court grant final approval and enter the proposed judgment as requested.  *See Dunk v. Ford Motor Co.,* 48 Cal.App.4th 1794, 1800–1802 (1996) (class action settlements should be approved if they are fair and reasonable, and a low percentage of objectors and opt-outs is evidence of an agreement's fairness.)

## 5. *The attorneys' fees, costs, and service reward are reasonable*

The concurrently filed Motion for Attorneys' Fees, Costs and Class Representative Service Award and Declaration of Sarah S. Kanbar in support provides further detail on the appropriateness and reasonableness of the requested attorneys' fees of $130,000, costs of $10,000, and Class Representative Service Award of $5,000 to each Plaintiff.  In sum, in conducting a lodestar cross-check, reviewing the hours worked, and the reasonable rates charged for attorneys in both the Northern District, where Ms. Kanbar practices, and Eastern District, where the instant case is brought and where Mr. Kerestenzis practices, the requested fees are consistent and with the market rates.  Moreover, the costs are consistent with expenses that are incurred in the course of litigation.  Lastly, the requested Class Representative Service Award is consistent with similar awards in other class action settlements and fairly compensates both Plaintiffs for their efforts in bringing and settling this matter.

16

**D. The Class was Given Notice Consistent with the Court's Order and the Response was Favorable.**

As noted above, Notice was given to the entire Class of 1,728 members.  Accordingly, the Class' reaction in this case is both factually and legally relevant.  Indeed, California law makes clear that the percentage of objectors and opt-outs is an important factor in the Court's consideration of a proposed class action settlement.  *See Dunk*, *supra*, 48 Cal.App.4th at 1802.  The Ninth Circuit and other federal courts also recognize that in the final fairness analysis, the number or percentage of class members who object to the settlement is a significant factor.  *See Mandujano v. Basic Vegetable Prods., Inc*., (9th Cir. 1976) 541 F.2d 672, 677; *In re American Bank Note Holographics, Inc*. (SDNY 2001) 127 F.Supp.2d 418, 425 ("[i]t is well settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy.")

The Salinas Declaration outlines that the Notice went out to all Class Members, and for Class Notices that were retuned, the Settlement Administrator conducted a skip-trace and reissued the Notice to those members.  (Salinas Decl., ¶¶ 4-7.)  Of the 1,728 Class Members, only Martinez filed an objection and no Member opted out of the Settlement.  (Salinas Decl., ¶¶ 8-11.)  Martinez's sole objection represents only 0.05% of the Class and 99.95% of the Class support Settlement.

Moreover, on July 21, 2023, Plaintiffs' counsel further submitted the Settlement Agreement to the Labor Workforce Development Agency and informed the Agency of the Hearing on Preliminary Approval and counsel did not receive any response that the LWDA has an objection to this Settlement.  (Dkt. 25-1, ¶ 5; Kerestenzis Decl., 43.)

Thus, sufficient notice was sent to all affected parties and no person has elected to not participate in this settlement.  Therefore, the Settlement should be given final approval.

**E. The Objection from Martinez is Meritless.**

Objectors to a class action settlement bear the burden of proving any assertions they raise challenging the reasonableness of a class action settlement."  *In re Linkedin User Priv. Litig.*, 309 F.R.D. 573, 592 (N.D. Cal. 2015).  Here, Martinez, the sole objector, asserts two objections to the settlement: (1) that the settlement was the product of a flawed and collusive negotiating process (Dkt. 28, pp. 4-6); and (2) that the relief provided by the settlement is inadequate (*see Id*., pp. 6-10).  While many of Martinez's claims in the Objection have been briefly addressed above (the Plaintiff's

17

1    process was fair, including the effect of the clear sailing provision and utilizing Work Months

2    Worked to distribute Class funds), Plaintiffs will now address the Objection fully as well to make

3    clear that there is no basis to derail Settlement.  Martinez has not met his burden and the Court should

4    overrule Martinez's objections and grant Plaintiffs' motion for final approval.

> 1.  *Martinez's objection to the settlement's reasonableness must be rejected because the Class overwhelmingly supports it.*

6    In assessing Martinez's Objection, it is important to note that "the absence of a large number

7    of objections to a proposed class action settlement raises a strong presumption that the terms of a

8    proposed class settlement action are favorable to the class members."  *Nat'l Rural Telecomms. Coop.*

9    *v. DIRECTV, Inc*., 221 F.R.D. 523, 528–29 (C.D. Cal. 2004); *In re Linkedin User Privacy Litig*., 309

10   F.R.D. 573, 589 (N.D. Cal. 2015) ("A low number of opt-outs and objections in comparison to class

11   size is typically a factor that supports settlement approval.").  *In re Lyft Inc. Sec. Litig*., No. 19-CV-

12   02690-HSG, 2023 WL 5068504, at *9 (N.D. Cal. Aug. 7, 2023) (same); *In re Omnivision Techs.,*

13   *Inc*., 559 F.Supp.2d 1036, 1043 (N.D. Cal. 2008) (same).  "The small number of objections and class

14   members who opted out of the settlement, when compared to the large number of class members,

15   favors approval."  *Shames v. Hertz Corp*., No. 07-CV-2174-MMA WMC, 2012 WL 5392159, at *8

16   (S.D. Cal. Nov. 5, 2012).  Here, as noted above, there were no opt outs and only one objection, which

17   establishes the manifest fairness of the settlement.  The Class's overwhelming support of the

18   settlement is grounds for overruling Martinez's Objection.

> 2.  *Martinez's primary argument is the mistaken factual contention that the Class Release is too Broad.*

20   Martinez's primary argument in support of Objection, and the argument he uses to support

21   other arguments, is that the Settlement reached in this case "would all but eviscerate Martinez's

22   broader expense claims."  (Dkt. 28, p. 3.)  That is not true.  The Settlement in this case specifically

23   releases business expense claims related to the business use of personal cell phones and does not

24   implicate any other business expense claims.  This is noted in several areas including Plaintiff's MPA

25   (Dkt. 22, pp. 16, 30) the Settlement Agreement (Dkt. 22-2, ¶¶ 4, 23, 32, 53-54), the Class Notice

26   (Dkt. 22-2, pp. 44-45) and the Court's Preliminary Approval Order (Dkt. 26, pp. 4-5, 20-21, 26).

18

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION AND PAGA
SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
Case No. 2:22-cv-01453-DJC-DB

Citing inapposite case law addressing broad release language not present in the release here, Martinez objects that the settlement here "is not limited to cell phone expenses," claims that Plaintiffs "compromise[d] claims they never asserted," and allegedly contains a "broad release of claims" that bars Martinez's additional purported expense claims seeking reimbursement for "unreimbursed gasoline and unpaid time class members renewing their DOT commercial licenses and attending physical examinations." (*See* Dkt. 28, at 2, 6, and 8). These arguments, based on a misreading of the Settlement Agreement, fail.

First, the language of the settlement agreement is clear that the settlement does ***not*** encompass expense claims other than cell phone expenses, as the release language only mentions "claims that were pled or that could have been pled based on Defendant's alleged failure to reimburse…for the alleged use of their personal cell phones for work-related purposes," while noting the release "excludes all other claims..." (*See* Dkt. 22-2, p. 2.) It does not say that expense claims other than for cell phone reimbursement, such as those asserted by Martinez, are released. As Martinez himself notes on page 7 of his Objection, the release language in the settlement agreement ***twice*** specifically provides that the expense reimbursement claim released under the settlement is "specifically for the alleged use of their personal phones for work-related purposes." The release language also notes that it "***excludes*** all other claims and class claims outside of the Class Period and PAGA claims outside of the PAGA period." *See id.* (emphasis added). Given this language specifically stating what the release includes and excludes, Martinez's assertion that the release here bars additional expense claims (or other claims he fails to identify) lacks merit, because it reads into the Settlement Agreement an expansive release that is squarely contradicted by the express, limiting language of the release.

In support of his argument, Martinez on page 6 of his Objection cites two cases, *Gonzalez v. CoreCivic of Tennessee, LLC*, 2018 WL 4388425, at *12 (E.D. Cal. Sept. 13, 2018) and *Bond. v. Ferguson Enterprises, Inc.*, 2011 WL 284962, at *7 (E.D. Cal. Jan. 25, 2011), where courts found that the releases were overbroad because they did not track the allegations of the complaints.

19

However, those cases are inapposite,[5] as here the language of the release specifically tracks the allegations in Plaintiffs' complaint, and Martinez cannot show otherwise.  Martinez also cites *Rivera v. W. Express Inc.*, 2020 WL 5167715, at *8 (C.D. Cal. May 1, 2020), where a court rejected release language as overbroad because it purported to release all claims "related to" claims pled in the second amended complaint.  By contrast here, the release applicable to Aggrieved Employees and Settlement Class Members, set forth in paragraph 4, page 2 of the Settlement Agreement, contains no such "related to" or similar language.

Second, the Court certainly had no confusion about the scope of the claims being released here when it granted preliminary approval.  Its Preliminary Approval Order (Dkt. 26.) the Court noted in several places that the specific allegation at issue in *Botonis* is alleged cell phone reimbursement:

- "Plaintiffs' claims center on the failure to reimburse employees for required usage of personal cell phones for business purposes."

- "All members of the proposed class are eligible for reimbursement for use of personal cell phones."

- "Plaintiffs contend that commonality is satisfied as there are common legal and factual questions about Defendant's policies and procedures raised by Plaintiffs' cell phone reimbursement claim including whether Defendant required class members to use their personal cellular phones for work related purposes and whether Defendant failed to reimburse class members for this usage."

- "Here, Plaintiffs' claims are typical of the class as they are both employees of Defendant involved in distribution and transportation who were not properly compensated for the usage of personal cell phones."

- "In this action, common question of law and fact clearly predominate over questions affecting individual members as the class members were subject to the same policies and practices

---

[5] In *Gonzalez*, the release was found to be overbroad because, among other things, it purported to include bonus claims and expense reimbursement claims, but plaintiff asserted neither claim in the action.  *Gonzalez*, 2018 WL 4388425, at *11.  The release in *Bond* was similarly overbroad, as it purported to release claims completely unrelated to the claims alleged in the complaint.  *Bond*, 2011 WL 284962, at *7.

20

regarding the usage of personal cell phones for business purposes that gave rise to the claims in this action."

Thus, the Court's Preliminary Approval Order makes clear that there is no ambiguity that the substantive Labor Code claim that is released in the settlement is Plaintiffs' claim for cell phone expense reimbursement. Martinez fails to identify any other specific claims he believes are released under the plain language of the Settlement Agreement.

Third, as Martinez himself concedes, the relief provided for under the Settlement is limited to cell phone reimbursement, because that is the single substantive Labor Code claim asserted in this action that is being released under the agreement. (*See* Dkt. 28, p. 8.) The monetary and non-monetary relief obtained under the Settlement, e.g., device upgrades and a new cell phone expense reimbursement policy (which Martinez's Objection fails to mention), clearly relate only to cell phone expense reimbursement, and not to any other kind of expense reimbursement claim.

Simply, as noted above, Counsel for Plaintiffs did what they told Martinez's counsel they would do – limit the Class release to the reimbursement claim pled. What makes this argument by Martinez even more perplexing is that his counsel was made aware that a Settlement was reached in February 2023 and did not raise any issue or reach out regarding this alleged issue regarding the Settlement until a year later when he filed an objection. Given that counsel for Plaintiffs was communicating with counsel for Martinez, it is odd that he never reached out to counsel for Plaintiffs about his misunderstanding about the release. (Kerestenzis Decl. ¶¶46-49.)

For all of these reasons, there is no merit to Martinez's objection that the settlement includes an improperly broad release. The Court should overrule this Objection.

> **3.** *Martinez's argument that the Settlement is not adequate is meritless and ignores the significant monetary and non-monetary relief obtained in the Settlement.*

Martinez asserts in conclusory fashion that "the relief provided for unreimbursed cell phone expenses is also inadequate." (Dkt. 28, p. 8.) Citing *Shin v. Plantronics, Inc.*, 2019 WL 2515827, at *5 (N.D. Cal. June 17, 2019), Martinez argues that the settlement is inadequate because the gross settlement amount is less than 25% of the relief sought under Plaintiffs' 2802 claim. (Dkt. 28, p. 9.) However, *Shin* is clearly distinguishable because there, the court rejected the settlement for numerous

21

1    reasons, including what the court noted as a "striking" "discrepancy between the narrow relief offered

2    to the class and the broad release of all claims…."  No such discrepancy exists here, where (as

3    detailed above) the relief is directly tied to the nature of the claims alleged in the Complaint.

4            First, Martinez's complaint regarding the value of the settlement relative to the estimated

5    maximum value of the expense reimbursement claim is unavailing given the applicable standard of

6    review.  Under Rule 23(e)(C), the standard is whether the settlement is "adequate" in view of the

7    factors outlined in 23(e)(C)(i)-(iv).  Here, however, Martinez's Objection fails to offer any reasoned

8    explanation as to why the Settlement does not meet this standard in light of Defendant's defenses on

9    the merits and as to certification,[6] which are not mentioned in Martinez's Objection, not to mention

10   the long delay Class Members would experience in awaiting relief only after a full litigation through

11   trial and all appeals.  As this Court knows, courts often deny certification of cell phone expense

12   reimbursement claims, so there was a good likelihood that if this action did not settle, the Court

13   would not have certified a 2802 expense reimbursement class, and then there would have been **no**

14   **class-wide recovery**.  *See also In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, No. 16-MD-

15   02752-LHK, 2020 WL 4212811, at *14 (N.D. Cal. July 22, 2020), *aff'd*, No. 20-16633, 2022 WL

16   2304236 (9th Cir. June 27, 2022) ("[Objectors] ignore that the Settlement provides the class with

17   timely, certain, and meaningful recovery, while further litigation and any subsequent appeal are

18   uncertain, would entail significant additional costs, and in any event would substantially delay any

19   recovery achieved.").

20           Another basis for rejecting Martinez's Objection is the fact that numerous settlements have

21   been approved where only a fraction of the potential recovery was achieved in settlement.  That is of

22   course the entire point of a settlement.  "The fact that a proposed settlement may only amount to a

23   fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is

24   grossly inadequate and should be disapproved."  *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234,

25

26   _____

     [6] *See* Dkt. 22-1, ¶ 31, noting Defendant's defenses that it maintained an expense reimbursement policy, did not require

27   class members to use their personal phones for work-related reasons, did not prohibit expense reimbursement if
     requested, and that it would oppose certification citing numerous individualized inquiries into each class member's
     circumstances; Dkt. 26, p. 16-17 (crediting the parties' assessment of the strength of Plaintiffs' claims based on

28   Defendant's asserted defenses).

                                                                                                              22

1242 (9th Cir. 1998) (quoting City of Detroit v. Grinnell Corp., 495 F.2d 448, 455 & n. 2 (2nd

Cir.1974)); *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 628 (9th Cir.1982) ("It is well-

settled law that a cash settlement amounting to only a fraction of the potential recovery does not per

se render the settlement inadequate or unfair.").

      Here, the Settlement value is well in excess of a fraction of total potential recovery, and in any

event, a settlement for less than 25% of the estimated exposure on the 2802 claim is well within the

range of reasonable settlement values routinely approved by federal district courts. *See Bravo v. Gale*

*Triangle, Inc*., 2017 WL 708766, *10 (C.D. Cal. Feb.16, 2017) (approving a settlement where net

recovery to class members was approximately 7.5% of the projected maximum recovery amount);

*Bellinghausen v. Tractor Supply Co*., 306 F.R.D. 245, 256 (N.D. Cal 2015) (approving a settlement

where the gross recovery to the class was approximately 8.5% of the maximum recovery amount);

*Martinez v. Knight Transport, Inc.*, 2023 WL 2655541, at *10 (E.D. Cal. Mar. 27, 2023) (approving a

settlement for 18% of the total exposure on non-PAGA claims to be reasonable in light of the

Defendant's legal and factual defenses).

      Martinez never says what he thinks the Settlement value should have been for Plaintiffs'

Labor Code section 2802 claim, so his Objection could be rejected for that reason alone.  But even if

he had offered some speculation on that issue, it is black letter law that a "proposed settlement is not

to be judged against a hypothetical or speculative measure of what might have been achieved."

*Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998).  Martinez also does not offer

any credible argument as to why a higher cell phone expense settlement would be warranted or

explain what that higher recovery should be in order to be reasonable.  *Young v. LG Chem Ltd*., 783

F. App'x 727, 737 (9th Cir. 2019) (rejecting objections to settlement for similar reasons).

      Second, Martinez next complains that nothing was specifically allocated to Plaintiffs' section

203 and 226 claims.  (Dkt. 28, p. 9.)  However, Martinez cites no case law holding that unpaid

expense reimbursement claims under Labor Code section 2802 support derivative claims under

sections 203 and 226.  As the Court noted in its preliminary approval order, the most likely result

here on these claims was that they would be dismissed with prejudice, meaning there would be no

23

recovery on these claims.  (Dkt. 26, p. 17.)  Martinez offers no basis to reject capable Class Counsel's reasonable evaluation of the risk of loss on certain claims as part of their overall settlement valuation.

Third, Martinez's objection is noticeably silent on the adequacy of the PAGA recovery here. What he fails to acknowledge is that absent the Settlement Agreement, including a release of PAGA claims, the State of California would recover nothing.  *In re Lyft Inc. Sec. Litig.*, 2023 WL 5068504, at *7 (rejecting objections that settlement achieved insufficient recovery as purely speculative and ignoring the very real risks of no recovery absent settlement). Instead, thanks to the PAGA release, the State will recover $7,500, consistent with the State's interest in enforcement of the California Labor Code.

Fourth, Martinez quibbles with the settlement's allocation formula, claiming it fails to account for "varying amounts of work-related cell phone use among the different job positions encompassed by the Class…."  However, Martinez offers no explanation as to why the allocation in the Settlement is in any way inaccurate or unfair.  Although it's certainly possible that some Class Members may claim to have used their cell phones more than others, the nature of a settlement is a compromise that is fair and reasonable to the entire class.  Allocating settlement payments based on tenure or workweeks or pay periods worked is routinely approved by courts as a fair way of compensating Class members and that is common in cell phone claims as noted above.  (Kanbar Decl., ¶ 7; *see also* Meikle Decl., ¶ 9, Botonis Decl., ¶ 10.)  Here, the Parties agreed to work months, given the claim for cell phone reimbursement.  Martinez cites no law holding that this method of allocation is inappropriate and offers no workable alternative.  This Objection also fails.

Finally, Martinez's Objection ignores the meaningful non-monetary relief obtained through the Settlement, including the fact that Defendant revised its expense reimbursement policy and upgraded company issued devices, which will either obviate or limit the need for members to use personal devices for work-related purposes.  This relief, in conjunction with the monetary relief, provides meaningful recovery to the Class members on the specific cell phone expense claim alleged in the Complaint.

24

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
Case No. 2:22-cv-01453-DJC-DB

*4.   Martinez's other objections are also baseless.*

In addition to his primary argument that the Class Releases in this matter are overbroad and the Settlement amount is not adequate, Martinez's other Objections are also baseless as discussed above.

First, Mr. Martinez's contention that it was unfair or inappropriate for Plaintiffs to mediate without him fails as it was patently appropriate for Plaintiffs to mediate their single cell phone claim and not be bogged down by Martinez's other claims asserting other Labor Code violations in a putative class action that is broader in scope than this action.  Plaintiffs filed their action ahead of Martinez and had no reason to derail their efforts towards mediation of their claim.

Second, Martinez also raises issue with the clear sailing provision and argues that it is evidence of collusion.  This argument is also unpersuasive and disingenuous.  First, as noted above, in the Preliminary Approval Order this Court analyzed this provision and found that it was not evidence of collusion, but rather that the percentage requested must withstand the lodestar cross-check, which Plaintiffs have now done.  (Dkt. 26, pp. 14-15.)  Moreover, the Court particularly found that the low fee request in this matter (15%) is presumably reasonable, and thus the clear sailing provision, which is common in class action lawsuits, is not evidence of collusion.  Martinez neglects both of these facts in his Objection.  Importantly, as argued above, the reasons for concern with a clear sailing provision do not apply here as there is no reverter or high fees to support the notion of collusion.  Fees of 15% of the GSA with a satisfactory recovery to the Class is not evidence of collusion or the type of case *Bluetooth* warned against.

For all these reasons, Mr. Martinez's Objection should be rejected by the Court.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court enter the proposed Order granting final approval of the Settlement Agreement.

Dated: May 10, 2024

*/s/ Costa Kerestenzis*
Costa Kerestenzis,
Attorney for Plaintiffs

25