1
2
3
4
5
6
7

8                           UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   TIM BOTONIS and LIAM PATRICK          No.  2:22-cv-01453-DJC-SCR
     MEIKLE, on behalf of themselves and
12   all others similarly situated,

13                   Plaintiffs,           FINAL APPROVAL OF CLASS ACTION
                                           AND PAGA SETTLEMENT
14        v.

15   BIMBO BAKERIES USA, Inc.,

16                   Defendant.

17

18        On January 9, 2024, the Court granted preliminary approval of the proposed

19   class settlement.  Plaintiffs are now seeking final approval of the class action and

20   PAGA settlement.  Plaintiffs have also filed a motion requesting attorney's fees, costs,

21   and class representative awards.  Defendant does not oppose either request.  The

22   Court has received one objection to final approval from Crisanto Martinez.

23        For the reasons stated below, the Court will approve the settlement, award

24   $130,000.00 of the settlement fund in attorney's fees, permit $8,310.64 in litigation

25   costs, and grant service awards of $5,000.00 to each of the named Plaintiffs.

26                                  **BACKGROUND**

27        The Court previously discussed the factual background of this action in its

28   preliminary approval order.  (*See* Preliminary Approval Ord. (ECF No. 26 at 2).)  In

                                         1

short, Plaintiffs Tom Botonis and Liam Patrick Meikle filed suit against Defendant Bimbo Bakeries USA, Inc. based on allegations that Defendant required Plaintiffs and Class Members to utilize personal cell phones for business purposes without reimbursement for such usage. (*See id.*)

After participating in mediation, the parties reached a settlement agreement that would provide a non-reversionary settlement of with a Gross Settlement Amount ("GSA") of $875,000.00. (Final Approval Mot. (ECF No. 11) at 1.) After payment of attorney's fees, litigation costs, class representative awards, the settlement administrator's costs, and the PAGA Payment, the parties originally estimated a Net Settlement Amount ("NSA") of $703,235.00, though this amount is now expected to increase slightly due to a reduction in the anticipated litigation fees and expenses to $8,310.64.[1] (*Id.* at 5.) The purported class now consists of 1,728 Class Members, "with an average gross settlement award of $406.96 per Class Member with the highest individual share being $650.54 and the lowest individual share being $10.16." (*Id.* at 6.) The PAGA Payment accounts for $10,000.00, 75% of which will be sent to the Labor and Workforce Development Agency ("LWDA") as required by law. (*Id.*) The remainder of the PAGA Payment will be distributed to Aggrieved Employees (the sub-Class of Class Members who are entitled to a portion of the PAGA penalty) as provided in the Settlement Agreement. (*Id.*)

In granting preliminary approval of the settlement, the Court approved of the Notice proposed by the parties, and, for purposes of settlement, appointed Phoenix Class Action Administration Solutions ("Phoenix") as Class Administrator, Plaintiffs Tim Botonis and Liam Patrick Meikle as Class Representatives, and Beeson, Tayer & Bodine, APC as Class Counsel. Phoenix Case Manager Jarrod Salinas represents that

---

[1] When the Court gave preliminary approval of the settlement in this matter, the Court and parties had calculated the NSA to include the portion of the PAGA Payment owed to the purported class members, removing the 75% of the PAGA penalty that was owed to the California Labor and Workforce Development Agency from the NSA. The parties now refer to the "PAGA Payment" separately, removing the full $10,000.00 in PAGA penalties from the NSA entirely. The Court will adopt this construction for purposes of consistency between this order and the briefing.

1   the Notice was sent each of the Class Members via first class mail.  (Salinas Decl. (ECF

2   No. 35-5) ¶¶ 1, 5.)  The mailing list for class members was provided by Defendant's

3   counsel and a Phoenix conducted a National Change of Address ("NCOA") search to

4   ascertain if any class member addresses had changed.  (*Id.* ¶¶ 3, 4.)  Salinas states that

5   of the 1,728 Notices sent, 33 were originally returned undelivered but after

6   conducting a skip trace, new addresses were identified, and notices were successfully

7   re-mailed to the updated addresses.  (*Id.* ¶ 6.)  Salinas represents that Phoenix has

8   "received zero Requests for Exclusion from Class Members" and "zero Workweek

9   disputes from Class Members."  (*Id.* ¶¶ 8, 10.)  Salinas notes that there is a single

10  objection from Crisanto Martinez which has also been filed with the Court. (*Id.* ¶ 9; *see*

11  Martinez Objection (ECF No. 28).)

12        Plaintiff has moved for final approval of the proposed settlement (Final

13  Approval Mot.) and for the Court to approve the requested attorney's fees, costs and

14  class representative service awards (Mot. for Fees, Costs, and Awards (ECF No. 31)).

15  On June 6, 2024, the Court held the fairness hearing for these motions.  (ECF No. 34.)

16  Plaintiffs also filed supplemental evidence based on questions raised at that hearing.

17  (ECF No. 35.)

18                    **MOTION FOR FINAL APPROVAL**

19  **I.      Final Class Certification is Appropriate**

20        In granting preliminary approval of the proposed settlement, the Court

21  provisionally certified the class for purposes of settlement, finding that the

22  requirements of Federal Rule of Civil Procedure 23(a) and 23(b)(3) had been met.

23  (Preliminary Approval Ord. at 12.)  The Court's present findings on the adequacy of

24  the class remain the same as there has been no change in the facts underlying the

25  Court's determination and there have been no objections to the certification of the

26  class.[2]  *See Carlin v. DairyAmerica, Inc.*, 380 F. Supp. 3d 998, 1008 (E.D. Cal. 2019)

27

28  [2] The sole objections to final certification are those filed by Class Member Martinez.  Those objections
    do not contain any objection to the preliminary or final certification of the proposed class.  (*See*

                                        3

1   (collecting cases for the proposition that a court need not repeat its class certification

2   analysis for final approval if the facts have not changed and no objections were

3   raised).  Accordingly, the Court adopts its prior finding that the proposed class

4   satisfies the numerosity, commonality, typicality, and adequacy of representation

5   requirements of Rule 23(a) as well as the Rule 23(b)(3) predomination requirement.

6   The class is certified for purposes of this settlement.  For the reasons stated in the

7   prior order, the Court reaffirms the appointment of Plaintiffs Tim Botonis and Liam

8   Patrick Meikle as Class Representatives and Beeson, Tayer & Bodine, APC as Class

9   Counsel, for purposes of settlement.

10   **II.     Adequacy of Notice**

11        The Court also previously approved both the content of the Notice of

12   Settlement and the means of distributing the Notice.  (Preliminary Approval Ord. at

13   25–26.)  Most of the content and means of distribution remain unobjected to and their

14   adequacy as stated in the Court's preliminary approval remain clear.  Per Salinas, on

15   behalf of Phoenix, based on the procedure for distributing the Notice that was

16   approved by the Court, the Notice was successfully delivered to all 1,728 Class

17   Members.  (Salinas Decl. ¶ 7.)  The Notice describe the terms of the Settlement

18   Agreement in sufficient detail including:

19
20
21
22
23
24
25
26
27
> describing the nature of the lawsuit and claims at issue,
> defines the class, explains the amount of the settlement
> and how individual class member settlement payments will
> be calculated, discloses all deductions that will be
> requested from the settlement for fees, costs, service
> awards, and settlement administration expenses, details
> the claims that are being released, explains how an
> individual can request exclusion from the class, explains
> how a class member can object to the settlement, provides
> a procedure for challenging the calculation of months
> worked, discloses the time and place of the final approval
> hearing, displays the contact information for Class Counsel
> and the Class Administrator, and advises that the

28   Martinez Objection.)

1
2
> Settlement Administrator or Class Counsel may be
> contacted to answer questions about the settlement.

3  (Preliminary Approval Ord. at 26 (citations omitted).)  As such, the Notice is adequate

4  given "it generally describes the terms of the settlement in sufficient detail to alert

5  those with adverse viewpoints to investigate and to come forward and be heard" and

6  notifies members of the tentative class of "the opportunity to opt-out and individually

7  pursue any state law remedies that might provide a better opportunity for recovery."

8  *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (internal

9  quotations and citations omitted); *see Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1025

10  (9th Cir. 1998), *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S.

11  338, 338 (2011); *see also* Fed. R. Civ. P. 23(c)(2)(B).  The Court continues to be

12  satisfied with the procedure used to locate Class Members, provide Notices, and

13  rectify Notices that are returned undeliverable. *See* Fed. R. Civ. P. 23(c)(2)(B) & (e)(1).

14  Per the declaration of Phoenix employee Salinas, this procedure resulted in delivery of

15  all 1,728 Notices.  (Salinas Decl. ¶ 7.)

16      The initial objection filed by Class Member Martinez does not contain any

17  objection to the adequacy of the Notice.  (*See* Martinez Objection.)  However, in the

18  Reply in support of the Objection, Martinez does briefly argue that the Notice was

19  insufficient as it "provides that any objection or request for exclusion must be mailed

20  to the Settlement Administrator . . . [but] fails to provide a mailing address for the

21  Settlement Administrator . . . [or] the name of the Settlement Administrator" (Martinez

22  Reply (ECF No. 32) at 2.)[3]  Martinez also indicates that Martinez's attorney was unable

23  to reach Phoenix via the phone number provided, though Martinez also admits that

24  the attorney only waited on hold for five minutes before ending the phone call.  (*Id.* at

25  2 n.1.)

26  _____

[3] As mentioned, this was not raised in Martinez's original objections and is thus more properly

27  considered a new objection made after the deadline for such objections to be filed.  The Court is
generally not required to consider late objections, *see Carlin*, 380 F. Supp. 3d at 1013 n.4, but in the

28  interest of fully considering all objections to the settlement, the Court will consider concerns raised in
the Reply.

In the supplement filed after the fairness hearing, Plaintiffs confirmed that while the address for the Settlement Administrator was not included within the Notice itself, The Settlement Administrator's name and address was included with the Notice sent to Class Members via a "banner page". (*See* ECF No. 35.) The address on the banner page is the address to which Class Members could submit objections or requests to opt-out. (*Id.*)

The objection raised by Martinez does not undercut the adequacy of the Notice. While the Notice does direct that objections and requests for exclusions be mailed to the administrator, the Notice also provides contact information for the Settlement Administrator, Class Counsel, and Defense Counsel. None of these parties received any indication that there were outstanding objectors or parties seeking to opt-out. Martinez's claim that the phone number provided by Phoenix was insufficient as it is based only on counsel waiting a mere five minutes on hold before hanging up the phone. Moreover, as discussed above, the name and address of the Settlement Administrator *was* included with the Notice, even if it was not within the text of the Notice itself. Thus, this information was readily available and prominently presented to Class Members.

For these reasons, Martinez's objection is overruled on this point. The mailing and publication of the Notice satisfies the Notice Requirements under Rule 23(c)(2)(B). Class Counsel also represent they provided the proposed settlement to the appropriate federal and state officials, as is required by the Class Action Fairness Act ("CAFA") pursuant to 28 U.S.C. § 1715(b). (Final Approval Mot. at 10.)

### III.    Sufficiency of the Settlement

At final approval, the Court must determine if the settlement is, as a whole, "fair, adequate, and free from collusion." *Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012). This requires the Court to consider the *Hanlon* factors which are:

> [1.] the strength of the plaintiffs' case; [2.] the risk, expense,
> complexity, and likely duration of further litigation; [3.] the

> risk of maintaining class action status throughout the trial;
> [4.] the amount offered in settlement; [5.] the extent of
> discovery completed and the stage of the proceedings; [6.]
> the experience and views of counsel; [7.] the presence of a
> governmental participant; [and 8.] and the reaction of the
> class members to the proposed settlement.

*Lane*, 696 F.3d at 819.  Given that this settlement was reached before class certification was formally granted, "settlement approval requires a higher standard of fairness" in order to ensure that "ensure that class representatives and their counsel do not secure a disproportionate benefit at the expense of the unnamed plaintiffs who class counsel had a duty to represent." *Id.* (internal quotations removed).  The Court is also obligated to consider the factors described in *Bluetooth* to investigate "more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *In re Bluetooth Headset Products Liability Litigation*, 654 F.3d 935, 946–47 (9th Cir. 2011).

In making its preliminary determination, the Court reviewed these factors (*see* Preliminary Approval Ord. at 23–24), but the Court now reconsiders these factors in full to ensure that the proposed settlement is fair, adequate, and free from collusion. In doing so, the Court is "mindful that the law favors the compromise and settlement of class action suits." *Carlin*, 380 F. Supp. 3d at 1009.

### A.  The Strength of the Plaintiffs' Case

In evaluating the strength of a case, the goal of the Court is to "evaluate objectively the strengths and weaknesses inherent in the litigation and the impact of those considerations on the parties' decisions to reach these agreements." *In re Wash. Pub. Power Supply Sys. Secs. Litig.*, 720 F. Supp. 1379, 1388 (D. Ariz. 1989). However, the Court need not "reach any ultimate conclusions concerning the contested issues of fact and law" regarding the underlying dispute. *Id.* at 1415.

Here, there appears to be support for Plaintiff's main claim under California Labor Code Labor Code Section 2802 based on the failure to properly reimburse

class members for business usage of their personal cell phones.  However, the Court agrees with the parties' assessment that there still exist weaknesses in Plaintiffs case as a whole.

As noted by Plaintiffs in their motion, absent settlement, Plaintiffs would face "a protracted litigation course, including but not limited to a contested motion for class certification, motion(s) for summary judgment, and trial and appellate proceedings that would consume time and resources and present each of them with ongoing litigation risks and uncertainties." (Final Approval Mot. at 11–12.)  Plaintiffs specifically note challenges in pursuing claims under Labor Code Sections 203 and 226 that the Court had mentioned in its preliminary approval order. (*Id.* at 12.)  Plaintiffs also reference the frequency of actual cell phone usage compared to the broad scope covered by the theoretical maximum recovery. (*Id.*)  Plaintiffs state that they "conducted research on the average monthly cost for maintaining a cell phone, interviewed putative Class Members about how frequently they used their personal cell phone for work to determine a reasonable percentage, and researched similar settlements in other wage and hour actions involving the reimbursement of personal cell phone use under Labor Code section 2802" in order to find a settlement amount that was reasonable. (*Id.*)  They have also provided citation to at least one similar case from the Northern District that reached a settlement of a comparable amount. (*Id.* at 13 (citing *Castro v. ABM Indus., Inc., et al.*, No. 4:17-cv-03026-YGR (N.D. Cal. Sept. 3, 2019) (ECF No. 122)).)

Plaintiffs' assessment of the strengths and weaknesses of their case is reasonable.  Plaintiffs have identified that some of their claims are likely meritless and unlikely to survive a motion to dismiss and instead elected to focus on the remaining claims.  The settlement does represent a discount on the possible maximum recovery for their potentially meritorious claims but only based on Plaintiffs' belief that they do not have a factual basis to obtain a higher level of recovery.  Further litigation of this case is unlikely to change this result and Plaintiffs obtain what they might expect to

1    recover now without the need for further costly and risky litigation.  Plaintiffs also avoid

2    the difficulties of a contested class certification while obtaining meaningful non-

3    monetary relief that will protect class members in the future.  From the Defendant's

4    perspective, Plaintiffs appear to have a strong case that Class Members were not

5    properly reimbursed for the usage of their personal cell phones.  By settling at this

6    stage, Defendant avoids lengthy litigation that might very well reach the same result.

7          Accordingly, this factor weighs in favor of approving the Settlement

8    Agreement.

9          **B.  The Risk, Expense, Complexity, and Likely Duration of Further**

10              **Litigation and Risk of Maintaining Class Action Status Through Trial**

11          In general, lengthy litigation can be costly and time consuming for all parties

12    and presents numerous risks to the parties.  Because of this, courts recognize that

13    "approval of settlement is preferable to lengthy and expensive litigation with uncertain

14    results."  *Carlin*, 380 F. Supp. 3d at 1010 (internal citations and quotations removed).

15          The proposed settlement guarantees monetary recovery by all class members,

16    including for those without the means to secure legal representation and those for

17    whom pursuing and obtaining relief these claims would otherwise not be cost

18    effective.  As previously mentioned, the settlement also provides for non-monetary

19    relief that will provide protection for Class Members as well as future employees of

20    Defendant.  Extended litigation, on the other hand, presents numerous risks including

21    expensive and length legal battles between the parties over motions to dismiss, class

22    certification, discovery, motions for summary judgment, trial, and more.  The

23    substantial reduction in attorney's fees and costs alone is a major boon to all parties.

24    Moreover, it is well recognized that judicial policy favors settlement in class action

25    litigation due to the lengthy and expensive nature of such litigation despite its

26    inherent risks.  *See In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008); *Nat'l*

27    *Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004).

28          As such, this factor weighs clearly in favor of granting final approval.

**C.  The Amount Offered in Settlement**

In considering whether to approve a settlement, "[t]he proposed settlement is not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators." *Officers for Justice v. Civil Serv. Comm'n of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982).  "The absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class action settlement are favorable to the class members." *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 525.

Here, the Class consists of 1,728 employees of Defendant.  Each Class Member will receive payment from an NSA of approximately $703,235.00, based on their individual "Workweeks Worked" relative to the total Workweeks Worked of the entire Class.  Notably, despite all Notices being considered deliverable, no Class Member has opted out of the settlement.  Additionally, only one objection has been filed: the objection from Crisanto Martinez.  As such, given the lack of opt-outs and the presence of only a singular objection, there is a strong presumption that the terms of the proposed class are favorable to the class members.  *See Nat'l Rural Telecomms. Coop.* 221 F.R.D. at 525.  The proposed settlement is comparable to other settlements reached in similar cases.  *See e.g.*, *Moreno v. Beacon Roofing Supply, Inc.*, No. 19-cv-00185-GPC-LL, 2020 WL 3960481 (S.D. Cal. July 13, 2020) (approving a settlement for similar cell phone usage claims with an average payment of $291.67 to class members).

Class Member Martinez objects to the present settlement in part because the settlement proposes a settlement amount that "provides $0 recovery for the Labor Code § 226 claim and $0 for penalties under Labor Code § 203." (Martinez Objection at 8.)  As noted by the Court in its preliminary approval of this settlement, the case law on Section 203 appears to clearly bar Plaintiffs' claims on these grounds and also appears to strongly suggest that the Section 226 claims are not viable.  (Preliminary Approval Ord. at 17.)  Though Martinez objects that "0% relief is inadequate,

especially where the Section 226 claims have not been tested[,]" Martinez presents no authority for the proposition that Plaintiffs must seek relief for a claim that other courts have expressly rejected or a claim that appears clearly non-viable based on case law. Such a rule could effectively bar settlements where a clearly meritless claim was included in the original complaint, as defendants are unlikely to agree to pay some portion of a settlement to resolve meritless claims. This is also inconsistent with other courts that have permitted dismissal of entire claims at settlement where the plaintiff had a limited likelihood of success. *See e.g., Loreto v. Gen. Dynamics Info. Tech., Inc.*, No. 3:19-cv-01366-GPC-MSB, 2021 WL 1839989, at *15–16 (S.D. Cal. May 7, 2021). Plaintiffs have made a reasonable, legally supported assessment about the strength and viability of their claims and elected to pursue recovery for those claims that are legally and factually viable. Thus, Martinez's objections on these grounds are overruled.

Martinez also objects based on the value of the settlement related to the Section 2802 claim, on the basis that the usage rates assessed by Plaintiffs were insufficient.[4] Martinez contends that relief that "provides for less than 25% relief of the Section [2802] claim" is insufficient. However, it appears that Plaintiffs agreed to this settlement based on a reasonable calculation of the strengths and merits of their case. As discussed above, Plaintiffs noted that full recovery for these claims would be limited by the actual cell phone usage rate of employees. Plaintiffs' counsel notes that Plaintiffs face a particular challenge in this regard as Defendant's apparently have policies which "limit the putative Class Members' use of their personal cell phones in the course of their duties" including limiting the use of personal cell phones while operating a vehicle, installing communications devices in some vehicles, and maintaining an expense reimbursement policy. (Kerestenzis Decl. (ECF No. 30-1) ¶ 19.) Thus, not only is recovery restricted by the rate for usage of cell phones for

---

[4] In connection with this objection Martinez also notes the lack of formal discovery but this is better considered related to the Fifth *Hanlon* factor. *See infra* Motion for Final Approval III.D.

1   business purposes, but the existence of a clear policy that prevented Class Members

2   from using cell phones for any purpose, business or otherwise, during the bulk of their

3   job duties- provides even more concrete reason for Plaintiffs to negotiate for recovery

4   based on their assessment the usage rate of an average class member.  Accordingly,

5   Martinez's objection on this ground is also overruled.

6        Overall, given there is only a singular objection to the proposed settlement and

7   no opt outs, the Court strongly presumes that the terms of the settlement are

8   favorable to the class members.  This is further reinforced by the comparable nature of

9   the terms of the Agreement to other cases.  The objections raised by Martinez are

10   insufficient to overcome the presumption.  Accordingly, this factor weighs in favor of

11   approval.

12        **D. The Extent of Discovery Completed and the Stage of the Proceedings**

13        While discovery can be beneficial in obtaining a fair settlement, "[i]n the context

14   of class action settlements, formal discovery is not a necessary ticket to the bargaining

15   table where the parties have sufficient information to make an informed decision

16   about settlement." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir.

17   1998) (internal citations and quotations removed).  To that end, a court may approve a

18   proposed class settlement where the provided sufficient discovery "[to] allow[] the

19   parties to form a clear view of the strength and weaknesses of their case[,]"

20   *Monterrubio v. Best Buy Stores, L.P.*, 291 F.R.D. 443, 454 (E.D. Cal. 2013), and is the

21   result of genuine arms-length negotiation.  *Nat'l Rural Telecomms. Coop.*, 221 F.R.D.

22   at 528.

23        Here, while the parties did not engage in formal discovery, Plaintiffs represent

24   that they did engage in "extensive informal discovery" prior to reaching the

25   settlement.  (Final Approval Mot. at 5.)  This included Class Counsel obtaining

26   "Defendant's employment policies and procedures relating to personal cell phone use

27   and expense reimbursements; Plaintiffs' pay records; Plaintiffs' applicable collective

28   bargaining agreement and personnel files; and data regarding Class Members'

1   Months Worked to assess potential unpaid expense reimbursement damages and

2   statutory and PAGA penalties." (*Id.* at 11.)  Plaintiffs also represent that the settlement

3   was reached after arms-length negotiation.  This is supported by the involvement of a

4   third-party neutral for purposes of mediation.  *See Adoma v. Univ. of Phx., Inc.*, 913 F.

5   Supp. 2d 964, 977 (E.D. Cal. 2012) (find a settlement was the result of arms-length

6   negotiation where conducted by an experienced mediator).  Further, even after the

7   mediation, the parties apparently continued to negotiate for several months in order

8   to reach "the best agreement possible for the Class" and that even after material terms

9   had been settled, Class Counsel continued to negotiation specific terms to "ensure . . .

10  that the Settlement was fair, adequate and reasonable for all Class members."

11  (Kerestenzis Decl. ¶ 17.)

12         Class Member Martinez objects, arguing the Plaintiffs' assessment is inadequate

13  as "the lack of formal discovery prevented Plaintiffs from receiving sworn answers from

14  Defendants on key issues, such as job duties and the amount of time each job requires

15  Class members to be on the phone, as well as how policies were implemented."

16  (Martinez Objection at 9.)  Martinez cites *Shin v. Plantronics, Inc.*, No. 18-cv-05626-NC,

17  2019 WL 2515827 (N.D. Cal. June 17, 2019), as an example of a court denying a

18  settlement where there was a lack of formal discovery.  However, *Shin* is

19  distinguishable as there the court had existing concerns that were only amplified by

20  the lack of formal discovery and had particular concerns about the need to rely heavily

21  on the defendant's "own representations regarding many critical facts".  *Id.* at *5.  The

22  *Shin* court also expressly noted that the lack of discovery alone does not doom a

23  settlement.  *Id.*

24         Here, there is no indication that formal discovery was necessary to obtain a fair,

25  adequate, and reasonable settlement, especially in light of the informal discovery

26  conducted by the parties.  Martinez suggests discovery was necessary "on key issues,

27  such as job duties" but there is no indication that Plaintiffs were not aware of the job

28  duties of Class Members.  In fact, in seeking final approval, Plaintiffs' counsel expressly

notes differences in the job duties of "Transport Associates" and "Route Sales Professional". (*See* Kerestenzis Decl. ¶ 19.)  Martinez also suggests that formal discovery would have permitted Plaintiffs to get data on "the amount of time each job requires Class members to be on the phone" (Martinez Objections at 9), but there is no indication that such information could even be obtained via discovery, whether formal or informal.

Given the apparent sufficiency of the discovery obtained and the clear arms-length negotiations, this factor weighs in favor of approval.

**E.  The Experience and Views of Counsel**

As noted by the Court in its preliminary approval order, Class Counsel are experienced in litigating employee class action suits across California.  "Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995).  Thus, given Class Counsel's apparent experience and view that this settlement is "a fair and appropriate settlement" of this action (Kerestenzis Decl. ¶ 22), the Court finds that this factor weighs in favor of approval.

**F.  The Reaction of the Class Members to the Proposed Settlement**

As has been discussed above, there is a strong presumption of favorableness in the absence of a large number of objections. *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 525.  Here, there is only a singular objection to the settlement and no opt-outs.  Class Counsel also notes that as representatives for the union for Class Members, Teamsters Local 150, Class Counsel "spoke with putative Class members . . . who were satisfied with the Settlement received and raised no objection." (Kerestenzis Decl. ¶ 45.)  While Martinez suggests that Class Members were unable to file their objections, it appears the necessary information for Class Members to do so was provided with the Notice.  Moreover, there is no indication other Class Members were inclined to object or that Class Members attempted to file

14

1   objections but were unable to.  Class Counsel also previously notified the LWDA of

2   the settlement on July 21, 2023, and they have not provided any objection to the

3   settlement.  (Final Approval Mot. at 11.)

### 1.  Martinez Objection

5       The objection from Class Member Martinez raises a handful of concerns which

6   Martinez organizes under two broad headings: "the settlement is the product of a

7   flawed and collusive negotiation process" and "the relief provided by the settlement is

8   inadequate".  (Martinez Objection at 4, 6.)  Looking more closely at the Objection

9   reveals Martinez's concrete objections to the proposed settlement are the following:

10  (1) The presence of the clear sailing provision and the Plaintiffs decision to engage in

11  mediation without Martinez is "suggestive of collusion"; (2) The release contained in

12  the settlement agreement is overbroad and release claims beyond those in the instant

13  action; (3) The relief provided by the settlement agreement is inadequate; and (4) The

14  distribution of class settlement funds to class members is improper as it does not

15  differentiate between the amount of work-related cell phone use conducted by

16  different job positions.

17      The first of these is addressed in more detail below, *see infra* Motion for Final

18  Approval III.g, and the third is has been discussed above, *see supra* Motion for Final

19  Approval III.c.  For the reasons addressed in those sections, these objections are

20  overruled.

21      Regarding Martinez's objections concerning the release within the Settlement

22  Agreement, Martinez argues that, as formulated, the release "is not limited to cell

23  phone expenses" but is instead a broad release which can be used to bar "claims for

24  reimbursement of other business expenses that were not claimed in the instant case".

25  (Martinez Objection at 6.)  However, the language of the releases is express in limiting

26  these claims to those concerning the use of personal cell phones for work-related

27  purposes.

28      The two releases contained in the proposed Settlement Agreement are a

1    release of "Statutory Claims" that states:

2           [A]ny and all claims that were pled or that could have been
3           pled based on Defendant's alleged failure to reimburse
        Aggrieved Employees and Class members for business
4           expenses, **specifically for the alleged use of their
        personal cell phones for work-related purposes** arising
5           under the Cal. Labor Code, including, §§ 201-204, 226,
        226.2, 1174, 1174.5, 1194, 1194.2, 1194.3, 1197, 1197.1,
6           1198, 1199, 2802, 2698- 2699.5, Cal. Business &
        Professions Code §§ 17200, et seq., Cal. Civil Code §§
7           3287-3288, and Cal. Code of Civil Procedure §1021.5.

8
9    (Proposed Settlement Agreement (ECF No. 22-2) at 2) and a release of "Common Law

10   and/or Equitable Claims" that states:

11          Any and all common law or equitable claims, under any
12          theory whatsoever, to the extent that such claims arise out
        of Defendant's alleged failure to reimburse Aggrieved
13          Employees and Class members for business expenses,
        **specifically for the alleged use of their personal cell
14          phones for work-related purposes**, as described in
        Plaintiffs' PAGA letter and the operative complaint (class
15          action and PAGA action). The release excludes all other
        claims and class claims outside of the Class Period and
16          PAGA claims outside of the PAGA Period.

17
18   (*Id.* (emphasis added)).  Both releases are explicit in limiting the claims released to

19   those specifically at issue in this case and even ensures that claims that occurred

20   outside of the periods of time relevant to the present action are not released.

21   Martinez notes that the definition of "Class Claims" does not provide a limitation to

22   claims specific to the usage of personal cell phones for work purposes.  (Martinez

23   Objection at 7.)  Martinez is correct that the definition of "Class Claim" included in the

24   Settlement Agreement does not provide any such limitation, but this definition is not

25   directly utilized in either release, and the release itself is express in limiting the scope

26   of the claims released.  At the Fairness Hearing, all parties affirmed that it was their

27   understanding and intent that the release only covered the personal cell phone usage

28   claims at issue in this case during the Class Period.  Accordingly, this objection is

1    overruled.

2    Finally, Martinez objects that the distribution of the settlement funds does not

3    take into account the differences in personal cell phone usage based on different job

4    positions within the class. (Martinez Objection at 9–10.) Though Martinez suggests

5    that certain positions might tend to have a higher rate of personal cell phone usage,

6    no support is provided for that contention besides Martinez's own representation that

7    "as a Relief Route Sales Representative, Martinez was on the phone significantly more

8    than a regular Route Sales Representative, as his routes would vary day to day, and he

9    often used his cell phone for work-related purposes more than one hour a day." (*Id.* at

10    10.)

11    As noted by Plaintiff, distribution based on the time worked in a given period

12    (e.g. "Work Weeks", "Work Months", etc.) are a common and accepted way to allocate

13    payment in class actions despite differing job titles. *See e.g. Razo v. AT&T Mobility*

14    *Servs., LLC.*, No. 1:20-cv-0172-JLT-HBK, 2023 WL 3093845 (E.D. Cal. Apr. 26, 2023).

15    In his reply, Martinez cites *Grady v. RCM Techs., Inc.*, 671 F. Supp. 3d 1065, 1082 (C.D.

16    Cal. 2023), where the court rejected a settlement using a "Work Weeks" measure for

17    distribution. (*See Martinez Reply* at 5.) The claims in *Grady* were based on alleged the

18    meal and rest break periods violations. Because meal and rest breaks are dependent

19    on the length of individual shifts worked by an employee as opposed to the total

20    hours worked, *Grady* class members could be disproportionately affected by the meal

21    and rest break violations. Thus, the *Grady* court determined that the usage of Work

22    Weeks measure was inappropriate as it did not account the length or frequency of the

23    shifts worked. *Id.* at 1083. It was also concerned that the settlement agreement

24    provided for equal distribution to the entire class despite the fact that some of the

25    class members were ineligible to bring claims based on "[the defendant's] failure to

26    pay certain class members all wages owed upon separation . . . ." *Id.*

27    The underlying facts and claims in *Grady* present a vastly different situation than

28    the present case. There is no indication that the Agreement would provide

17

1   distribution to Class Members who were ineligible to bring certain claims.  In fact, the

2   Parties have been careful to ensure this is not the case for by enacting a system where

3   the PAGA penalties are only distributed to the sub-Class of individuals who worked

4   during the PAGA period.  Moreover, unlike meal and rest break claims, there is no

5   indication that employees who are required to use their personal cellphones for work

6   purposes disproportionately endure harm and statutory violations if they worked long,

7   densely packed shifts.  Martinez claims that he, as a *Relief* Route Sales

8   Representatives, used his phone more than *regular* Route Sales Representatives, but

9   this appears solely based on Martinez's beliefs from own experiences as a relief driver.

10          At best, Martinez's argument is that Relief Route Sales Representatives should

11   receive a higher rate per Work Month Worked which is a far cry from the situation in

12   *Grady* where the Work Week measure was fundamentally flawed to settle the claims

13   brought.  Further, as noted, Martinez's objection on this ground appears to be entirely

14   based on his personal experiences.  There are no apparent objective means that

15   could be used to measure and confirm these alleged differences between the job

16   positions and Martinez does not suggest one.  Granting the Relief Route Sales

17   Representatives a greater portion of the settlement based on anecdotal claims of cell

18   phone usage despite the apparent similarity in job roles across the Class would be

19   unfair to other Class Members.  Notably, no other Class Member has objected to the

20   equitable division of the NSA regardless of job title.  Accordingly, this objection is also

21   overruled.

22          The Court thus overrules each of Martinez's objections.  In the absence of

23   further objections and a complete lack of opt-outs, the Court finds that the reaction of

24   Class Members to the proposed settlement weighs in favor of approval.

25          **G.  Absence of Collusion**

26          In addition to the *Hanlon* factors, the Court must also consider whether the

27   Settlement Agreement is the product of collusion.  *See In re Bluetooth*, 654 F.3d at

28   946–47.  The three signs of collusion identified by the Ninth Circuit are "(1) when

counsel receive a disproportionate distribution of the settlement; (2) when the parties negotiate a 'clear sailing' arrangement (i.e., an arrangement where defendant will not object to a certain fee request by class counsel); and (3) when the parties create a reverter that returns unclaimed fees to the defendant." *Allen v. Bedolla*, 787 F.3d 1218, 1224 (9th Cir. 2015) (internal quotations and citations removed).

Here, first and third factors are clearly not present.  The requested fee by Class Counsel represents only 15% which, as discussed in the Court's preliminary approval of this settlement, is well below the 25% benchmark used by courts in assessing the reasonableness of attorney's fees.  The settlement is also non-reversionary, meaning that no funds will return to the Defendant.

However, the Court did note the presence of a clear sailing provision in granting preliminary approval.  The presence of that provision is not lethal to the settlement but requires that the Court "scrutinize closely the relationship between attorneys' fees and benefit to the class, being careful to avoid awarding 'unreasonably high' fees simply because they are uncontested." *Roes, 1–2 v. SFBSC Management, LLC*, 944 F.3d 1035, 1050–51 (9th Cir. 2019).  As discussed in the Court's preliminary approval, the Court's concerns about the risk of collusion are substantially undercut by the fact that the clear sailing provision only provides for up to $130,000.00, or roughly 15% of the GSA, which is well below the standard 25% measure.  The attorney's fee is also deducted directly from the GSA, indicating a lack of collusion.  *See Martinez v. Knight Transp., Inc.*, No. 1:16-cv-01730-SKO, 2023 WL 2655541, at *10 (E.D. Cal. Mar. 27, 2023).  Moreover, Class Counsel is a representative for the local union for Class Members.  This ongoing relationship with many Class Members and Class Counsel's natural desire to maintain that relationship further reduces the risk that Class Counsel has colluded with Defendant to produce a less than favorable settlement for Class Members in exchange for non-opposition to an attorney's fee request.

Out of an abundance of caution, the Court instructed counsel to provide briefing such that the Court could conduct a "lodestar cross-check".  As discussed

1    further below, this analysis further confirms that the requested attorney's fees are

2    reasonable and not likely the result of collusion.  *See infra* Motion for Attorneys' Fees,

3    Costs, and Class Representative Service Awards II.  The Court further notes the

4    involvement of a third-party neutral in deciding the material terms of the settlement.

5    This, along with the Class Representatives' involvement with the mediation, provides

6    further evidence that the proposed settlement is fair, adequate, and reasonable.  *See*

7    *In re Toys R Us–Del., Inc.– FACTA Litig.*, 295 F.R.D. 438, 456–57 (C.D. Cal. 2014).

8         In light of the above, it is clear that beyond the presence of the clear sailing

9    provision, all evidence points to the absence of collusion in this settlement.

10   Accordingly, this factor does weighs in favor of approval.

11        **H.  PAGA Penalties**

12        As discussed during the preliminary approval of this settlement, PAGA claims

13   such as those present in this case are fundamentally different from class action claims

14   brought under Rule 23 as PAGA claims are brought on behalf of a state agency and

15   thus do not trigger the Class Action Fairness Act and are not subject to the

16   requirements of Rule 23.  *Zackaria v. Wal-mart Stores, Inc.*, 142 F. Supp. 3d 949, 955

17   (C.D. Cal. 2015); *see Baumann v. Chase Inv. Services Corp.*, 747 F.3d 1117, 1123 (9th

18   Cir. 2015), *cert. denied*, 574 U.S. 1060 (2014).  However, the Court must still consider

19   whether the settlement of the PAGA claims is "fundamentally fair, reasonable, and

20   adequate."  *Haralson v. U.S. Aviation Servs. Corp.*, 383 F. Supp. 3d 959, 972 (N.D. Cal.

21   2019); Cal. Lab. Code § 2699(*l*)(2).

22        All of the above discussed factors apply both to the class action settlement and

23   to the settlement of the PAGA claims with the exception of "the amount offered in

24   settlement".  The proposed settlement provides for a PAGA Payment of $10,000.00.

25   As discussed at length in the Court in its preliminary approval, while this represents a

26   substantial reduction from the maximum possible penalty, this amount is fair,

27   reasonable, and adequate when taking into account the value of the settlement as a

28   whole and given the injunctive relief provided by the settlement which helps to clarify

1   worker's rights and obligations, thus satisfying PAGA's interests in deterring

2   noncompliance.  *See Viceral v. Mistras Grp., Inc.*, No. 15-cv-02198-EMC, 2016 WL

3   5907869, at *9 (N.D. Cal. 2016); *see also Martinez*, 2023 WL 2655541, at *8;

4   (Preliminary Approval Ord. at 18–19.)  Additionally, Class Counsel has repeatedly

5   represented that they have provided the LWDA with notice of the settlement, but the

6   LWDA has not raised concerns or objections.

7        Accordingly, for the reasons discussed above, the Court finds that the

8   settlement of the PAGA claims is fundamentally fair, reasonable, and adequate.

9       **I.   Conclusion**

10       Given that the factors above all weigh in favor of settlement to some degree,

11   the Court is convinced that this settlement is fair, reasonable and adequate as well as

12   free from collusion.  *Hanlon*, 150 F.3d at 1026; *see Lane*, 696 F.3d at 819; *see also In*

13   *re Bluetooth*, 654 F.3d at 946–47.  Accordingly, the Court grants Plaintiffs' Motion for

14   Final Approval of the Class Action Settlement (ECF No. 30).

15      **MOTION FOR ATTORNEYS' FEES, COSTS, AND CLASS REPRESENTATIVE**

16                         **SERVICE AWARDS**

17   **I.**    **Class Representative Service Award**

18       Courts often afford modest compensation to Class Representatives based on

19   the extra time required to represent the class as named plaintiffs to an action.  "The

20   criteria courts may consider in determining whether to make an incentive award

21   include: 1) the risk to the class representative in commencing suit, both financial and

22   otherwise; 2) the notoriety and personal difficulties encountered by the class

23   representative; 3) the amount of time and effort spent by the class representative; 4)

24   the duration of the litigation and; 5) the personal benefit (or lack thereof) enjoyed by

25   the class representative as a result of the litigation." *Van Vranken v. Atlantic Richfield*

26   *Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995).

27       Here, the proposed settlement includes a request for a $5,000.00 service award

28   for each of the Class Representatives.  This award, which represents only .57% of the

1  GSA each, falls squarely within the range of other service awards for class

2  representatives.  *See Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 267 (N.D.

3  Cal. 2015) ("Incentive awards typically range from $2,000 to $10,000.").  A $5,000

4  award is generally considered a presumptively reasonable service award by courts in

5  the Ninth Circuit.  *Carlin*, 380 F. Supp. 3d at 1024.  Class Representatives have

6  represented to the Court that they took "personal and professional risks" in bringing

7  the present action and were closely involved in the litigation efforts, spending

8  "significant time assisting Class Counsel with investigating this claim, discussing the

9  details of this matter,  participating in the Mediation and settlement discussions, and

10  providing declarations to this court." (Mot. for Fees, Costs, and Awards at 10.)

11       Based on the effort and risk undertaken by the Class Representatives in

12  reaching this settlement and the presumptively reasonable amount of this award, the

13  Court finds that the requested service awards are reasonable and awards Tim Botonis

14  and Liam Patrick Meikle $5,000.00, each, for their roles as Class Representatives.

15  **II.      Attorney's Fees**

16       Attorney's fees may generally be awarded in a settlement of a certified class

17  action however, "courts have an independent obligation to ensure that the award, like

18  the settlement itself, is reasonable, even if the parties have already agreed to an

19  amount." *In re Bluetooth*, 654 F.3d at 941.  Courts will analyze the reasonableness of

20  attorney's fees based on either a percentage of the fund analysis or the lodestar

21  method.  Though the parties initially briefed the percentage method, given the

22  presence of the clear sailing agreement, the Court will also use the lodestar method

23  as a cross-check that the request is reasonable.

24       As mentioned above, the requested attorney's fees – $130,000.00 – represents

25  only 14.8% of the GSA.  The benchmark in the Ninth Circuit when analyzing the

26  reasonableness of attorney's fees is 25% of the total settlement award.  *Hanlon*, 150

27  F.3d at 1029 ("This circuit has established 25% of the common fund as a benchmark

28  award for attorney fees.").  Class Counsel's request, which falls well below this mark, is

1    clearly reasonable under the percentage method of analysis.

2    Under the lodestar analysis, the Court considers whether the requested fee is

3    reasonable by comparing the requested fee against the "the lodestar figure [which] is

4    calculated by multiplying the number of hours the prevailing party reasonably

5    expended on the litigation (as supported by adequate documentation) by a

6    reasonable hourly rate for the region and for the experience of the lawyer." *In re*

7    *Bluetooth*, 654 F.3d at 941. "The court may then enhance the lodestar with a

8    'multiplier', if necessary, to arrive at a reasonable fee in light of all the circumstances of

9    the case." *Van Vranken*, 901 F. Supp. at 298.

10   Here, Class Counsel note that they have accrued a total of 274 hours litigating

11   this action. (Mot. for Fees, Costs, and Awards at 8 (citing Kanbar Decl. (ECF No. 31-

12   1)).) Class Counsel helpful splits this into hours accrued by attorney Sarah S. Kanbar,

13   an attorney with seven years of experience, and Costa Kerestenzis, an attorney with 28

14   years of experience, with the former attorney accounting for 159 hours and the latter

15   115 hours.[5] (*Id.*) Class Counsel indicate they have time records that were reviewed in

16   making this analysis which they offered to provide for in camera review. (*Id.* at 8 n.2.)

17   Though Class Counsel primarily conducts their analysis of the lodestar figure in

18   part based on the regions where these attorneys generally conduct their work, the

19   general rule is that the lodestar figure is assessed based on the rate for attorneys of

20   similar skill and experience in this district. *See Gonzalez v. City of Maywood*, 729 F.3d

21   1196, 1205 (9th Cir. 2013) ("Generally, when determining a reasonable hourly rate,

22   the relevant community is the forum in which the district court sits.") Courts in this

23   district are generally willing to approve rates from $200 up to as high as $650 or $750

24   an hour based on the seniority of the attorneys in question. *See American Multi-*

25   *Cinema, Inc. v. Manteca Lifestyle Ctr., LLC*, No. 2:16-cv-01066-TLN-KJN, 2024 WL

26

27   [5] Where, as here, the lodestar method is being used as a "cross-check" a court can utilize a rough calculation instead of performing an exhaustive cataloging and review of hours. *See Carlin*, 380 F. Supp. 3d at 1022. Given the percentage analysis strongly suggests the rate requested is reasonable,

28   the Court takes that approach here.

23

1312209, at *3 (E.D. Cal. Mar. 26, 2024); *see also Jones v. Tirehub LLC*, No. 2:21-cv-0564-DB, 2024 WL 2132611, at *11 (E.D. Cal. May 13, 2024).  Kerestenzis, a partner with 28 years of experience, naturally falls on the high end of that range.  Kanbar, with seven years of experience, falls more closer to the middle of that range.  Other courts have assessed a $500 fee as reasonable for an associate with experience similar to Kanbar's.  *Id.*  Class Counsel proposes reasonably modest price points from within the range of rates approved in this district – $600 for Kerestenzis and $450 for Kanbar – which, when multiplied against the estimated hours for each, results in a lodestar figure of $140,550.00.  This lodestar figure is eminently reasonable given the hours expended by Class Counsel multiplied by "[the] reasonable hourly rate for the region and for the experience of the lawyer[s]."  *In re Bluetooth*, 654 F.3d at 941.  The requested $130,000.00 attorney's fee compares favorable against this lodestar figure. A "negative multiplier" – which is where the requested attorney's fees are below the lodestar figure, as is the case here – further supports a finding of reasonableness. *Schiller v. David's Bridal, Inc.*, No. 1:10–cv–00616–AWI–SKO, 2012 WL 2117001, at *23 (E.D. Cal. June 11, 2012).  Thus, the lodestar cross-check further confirms that the requested attorneys fees are appropriate and reasonable.

Accordingly, Class Counsel are awarded $130,000.00 in attorneys fees to be taken from the total settlement amount and divided amongst counsel as managed by Beeson, Tayer and Bodine, APC.

## III.   Costs

Class Counsel is entitled to reimbursement of litigation costs from the GSA in order to spread the costs of the suit amongst class members.  *Wininger v. SI Mgmt. L.P.*, 301 F.3d 1115, 1120 (9th Cir. 2002).  "Such an award of expenses should be limited to typical out-of-pocket expenses that are charged to a fee paying client and should be reasonable and necessary."  *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1177 (E.D. Cal. 2007).

Here, Class Counsel seeks to recover costs for (1) $2,050.51 in "Court and filing

fees", (2) a $6,000.00 "Mediator's Fee", (3) $11.13 in "Postage", and (4) $249.00 in "Pacer, Westlaw charges". (Mot. for Fees, Costs, and Awards at 9.) Each of these requested costs falls within those that courts typically approve. *See In re Immune Response Securities Litigation*, 497 F. Supp. 2d at 1177–78. Accordingly, the Court will grant Class Counsel's request for reimbursement of $8,310.64 in costs incurred while litigating this matter.[6]

### CONCLUSION

For the above reasons, it is HEREBY ORDERED that:

1. The Court has jurisdiction over this action and the Settlement pursuant to 28 U.S.C. §§ 1332(a) and (d);

2. Except as otherwise specified herein, the Court for purposes of this Final Approval Order adopts all defined terms set forth in the Settlement Agreement;

3. Plaintiffs' Motion for Final Approval of Class Action and PAGA Settlement (ECF No. 30) is GRANTED and the Court approves the Settlement as fair, reasonable, and adequate and the result of arm's-length informed negotiations;

4. Class Member Crisanto Martinez's Objections (ECF Nos. 28, 32) are overruled.

5. The Court grants final certification of the Class for settlement purposes only. The Class is defined as: "all current and former individuals who are or previously were employed by Defendant in California as Transport Associates (also referred to as Drivers, including Relief Drivers) and Route Sales Professionals or any associate doing similar work during the period May 10, 2018 through August 26, 2023."

---

[6] As noted by Class Counsel in their Motion for Final Approval, this amount is less than the $10,000.00 originally set aside in the settlement agreement for costs. Per the Settlement Agreement, the remaining $1,689.34 will revert to the NSA for distribution to Class Members.

6. The Court grants final approval of the sub-Class of "Aggrieved Employees" for purposes of Settlement of the PAGA Claims, "who are or were employed by Defendant in California as Transport Associates (also referred to as Drivers, including Relief Drivers) and Route Sales Professionals or any associate during similar work during" the period of May 10, 2021 through August 26, 2023.

7. The Court appoints Tim Botonis and Liam Patrick Meikle as the Class Representatives for settlement purposes only.

8. The Court appoints Beeson, Tayer & Bodine, APC as Class Counsel for settlement purposes only.

9. The Court finds that all procedural steps for distributing Notice to the Class Members have been met and that Notice was properly provided to the Class.

10. The Court finds and determines that the fees expenses of the Settlement Administrator in administering the settlement, $11,765.00, are fair and reasonable.  The Court hereby grants final approval to and orders that the payment of that amount be paid out of the Gross Settlement Amount in accordance with the Agreement.

11. The Court finds that the Releases in the Settlement Agreement are appropriate and all participating Class Members are bound by the Class Releases for the claims and periods set forth in paragraphs 5 and 6 above, and Plaintiffs are bound by the general releases set forth in the Settlement Agreement (*see* ECF No. 22-2 ¶¶ 4, 23, 32, 53-57, 58-60).

12. "Released Parties" shall be defined as set forth in the Settlement Agreement (ECF No. 22-2 ¶ 33).

13. The Court orders the Defendant to pay $875,000.00 to the Settlement Administrator within sixty-one (61) days of the Order Granting Final Approval.

14. The PAGA Payment is approved, which is to be distributed as set forth in the Settlement Agreement.  The PAGA Aggrieved Employees will release Defendant and the Released Parties from all PAGA claims for civil penalties alleged as set forth in the Settlement Agreement and noted above.

15. The Court further GRANTS the concurrently filed Motion for Attorneys' Fees, Costs and Class Representative Service Award (ECF No. 31) and finds that the attorneys' fees, costs, and class representative service awards requested are reasonable.

16. The Court orders the Settlement Administrator to distribute from the Gross Settlement Amount ("GSA") the following:

   a. Class Counsel's request for attorneys' fees in the amount of $130,000.00;

   b. Class Counsel's request for expenses in the amount of $8,310.64;

   c. The Settlement Administrator's costs in the amount of $11,765.00;

   d. Class Representative Service award in the amount of $5,000.00 to Plaintiff Tim Botonis;

   e. Class Representative Service award in the amount of $5,000.00 to Plaintiff Liam Patrick Meikle; and

   f. $7,500.00 to the California Labor and Workforce Development Agency as its 75% portion of the $10,000.00 PAGA penalty.

17. The Court orders the Settlement Administrator to distribute from the Net Settlement Amount ("NSA") to the Class within ten (10) days of receipt of the funds as follows:

   a. Each eligible Aggrieved Employee (PAGA Class) shall receive a portion of the remaining $2,500.00 PAGA Payment, proportionate to the number of Workweeks Worked by the Aggrieved Employee during the PAGA Period compared to the total number of Workweeks Worked by all Aggrieved Employees during the PAGA Period; and

////

      b.  The remaining NSA designated to the Class Claims shall be allocated to each participating Class Member based on his or her proportionate Work Months Worked during the Class Period compared to the total number of Work Months Worked by all participating Class Members during the Class Period.

18. Any remaining funds in the NSA associated with un-cashed settlement checks shall be paid to the State of California's Unclaimed Property Fund in the name of the Participating Class Member as set forth in the Settlement Agreement.

19. The Court orders that all Settlement Class Members who have not filed a timely opt-out are bound to the terms of the Settlement Agreement including the releases specified herein.

20. Upon the Effective Date, the Plaintiff and all Class Members shall have, by operation of this Order, fully, finally and forever released, relinquished, and discharged all Released Parties from all Released Claims as set forth in the Settlement Agreement.

21. The Court orders that upon the entry of judgment pursuant to the terms of the Settlement Agreement, the Court shall retain exclusive and continuing equity jurisdiction of this action over all Parties to interpret, enforce, and effectuate the terms, conditions, intents, and obligations of the Settlement Agreement.

22. Each side will bear its own costs and attorneys' fees except as provided by the Settlement Agreement and this Order.

////

////

////

////

////

23. The Parties are hereby ordered to comply with the terms of the Settlement Agreement.  Pursuant to Labor Code section 2699(*l*)(3), Plaintiffs shall submit a copy of this Judgment to the LWDA within ten (10) calendar days of its execution and entry by the Court.

Dated:  September 26, 2024

THE HONORABLE DANIEL J. CALABRETTA
UNITED STATES DISTRICT JUDGE

29